1

Amanda G. Billyard 256838
**Financial Relief Law Center, APC**
1200 Main St. Ste C
Irvine, CA 92614
Telephone: (714) 442-3349
Facsimile: (714) 361-5392
abillyard@bwlawcenter.com

2

3

4

5

Attorneys for Defendant

6

7

**UNITED STATES BANKRUPTCY COURT**

8

**CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION**

9

10

| | |
|---|---|
| In re: | Adversary Case# 6:23-ap-01055-SY |
| JIHAD SAKER | Bankruptcy Case# 6:23-bk-10976-SY |
| Debtors. | Chapter 7 |
| GREGG ROBERTS | |
| Plaintiff, | **MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FRCP 12(b)(6)** |
| v. | **Hearing:** |
| JIHAD SAKER | Date:  TBD |
| Defendants. | Time:  TBD |
| | Place:  3420 Twelfth St., Crtrm 304 |
| | Riverside, CA 92501 |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Gregg Roberts ("<u>Plaintiff</u>"), the assignee of two state court judgments, filed a Complaint ("<u>Complaint</u>") against Jihad Saker ("<u>Defendant</u>" or the "<u>Debtor</u>") asking this Court to deny her a chapter 7 discharge under 11 U.S.C. §§ 523(A)(6), 11 U.S.C. 727(a)(2)(A), 11 U.S.C. 727(a)(3), and 11 U.S.C. 727(a)(4)(A).  Plaintiff also seeks attorney or paralegal fees incurred in connection with the prosecution of the Complaint, along with any other relief to which he may be justly entitled.

Plaintiff's Complaint should be dismissed with prejudice because, while the complaint in its title refers to §523(a)(6) and §727, the Complaint lists no specific cause of action to which the Defendants can answer and fails to establish a legal theory or facts to support his claim for non-dischargeability.  For these reasons, Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Actions under 11 USC § 523/727 regarding negligence don't rise to non-dischargeability standards even if all the fact are true.  Negligent or reckless acts which inflict consequential injury do not fall within the ambit of § 523(a)(6). *Geiger,* 523 U.S. at 64.*In re Thiara*, 285 B.R. 420, 427 (B.A.P. 9th Cir. 2002).

The intentional acts of another is not covered by and does not create an agency relationship. There is no cause of action that exists based on the alleged actions because the relationship of the Debtor to the alleged agent doesn't create liability under 11 USC § 523/727 .

I.   **STATEMENT OF FACTS**

Debtor, Jihad Saker is the sole owner of Saker Enterprise, Inc and E Street Market.  In April and May of 2019 two separate judgements for negligence were entered against Debtor.  On February 19, 2021, and June 30, 2022, both judgments were assigned to Roberts.  Sometime in mid-2022, Roberts obtained an order for a Debtor's Exam for which Debtor obtained counsel in an effort resolve this matter.  In January of 2023 Roberts filed a motion with the San Bernardino

County Court to hold Debtor in contempt.  The Court denied the contempt motion and ordered Debtor to provide Roberts with 1 year of bank statements and 3 years of tax returns.

Debtor turned over documents that were available to him, to Roberts, through his counsel at the time, Eugene Carson.  Between February 2023 and March 2023 Debtor via Counsel Carson and Roberts were in negotiations to see if the matter could be resolved and settled, just as the other defendant in the civil case settled their judgment.  However, Debtor did not personally have funds to settle this matter and any settlement would have to come from a pooling of funds from his family.  By early March, Debtor and his counsel, Eugene Carson, contacted Financial Relief Law Center, APC regarding Debtor's case in order to explore bankruptcy options.  After determining that Debtor and his businesses were insolvent, Debtor filed this case on March 14, 2023.

At the meeting of creditors on May 17, 2023, Roberts was given over an hour of time to question Debtor regarding his financial affairs and to identify and locate Debtor's assets.  During the meeting, the Debtor testified that he supplied all of the documents he had to Roberts, that his business accounts have been closed for almost a year and that he had tried to save his company but could no longer put more money into it.  After that meeting, trustee Cisneros filed a Ch 7 Trustee's Report of No Distribution.

## II. STANDING

Plaintiff's allegations are barred by the statute of limitations.   Bankruptcy Court applies state law statute of limitations.  In this case, Plaintiff allegations willful or malicious conduct is barred by the 2 year statute of limitations in CA for intentional torts.  Cal Civ Code 335.1.  The facts that give rise to the cause of action in question took place in 2014.  Therefore, if Plaintiff wanted to assert intentional tortious claims against Defendant, it must have been brought within 2 years of the act.  Accordingly, the statute of limitations as to willful or malicious or intentional torts has run and Plaintiff is barred by the statute of limitations and has no standing to bring this matter now in a Bankruptcy forum.

III. ARGUMENTS AND AUTHORITIES

**A.  The Complaint Should Be Dismissed for Failure to State a Cause of Action**

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue raised by a Rule 12(b)(6) motion is whether the facts pleaded would, if established, support a valid claim for relief. *Storm v. United States*, 641 F3d 1051, 1067 (9th Cir. 2011); *SEC v. Cross Fin'l Services, Inc.*, 908 F.Supp. 718, 726-727 (CD CA 1995); *Beliveau v. Caras*, 873 F.Supp. 1393, 1395 (CD CA 1995).

The standard for dismissal incorporates and must be viewed in light of the simplified pleading standards embodied in the Federal Rules of Civil Procedure Rule 8(a). See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). According to Rule 8(a)(2), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement is adequate so long as it "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. at 512.

For purposes of Rule 12(b)(6), a claim means a set of facts that, if established entitle the pleader to relief. *Bell Atlantic Corp. v. Twombly*, 550 US 544, 555 (2007). A Rule 12(b)(6) dismissal is proper when the complaint fails to allege either: (1) a cognizable legal theory or (2) absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F3d 1035, 1041 (9th Cir. 2010). Moreover, to survive a motion to dismiss, the facts alleged must state a facially plausible claim for relief. *Id*. at 1041.

The Complaint brought by Plaintiff is generally incomprehensible, failing to allege a cognizable legal theory of liability. The debt Plaintiff seeks avoid from discharge stems from a state court negligence claim, but negligent or reckless acts which inflict consequential injury do not fall within the ambit of § 523(a)(6). *Geiger,* 523 U.S. at 64. *In re Thiara*, 285 B.R. 420, 427 (B.A.P. 9th Cir. 2002).  Since the Adversary Proceeding Cover Sheet indicates that the nature of the suit is for dischargeability under §532(a)(6), the Complaint itself fails to state a cause of

action for non-dischargeability.  Even if everything Plaintiff says is true, there is no entitlement to relief.

B. **Complaint Fails to Show Facts that Defendant's Actions were Willful or Malicious under 523(a)(6)**

Section 523(a)(6) prevents discharge "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Supreme Court in *Kawaauhau v. Geiger (In re Geiger*), 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), made clear that for section 523(a)(6) to apply, the actor must intend the consequences of the act, not simply the act itself. *Id.* at 60, 118 S.Ct. 974. Both willfulness and maliciousness must be proven to block discharge under section 523(a)(6).  *In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010).

The willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir.), cert. denied, 533 U.S. 930 (2001). Thus, negligent or reckless acts which inflict consequential injury do not fall within the ambit of § 523(a)(6). *Geiger,* 523 U.S. at 64.*In re Thiara*, 285 B.R. 420, 427 (B.A.P. 9th Cir. 2002).

The Willful element:  Willfulness means intent to cause injury. *Kawaauhau v. Geiger*, 523 U.S. at 61. "The injury must be deliberate or intentional, 'not merely a deliberate or intentional act that leads to injury.'" *In re Plyam,* 530 B.R. 456, 463 (9th Cir. BAP 2015) (quoting Kawaauhau v. Geiger, 523 U.S. at 61).  Recklessly inflicted injuries, covering injuries from all degrees of recklessness, do not meet the willfulness requirement of § 523(a)(6). *In re Plyam*, 530 B.R. at

464. Reckless conduct requires an intent to act instead of an intent to cause injury. *Id.* Therefore, the willful injury requirement "… is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." <u>Carillo v. Su</u> (<u>In re Su</u>), 290 F.3d 1140, 1142 (9th Cir. 2002).*Barton v. Carthan (In re Carthan)*, Case No.: 1:19-bk-12727-MT, at 10 (Bankr. C.D. Cal. Apr. 13, 2021.

Here, because the judgment is for negligence there's no record that Defendant acted willfully or maliciously or intend the injury, and Plaintiff asserts no new evidence to change this. The Complaint is also absent of circumstantial evidence required to show Defendant acted both willfully or with malice as required in *Ormsby.*  It is undisputed that Defendant did not pull the trigger, nor did he intend to cause injury to anyone.

Plaintiff's Complaint repeatedly asserts that because Defendant failed to implement a formal security policy and did nothing about "Suav's" violation of a security policy, that Defendant's actions were both wrongful and intentional.  The Complaint states, "Saker's acts and omissions described were done intentionally" and "injury was substantially certain to result from Saker's acts and omissions".  See Complaint at page 8.  Plaintiff falls short of showing how Debtor "believed injury was substantially certain" from not having or enforcing a security policy at his hookah lounge, as required by *Jercich.*  The Complaint offers support for this fact referencing Defendant's answer in the civil court case, in which Defendant  that while was the owner of the hookah lounge, he denied that the shootings were foreseeable.

Plaintiff confuses the facts of this case with an injury that can arise from driving while intoxicated and this case in that "operating a motor vehicle while intoxicated is a dangerous

activity where injury to another is highly foreseeable" *In re Ray*, 51 B.Rl. 236 (9th Cir. BAP

1985).  Unlike the conduct in *Ray,* Debtor's actions or omissions did not give rise to a

foreseeable injury since the actions were not inherently dangerous.  Defendant owned a hooka

lounge, which is not an inherently dangerous activity, neither is the lack of a security policy an

inherently dangerous activity comparable to drunk driving.

Plaintiff fails to provide a legal argument or theory to support his conclusion.  Without

any evidence, Plaintiff concludes "The actions and/or omissions of Saker and his agent were

done intentionally, and injury was substantially certain" without further legal analysis. Plaintiff's

claims are conclusionary at best and not based in law or in fact.

In order to avoid discharging the debt, Defendant would have had to know, with

substantial certainty, that lack of a security policy would result in injury.  There is no evidence of

either of this.  Plaintiff makes a bold statement purporting to know what Saker knew stating that

"Saker knew this" but there is no evidence in the State Court proceeding or the Complaint to

support this statement.  The evidence in the Complaint makes several statements about what

Suav knew and what Stokes new, but this knowledge is not the knowledge of Defendant.

Without evidence, Plaintiff loosely concludes the mindset of the Debtor.  Plaintiff provides zero

evidence, circumstantial or other, that Defendant knew injury was certain or that Debtor had

intent or motive to inflict the injury.

Plaintiff attempts throw whatever he can at Defendant and asserts that Defendant's

subsequent arrest for illegal gambling somehow results in Defendant having intentionally or

willfully caused the injury in the civil case. *See* Complaint page 8.   Bringing in Defendant's

subsequent arrest in an unrelated matter is irrelevant to this Complaint and serves only to paint

Defendant in an unfavorable light.


   C.  **Complaint Fails to Assert a Cognizable Legally Theory for which Defendant can
        be Held Liable for Intentional or Malicious conduct of an Agent.**


        Section 523(a)(6) clearly requires a "willful and malicious injury by the debtor. . . ."

Plaintiff can meet this standard only if one imputes to the Debtor the knowledge and intent of

unknown agents, representatives, or other person acting on her behalf or at her unspecified

direction. Such an application involves inappropriate speculation and calls for an extremely

attenuated conclusion of law with respect to agency. We are unable to determine that the Debtor

acted with willfulness and malice based on the admissions… when they leave open the

possibility that the damage to the Property was done by others. And we, like the bankruptcy

court, reach this conclusion notwithstanding that the Debtor may have had an

unspecified agency relationship with these third parties and may have directed them in an

unspecified manner. *Cal. Capital Ins. Co. v. Riley (In re Riley)*, BAP No. CC-15-1379-TaLKi, at

16-17 (B.A.P. 9th Cir. June 8, 2016).

        Plaintiff appears to argue Defendant's judgment for negligence should be non-

dischargeable based upon the theory of Agency, though an analysis to determine if an agency

relationship even exists is not included in the Complaint.  Under Agency theory, however, a

principal is not liable for the intentional or malicious conduct of an Agent.  It is undisputed that

Debtor did not commit the crime, he did not pull the trigger.  Because the *Riley* court reasoned

that there could be no finding of willfulness or malice when the damage was done by another,

1

2

there can be no imputed willfulness or malice in this case to Defendant.  Plaintiff therefore fails

to link any intentional or malicious conduct to Debtor directly.

3

4

        The Complaint makes several statements about purported agents of Defendant, stating

5

"Stokes shot the murder victims while under the influence of the alcohol and cocaine given to

6

him my Saker's agent "Sauv."  See Complaint page 4.  In fact, the majority of Plaintiff's

7

assertions involve "Sauv's" knowledge.  Pages 5-7 of the Complaint all make statements about

8

"Savu's knowledge", "Sauv's actions" while failing to connect that knowledge to Defendant.

9

Plaintiff tries to make Defendant responsible for what Suav knew, and repeatedly imputes Sauv's

10

knowledge to Defendant, contrary to the Court's reasoning in *Riley*.  Plaintiff would have this

11

Court believe that a Principal's failure to "properly train or supervise" an agent sufficient enough

12

for a Principal to be responsible for the Agents intentional actions without offering any legal

13

basis.

14

15

        In *Cecchini,* 780 F.2d at 1444, the court applied agency principles to determine that a

16

partners' wrongful conduct could be imputed to a debtor for purposes of section 523(a)(6) when

17

the partner was acting on behalf of the partnership in the ordinary course of business and the

18

debtor shared in the benefits of the wrongful conduct. In concluding that the wrongful conduct of

19

James Chadick was not properly imputed to the debtor, the bankruptcy court found that the kiting

20

scheme was not part of the ordinary course of business… and that there was insufficient

21

22

evidence to establish that the business was intended to or did benefit from the wrongful conduct

23

of James Chadick.  *In re Lauricella*, 105 B.R. 536, 539 (B.A.P. 9th Cir. 1989).

24

25

        Plaintiff cites *Lauricella* but fails to distinguish it from the case at hand.  The court in that

26

case too did not impute conduct or knowledge to the principal because the partner was not acting

27

28

in the ordinary course of business.  In this case, not only was the actions that led to the injury not part of Defendant's ordinary course of business, but Defendant was not partners with Suav. There is no legal theory that Defendant is liable for the actions of an agent, especially a non partner not acting in the ordinary course of business.

### D. Complaint States Facts that are Insufficient to Prove Defendant Concealed, Destroyed or Failed to Preserve Financial Documents Under 11 USC 727(a)(2)(A) and 727(a)(3).

In his Complaint, Plaintiff concludes without any factual support or sworn declaration that Defendant concealed, destroyed and failed to preserve documents.  Plaintiff ignores the testimony that resulted from extensive examination by the Chapter 7 Trustee, the UST, and Roberts himself, at the continued Meeting of Creditors on May, 17 2023.  In that meeting, Debtor was questioned by all three of the above and the Chapter 7 trustee and the US Trustee both determined that there was no evidence that Debtor concealed, destroyed or failed to preserve documents.  More importantly the Trustees concluded the meeting finding no evidence to hinder or delay payments to creditors.  Had there been any indication that Debtor engaged in an effort to conceal or destroy documents, the Chapter 7 trustee and US Trustee would have certainly continued their investigation in this case.

Paragraphs 51-55 of the Complaint makes the same allegations in his Motion to Dismiss arguing that Debtor transferred funds from his personal account at Arrowhead and from his Wells Fargo account in his DBA E Street Market.  E Street Market is a DBA for Jihad Saker. Therefore any transfers out of E Street Market Wells Fargo account or Arrowhead to the account for Saker Enterprises, Inc. shows the Debtor putting money into his business from his personal accounts in an effort to save an keep his business running.  Moving money from personal to a

business account years before contemplating bankruptcy is permissible.  These facts here do not

trigger an action under §727.

Similarly, in paragraph 54, Plaintiff states that 21 payments were made from E Street

Market to Debtor's personal mortgage.  Because E Street Market is a DBA for Jihad Saker, there

are no grounds for a§ 727 action since payments were made to Debtor's personal mortgage from

his E Street Market account.  Debtor is allowed to pay his personal mortgage form his personal

account.  Alleging that Defendant paid his mortgage from a personal account as a violation of

§727 is problematic.  The same is true for paragraph 55, where Roberts states Debtor made 23

cash withdrawals from the E street Market Account.  Debtor is permitted to make withdrawals

from his personal account.

Furthermore, Plaintiff omits that the majority of these withdrawals were made nearly two

years before the filing of Defendant's bankruptcy case.  As explained in Debtor's Opposition to

Roberts' Motion to Dismiss, the cash withdrawals in question took place between January 2020

and September of 2021.  The only amounts withdrawn over $3,000 at that time were in March of

2021, nearly 2 years prior to Defendant's bankruptcy filing, in which Debtor removed a total of

$30,000 over 3 different dates.  Debtor testified at the meeting of creditors that he used the funds

to improve and repair his home, an allowable expense for the Debtor.  These facts support

Debtors position that he did not make these withdrawals in an effort to hide, hinder or delay

payments to creditors or made in contemplation of bankruptcy.

Paragraph 57 alleges that although Roberts reported these issues to the Trustee and that

the Trustee never requested that Saker produce missing records.  This is false.  Chapter 7 Trustee

Arturo Cisneros requested extensive documents from Counsel, in which Counsel provided to the

Trustee whatever Debtor had records of and access to.  Because these records go back more than

2 years in accounts that are now closed, Debtor is unable to access every record that Roberts

demanded.

Paragraph 73 shows a ledger of Defendant's personal accounts and E Street Market

accounts, which were depleting each month, which is consistent with loss of income due to a

failing business, yet Roberts asserts Defendant made a false statement when he said he was

unable to afford to feed himself let alone pay his loans.

Plaintiff complains about Defendant's contempt in the state court case, but under 11 USC

727(a)(6) Debtor should be denied a discharge if Debtor refused in this case, to obey a lawful

court order.  Therefore, any argument that Debtor was in contempt of state court is not grounds

for denial of discharge in his bankruptcy proceeding.

**E. Complaint Fails to Prove Defendant Knowingly Made False Statements Under 11 USC § 727 (a)(4)(a).**

Plaintiff's allegations that Defendant made false statements in his opposition to Robert's

Motion to Dismiss is unfounded.  Debtor's opposition to Roberts motion to dismiss was not

accompanied by a sworn declaration. Plaintiff asserts that Defendant failed to disclose that E

Street Market was a partnership with his son.  To the best of Debtor's knowledge and

recollection, he was and acted as the only owner of E Street Market.  While technically Debtor

and his son were partners in name, the records and bank statements show all transactions were

between Debtor and E Street Market.  Notwithstanding, this omission alone is insufficient to

deny Debtor's discharge.  Furthermore, Debtor's son, even as a business partner, is not the

Debtor in this case and would not be required to attend the meeting of creditors, contrary to

Roberts' assertion in paragraph 87, nor is Roberts entitled to examine or question him.

## IV.  CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Complaint.


Dated:  July 18, 2023


/s/ Amanda G. Billyard
Amanda G. Billyard Esq.
Financial Relief Law Center, APC
Attorneys for Defendants
