Gregg Roberts
43430 E Florida Ave Ste #F-293
Hemet CA 92544
951-330-4450
gregg@legalsupport-sc.com
Assignee of Record and Judgment Creditor, Pro Se

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION**

| | |
|---|---|
| In re Jihad Saker, <br><br> Debtor <br><br> Gregg Roberts, <br> Plaintiff, <br> v. <br><br> Jihad Saker, <br> Defendant | Main Case #6:23-bk-10976-SY <br> Chapter 7 <br> Adv. Proc. Case #6:23-ap-01055-SY <br><br> **RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND** <br><br> Judge: Hon. Scott H. Yun |

## A. SUMMARY

The Motion casts many aspersions but barely makes a dent in the overall adequacy of the

Complaint. The Motion points to the weakest portions of the Complaint, ignoring the fact that

several sets of allegations are made in the alternative with a stronger prong than the one attacked.

The Motion implies that the case is already at the stage where evidence must be supplied; clearly

that is not true. Allegations that Roberts cannot YET prove must be assumed to be true for

purposes of a motion to dismiss, as long as they meet the general plausibility requirements of

*Twombly* and *Iqbal*. Debtor counsel must be aware of these things, but is apparently hoping that Roberts and his Court are not.

Regardless, Roberts acknowledges that the Complaint could be strengthened. Roberts requests leave to do so. Although he has identified some specific places where he would like to add some allegations, he invites guidance from this Court as to the specific issues that need attention. This will help minimize the chance of an additional Motion to Dismiss, moving the case forward with judicial economy.

Leave to amend shall be liberally granted. "The court should freely give leave when justice so requires." FRCP 15, which "applies in adversary proceedings." FRBP 7015.

> "In the Central District, the plaintiff in an adversary proceeding almost always gets at least one extra bite at the apple, if not two or three."
> The Hon. Scott Clarkson, at a telephonic hearing on a Motion to Dismiss one of Roberts' previous adversary complaints.[1]

---

[1] Roberts does not remember the date of this hearing and does not have the resources to order transcripts of all the hearings, but he clearly remembers the essential details of the statement.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

## Contents

A. SUMMARY ............................................................................. 1

B. DETAILED RESPONSES TO THE MOTION REGARDING THE 523(a)(6) CAUSE
OF ACTION .............................................................................. 6

    1. Statute of Limitations Objection .............................................. 6

    2. Objection Based on Insufficient Specificity as to the Agency Relationship ............. 8

    3. Objection Based on Not Imputing Conduct or Knowledge to the Principal ............ 14

    4. Objection Based on Agent Not Being a Partner ...................................... 16

C. DETAILED RESPONSES TO THE MOTION REGARDING THE 727 CAUSE OF
ACTION ................................................................................ 18

    1. Objection Based on Denying the Evidence and Seeing the Trustees as Infallible ... 18

    2. Objection Based on Pretending the Debtor Is Allowed to Give a False Account As Long
As It Is Unsworn; and Based on Assertions Outside the Complaint ............................. 25

D. CONCLUSION ........................................................................ 26

**Cases**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................14

*Berr v. FDIC (In re Berr)*, 172 B.R. 299....................................................................7

*Cal. Capital Ins. Co. v. Riley (In re Riley)*, BAP No. CC-15-1379-TaLKi .............................8, 10

*Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755 ........................23, 24

*Cecchini, 780 F.2d at 1444* ...................................................................................12

*Devers v. Sheridan (In re Devers)*, 759 F.2d 751, 754 (9th Cir.1985) ........................................25

*Grogan v. Garner*, 498 U.S. 279 ..............................................................................7

*Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373 ......................................................8

*In re An*, BAP No. CC-16-1001-KuFKi.......................................................................9

*In re Devers*, 759 F.2d at 754 ................................................................................24

*In re Khalil*, 578 F.3d 1167 (2009), p. 2, 09 Cal. Daily Op. Serv. 10,852, 2009 Daily Journal
    D.A.R. 12,601 ...............................................................................................25

*In re Lauricella*, 105 B.R. 536................................................................................14

*In re Retz*, 606 F.3d 1189 (2010) Bankr. L. Rep. P 81,776, 10 Cal. Daily Op. Serv. 6914, 2010
    Daily Journal D.A.R. 8241 .................................................................................24

*In re Roberts*, 331 B.R. 876 (2005)...........................................................................25

*In re Tsurukawa*, 258 B.R. at 198............................................................................9

*In re Wills*, 243 B.R. 58 (1999) at 63-64, 43 Collier Bankr.Cas.2d 852, 35 Bankr.Ct.Dec. 121,
    Bankr. L. Rep. P 78,086 ...................................................................................24

*In re Wright*, 364 B.R. 51 (2007),............................................................................25

*In re Wyatt*, 625 B.R. 184 at 190-191 (2020), Bankr. L. Rep. P 83,604....................................24

*Kelly v. Okoye (In re Kelly)*, 182 B.R. 255....................................................................7

*Lucido v. Superior Court*, 51 Cal.3d 335 ......................................................................7

*Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir. 1971)..........................................................24

*Sergent v. Haverland (In re Haverland)*, 150 B.R. 768, 771 (Bankr.S.D.Cal.1993)....................24

*Smith v. Grondin (In re Grondin)*, 232 B.R. 274, 277 (1st Cir. BAP 1999) ...............................25

*Weiner v. Perry, Settles & Lawson (In re Weiner)*, 208 B.R. 69, 72 (9th Cir. BAP 1997)............24

**Statutes**

California Civil Code § 3519.....................................................................................................13

FRCP 8(d)(2) / FRBP 7008(d)(2) .............................................................................................12

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

**B.  DETAILED RESPONSES TO THE MOTION REGARDING THE 523(a)(6)**

**CAUSE OF ACTION**

     *1.  Statute of Limitations Objection*

     **MOTION:** "Plaintiffs allegations are barred by the statute of limitations. Bankruptcy Court applies state law statute of limitations. In this case, Plaintiff allegations willful or malicious conduct is barred by the 2 year statute of limitations in CA for intentional torts. Therefore, if Plaintiff wanted to assert intentional tortious claims against Defendant, it must have been brought within 2 years of the act. Accordingly, the statute of limitations as to willful or malicious or intentional torts has run." 3:20-22.

**RESPONSE:** This is a shocking misstatement of both the relevant facts of this case and the applicable law. The state court Complaint DID allege intentional tort, at Item 10(c):

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: CIVDS1607235 |
| --- | --- |

10. The following causes of action are attached and the statements above apply to each (*each complaint must have one or more causes of action attached*):
  a. ☐ Motor Vehicle
  b. ☒ General Negligence
  c. ☒ Intentional Tort
  d. ☐ Products Liability
  e. ☒ Premises Liability
  f. ☒ Other (*specify*): Wrongful Death

     *Ex. 1*, p. 3.

     How did the represented Debtor/Defendant miss that?

     As for the law, bankruptcy courts routinely re-examine the facts of how a debt arose and reach conclusions about what was in the mind of the debtor regarding the events that caused or created the debt, even if no allegations about the debtor's state of mind were made in state court litigation. Bankruptcy courts are restrained against making findings that go beyond the findings

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

6

of a previous court *only to the extent that there is issue preclusion*. The elements required to

except a debt from discharge do not need to be alleged in the state court litigation for the debt to

be ruled nondischargeable in Bankruptcy Court.

Unlike claim preclusion, issue preclusion *may* apply to a dischargeability claim. See

*Grogan v. Garner*, 498 U.S. 279 at 284 n. 11, 111 S.Ct. 654 ("We now clarify that collateral

estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).").

Six criteria must be met for issue preclusion to apply to a California judgment under *Lucido v.*

*Superior Court*, 51 Cal.3d 335 at 341–43, 272 Cal.Rptr. 767, 795 P.2d 1223: (1) the issue "must

be identical to that decided in a former proceeding"; (2) it "must have been actually litigated in

the former proceeding"; (3) it "must have been necessarily decided in the former proceeding";

(4) "the decision in the former proceeding must be final and on the merits"; (5) "the party against

whom preclusion is sought must be the same as, or in privity with, the party to the former

proceeding"; and (6) application of issue preclusion must be consistent with the public policies

of "preservation of the integrity of the judicial system, promotion of judicial economy, and

protection of litigants from harassment by vexatious litigation." Whether the elements of issue

preclusion are met is a factual issue on which Karapet has the burden to "introduce a record

sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior

action." *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995); *Berr v. FDIC (In*

*re Berr)*, 172 B.R. 299, 306 (9th Cir. BAP 1994). This burden is made weightier by the

presumption against applying issue preclusion in nondischargeability cases. *Honkanen v. Hopper*

*(In re Honkanen)*, 446 B.R. 373, 384 (9th Cir. BAP 2011). [From *In re Yaikian*, 508 B.R. 175, 183-184 (Bankr. S.D. Cal. 2014).]

The state court did not issue findings of fact and conclusions of law or state anything else that would allow us to know the basis for the award of judgment. Accordingly, there is no issue preclusion as to whether the damage was done negligently or through an intentional tort. *Ex. 2.*

2.  *Objection Based on Insufficient Specificity as to the Agency Relationship*

**MOTION: "**Section 523(a)(6) clearly requires a "willful and malicious injury by the debtor. ..." Plaintiff can meet this standard only if one imputes to the Debtor the knowledge and intent of unknown agents, representatives, or other person acting on her behalf or at her unspecified direction. Such an application involves inappropriate speculation and calls for an extremely attenuated conclusion of law with respect to agency. We are unable to determine that the Debtor acted with willfulness and malice based on the admissions. . . when they leave open the possibility that the damage to the Property was done by others. And we, like the bankruptcy court, reach this conclusion notwithstanding that the Debtor may have had an unspecified agency relationship with these third parties and may have directed them in an unspecified manner. *Cal. Capital Ins. Co. v. Riley (In re Riley)*, BAP No. CC-15-1379-TaLKi, at 16-17 (B.A.P. 9th Cir. June 8, 2016)." 8:7-19.

**RESPONSE:** *Riley* is an unpublished case, and as such may have only persuasive, not precedential, value.

Roberts has put forth his own effort, to no avail, to find *binding* precedent that is precisely on point. The most applicable discussion that he found is as follows, in a ruling issued just six weeks after the same Panel issued its ruling in *Riley*:

"When, as here, there are no allegations, evidence or findings that the debtor participated in the spouse's nondischargeable conduct or that a partnership or principal-agent relationship existed between the spouses, the bankruptcy court commits reversible error

by imputing the nondischargeable conduct to the debtor. *Id.* at 270 (citing *In re Tsurukawa*, 258 B.R. at 198)."

*In re An*, BAP No. CC-16-1001-KuFKi at 5, unpublished, Not Reported in B.R. Rptr. (B.A.P. 9th Cir. July 27, 2016), 2016 WL 4077291.

The clear implication of this statement is that if there *had* been such allegations of a principal-agent relationship – as there are in Roberts' Complaint – there might have been no error in imputing the nondischargeable conduct to the debtor. Accordingly, it would not be error to allow the case to go forward without amendment to this aspect of the Complaint.

If the above is not enough, Roberts respectfully reminds this Court that his Honor suggested to Roberts that an adversary complaint for nondischargeability might be appropriate:

"I don't think there's cause to dismiss this [bankruptcy petition], but if your allegations are right, it may be [that] this debt is nondischargeable. So I'm inclined to deny this motion, but I think you should consider filing a nondischargeability complaint."[2]

*Recording of Hearing on Roberts' Motion to Dismiss Bankruptcy Petition*, March 2, 2023, filename RS302_20230608-0954_01d999ef3fc13380.mp3, provided to Roberts on CD by the Bankruptcy Clerk's office, time codes 3:11-3:25.

This Court expressed no concerns about Roberts' agency theory, which was clearly expressed on page 15 of his Motion to Dismiss the Bankruptcy Petition (although in his Complaint, Roberts amplified on that theory and alleged alternative versions of it)[3].

---

[2] Roberts had already been planning to file an adversary complaint on 523 and 727 grounds, but he appreciated the reassurance from the Court.

[3] The only substantive difference in the allegations relating to the injury in the Complaint relative to Roberts' Motion to Dismiss the Petition, is that Roberts realized he was mistaken in alleging that Stokes was a minor at the time of the shootings. Roberts had misread something indicating

It was certainly already clear to this Court from that earlier Motion that the Debtor was not the shooter on the night of the 2014 killings. So how else, other than through an agency theory, was Roberts to bring an adversary proceeding for willful and malicious injury?

The necessity for such a theory does not mean that it necessarily "involves inappropriate speculation" or "calls for an extremely attenuated conclusion of law". The Motion cites none of the allegations from California Capital's complaint against Riley to show that Roberts' allegations are equally inadequate. Neither this Court nor Roberts are required to read the entire cited case looking for language to support the position expressed in the Motion.

While it is true that in his Complaint, Roberts "repeatedly imputes Suav's knowledge to Defendant," the Motion in no way makes clear that those imputations are inadequate under *Riley* (or, more properly, under the *binding* precedent(s) on which *Riley* was presumably based).

Certainly, Roberts' allegations did not consist solely of allegations about "Suav's" training or the lack thereof. Rather, *as one of several alternatives*, the allegations referred to the *Debtor/Defendant's* knowledge. It has not yet been factually determined who was actually in charge at the Ahalena Hookah Lounge that night, nor what knowledge had or had not been communicated from any possible agent to the Debtor/Defendant as the principal (if indeed he was not managing the Lounge that night). Those are matters for discovery.

---

Stokes' age in the transcript of his testimony; Roberts realized his mistake when he later read a news article stating that Stokes was 32 years old at the time of his arrest for the shootings.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

Moreover, among the alternative theories in the Complaint – perhaps the one with the greatest merit – is that the shooter, Travon Stokes, was injured by being provided with alcohol and possibly cocaine by *either* the Debtor *or* his *agent* Suav. Stokes then essentially became the *instrument* through which the injury underlying the *judgment debt* was committed. Roberts clearly alleged in the Complaint that the provision of the alcohol to Stokes was willful and malicious:

> "24. Suav brought Stokes' vodka bottle in for him past the door security person, and let it be known to the door security person that Stokes was not to be patted down." *Complaint*, p. 6.
>
> "29. Suav knew that providing hard liquor to Stokes was substantially certain to lead to injury to Stokes and/or to others." *Id.*, p. 7.

The Motion alleged that both Suav and the Debtor/Defendant had this knowledge, which did not have to be transferred from one of them to the other. It is common sense and common knowledge, for someone old enough and with the basic ability to manage a hookah lounge, that any alcohol and especially hard liquor damages the brain's functioning. The effects relevant here are impairment of judgment and reduction of inhibition. "The Debtor is charged with the knowledge of the natural consequences of his actions." *In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010). The fact that the provision of the liquor to Stokes was authorized and even invited by him is irrelevant. He got injured by it, and as a result three young men were shot dead.

The Motion also adequately alleged that Suav and the Debtor knew of Stokes' gang affiliation or aspirations (p. 5, para. 19), and that "Stokes habitually carried a firearm" (p. 5, para.

---

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

20). For Suav or the Debtor to "walk Stokes in" past security, as alleged, shows that the injury was willful.

Whether *the entire chain of injuries* that would ensue from that *first* injury had to be subjectively known to the Debtor/Defendant, is perhaps the real legal question here. Roberts' position, as alleged, is that once the first domino fell – with the subjective knowledge, by "Suav" and/or the Debtor/Defendant Saker, of the substantially certain injury to Stokes – the remaining dominoes were also subjectively certain to cause the injury leading to the debt (even if the *specific, final* victims were *not* known to the debtor or his agent, only the fact that there would be some victims, starting with Stokes).

"If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." FRCP 8(d)(2) / FRBP 7008(d)(2).

**MOTION:** "Under Agency theory, however, a principal is not liable for the intentional or malicious conduct of an Agent." 8:23-24. [Citing *Cecchini*:] "[T]here was insufficient evidence to establish that the business was intended to or did benefit from the wrongful conduct of James Chadick." 9:21-24.

**RESPONSE:** The Motion cites no law in support of the first sentence in the above excerpt, and it is not a true statement of the law. Indeed, if it were the law, it would establish a perverse incentive; principals could almost *never* be held accountable for the actions of their agents, because the principal could always claim that the actions of the agent were intentional rather than negligent. Yet, intentional actions that cause injury should be punished more, not less, severely than negligent ones.

---

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

> "However, unless the limitations of the agency are known or can be readily ascertained, the principal may be bound by unauthorized acts of an agent through which a third party has sustained a loss if reasonable reliance on the agent's authority is demonstrated…. Often, a principal is liable for the tortous [*sic*] acts of an agent within the course and scope of the agent's employment. However, it must be emphasized that unless the principal commands or directs the act, a principal is not liable for the torts committed by an agent while acting adversely to the principal or outside the scope of the agent's employment.

> https://www.stimmel-law.com/en/articles/agency-basic-law[4]

It was within the scope of Suav's employment (or partnership duties; see below) to control access to the Lounge (and Roberts could obviously amend the Complaint to state this). Otherwise the security guard at the door would not have deferred to Suav when he "walked Stokes in". Whether it was within that same scope to provide alcohol and illicit drugs to favored customers is another question for discovery, but it could certainly be alleged in an Amended Complaint. This is not the stage of the litigation to be talking about "insufficient evidence."

> "He who can and does not forbid that which is done on his behalf, is deemed to have bidden it."

> California Civil Code § 3519, one of the *maxims of jurisprudence*.

The more paying customers who were allowed into the Hookah Lounge, the more money the Debtor would make. Clearly, allowing Stokes to enter the Hookah Lounge was done on the Debtor/Defendant's behalf. The Debtor/Defendant's business *did* benefit from the wrongful

---

[4] Roberts requested from Stimmel Law, both through its website and by telephone, citations in support of its secondary source statement. No response was received by the time of filing of this Response. And Roberts has searched the Internet, to no avail, for citations in support. However, he has heard the principal in the excerpt stated numerous times over the years and believes it to be a fair statement of black letter law.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

conduct of his agent (if indeed "Suav" is not the Debtor/Defendant): Stokes must have been

charged a cover charge to enter the Lounge, or must have habitually purchased items such as

tobacco from the Lounge, or must have habitually brought with him other customers who *did* pay

money to the Lounge for such things; otherwise Stokes would not have been allowed in. This is

common sense and certainly plausible under *Twombly*. Roberts seeks leave to file an Amended

Complaint that makes the relevant allegations.

        *3.  Objection Based on Not Imputing Conduct or Knowledge to the Principal*

> **MOTION:** "Plaintiff cites *Lauricella* but fails to distinguish it from the case at hand. The
> court in that case too did not impute conduct or knowledge to the principal because the
> partner was not acting in the ordinary course of business. In this case, not only was [*sic*]
> the actions that led to the injury not part of Defendant's ordinary course of business, but
> Defendant was not partners with Suav." 10:1-2.

**RESPONSE:** Roberts did not cite *Lauricella* as if it disposed of all the issues, but rather to

illustrate that Congress did allow for a finding of nondischargeability in connection with an

action that is not actually *substantially certain* to result in injury: driving while under the

influence of alcohol or another intoxicating drug. It is common knowledge within the purview of

this Court that many people drive while over the legal limit for blood alcohol without causing

injury to anyone. And yet, when a driver under the influence *does* cause injury as a result of

being over the legal limit, the debt arising such an injury is nondischargeable. This provides

some wiggle room in terms of interpreting 11 USC 523(a)(6) harmoniously with the entire

statute and the interpretation of "substantially certain" from case law. "Substantially certain"

does not mean "absolutely certain," nor even does it mean "certain beyond a reasonable doubt".

The bar for "substantially certain" is simply not that high.

Moreover, the two allegations of fact in the last sentence of the excerpt from the Motion – about the ordinary course of business and the partnership issue – assert facts outside the parameters of the Complaint. They can be given no weight here. Such allegations might be appropriate to assert as denials or affirmative defenses in an Answer, but not in a Motion to Dismiss, even if they were supported by declaration (which they were not – and if they are true, why weren't they so supported?).

If Roberts needs to amend the Complaint to allege that such irresponsible behavior on the part of Debtor/Defendant and/or his agent were part of the ordinary course of business – at least with VIP customers – he should be granted leave to do so. Such an allegation would be plausible. The Complaint alleged "Suav brought Stokes' vodka bottle in for him past the door security person, and let it be known to the door security person that Stokes was not to be patted down." Para 24. That allegation was based on Travon Stokes' sworn testimony at his trial for the killings:

> Q Okay. Now, we talked about it a little bit. Why did you get the gun?
>
> A As I said, I always kept it on me for my protection after my friend [was killed], and I also knew that I was gonna be able to walk into the Hookah Lounge without being patted down.
>
> Q Because why?
>
> A Because Suav's family owned the place. He came out there to meet us and basically walked us in, and I had a bottle of alcohol with us. He took that in.
>
> *Stokes Trial Transcript*, Ex. 3.[5]

_____

[5] See also Ex. 10 to Roberts' Motion to Dismiss [Petition], lead case DE # 17.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

Thus, it wasn't by mere luck that Stokes was able to "walk into the Hookah Lounge without being patted down" and presumably also get his vodka brought in for him. He had obviously been there at least a few times before and been extended such courtesy. That courtesy by Debtor/Defendant and/or his agents toward people such as Mr. Stokes did not need to be extended to all customers, for them to be part of the ordinary course of business. Many businesses distinguish between "everyday" customers and VIP customers. The practice of one way of handling one situation one way and the other way of handling the other, do not put the courtesy "outside the ordinary course of business".

Roberts could similarly amend the Complaint with regard to the statement about the Debtor/Defendant and Suav being partners. A man who identified himself to Roberts as one of the Debtor/Defendant's sons and the person managing the Lounge that night[6], also stated to Roberts that family members – apparently including this son – had been financially supporting the Debtor/Defendant's various businesses for a number of years, but had gotten tired of losing money by doing so, and so decided to stop funding the last such business, the E Street Market.

See the next Motion excerpt and response below.

*4. Objection Based on Agent Not Being a Partner*

**MOTION:**  "There is no legal theory that Defendant is liable for the actions of an agent, especially a non partner not acting in the ordinary course of business." 10:3-4.

---

[6] That unsworn statement could certainly have been false, intended only to try to persuade Roberts to stop trying to collect the debt. And Stokes could have been confused or mistaken about who actually "owned the place" relative to "Suav".

**RESPONSE:** The sweeping generalization in the first part of that sentence is clearly false. More often than not, a principal *is* liable for the actions of his agent, especially when the agent is an employee of the principal (*respondeat superior*). The agent need not be a *partner* of the principal for this to be true; an employee-employer relationship is sufficient. Moreover, if "Suav" was among the family members who contributed money to keep the Debtor/Defendant's businesses afloat, then by all rights he *was* a partner.

Again, the Complaint could easily be alleged to add all relevant allegations. Amendment would *clearly* not be futile.

Finally, it was unlawful ("a public nuisance") for the Debtor/Defendant, whether personally or through his agent or partner, to allow the consumption of alcohol on the premises of the Lounge, given that it was not licensed to serve alcohol. This is true regardless of whether the alcohol was brought in by the customer personally or with the assistance of an employee or partner managing the premises:

> "It is a public nuisance for any person to maintain any club room in which any alcoholic beverage is received or kept, or to which any alcoholic beverage is brought, for consumption on the premises by members of the public or of any club, corporation, or association, unless the person and premises are licensed under this division….
>
> The Attorney General or any district attorney may bring an action in the name of the people to abate the nuisance, and the Attorney General shall, upon request of the department, bring the action.
>
> California Business and Professions Code § 25604.

The unlawfulness of a debtor's conduct provides additional plausibility that the conduct was willful and malicious. The purpose of requiring licensing for alcohol-serving establishments

has to do with being able to discern the level of intoxication of a customer for the purpose of

public safety:

> The topics covered in this course include:
>> The Social Impact of Alcohol
>> The Impact of Alcohol on the Body
>> State Laws and Regulations Relating to Alcoholic Beverage Control, Including Laws and Regulations Related to Driving Under the Influence
>> Intervention Techniques to Prevent the Service or Sale of Alcoholic Beverages to Underage Persons or Intoxicated Patrons
>> Development of Management Policies that Support the Prevention of Service or Sale of Alcoholic Beverages to Underage Persons or Intoxicated Patrons.

*California Responsible Beverage Service Training*, excerpt downloaded by Roberts from https://foodserviceprep.com/Courses/CaliforniaRBSAlcoholSellerServer, October 21, 2023.

Roberts requests leave to amend the complaint to add allegations relevant to this issue.

## C.  DETAILED RESPONSES TO THE MOTION REGARDING THE 727 CAUSE OF ACTION

> *1. Objection Based on Denying the Evidence and Seeing the Trustees as Infallible*

> **MOTION:**  "In his Complaint, Plaintiff concludes without any factual support or sworn declaration that Defendant concealed, destroyed and failed to preserve documents. Plaintiff ignores the testimony that resulted from extensive examination by the Chapter 7 Trustee, the UST, and Roberts himself, at the continued Meeting of Creditors on May, 17 2023. In that meeting, Debtor was questioned by all three of the above and the Chapter 7 trustee and the US Trustee both determined that there was no evidence that Debtor concealed, destroyed or failed to preserve documents." 9:8-16.

**RESPONSE:**  First, Roberts had no duty, nor is it normal practice, to include a sworn

declaration with the Complaint. Counsel for Debtor/Defendant certainly knows that all well-

pleaded allegations of the Complaint must be taken as true for purposes of a motion to dismiss.

The above statement in the Motion is disingenuous for another reason. Not only did

Roberts make well-pleaded allegations in support of his conclusions about destruction,

concealment, or failure to preserve documents; he went beyond his duty in a Complaint by

providing *documentary evidence* – the kind of evidence that is almost always taken as more

convincing than self-serving testimony. This portion of the Complaint started with paragraph 51

on page 9:

> "51. The records haphazardly provided to Roberts eventually showed twenty-eight (28) transfers to a Wells Fargo account for which no statements had been provided, totaling $21,703.49. Exhibit 8 to Roberts' Motion to Dismiss (main case DE #17), p. 1."
>
> 52. These transfers were sent from a Wells Fargo account held in a fictitious business name of Saker Enterprise Inc., "E Street Market," to an account held in the actual corporate name.
>
> 53. Saker controlled both these accounts, as well as a personal checking account held at Arrowhead Credit Union.
>
> 54. Twenty-one (21) payments were made from the E Street Market account to Nationstar DBA Mr. Cooper, the company apparently holding Saker's personal mortgage, totaling $72,144.64 (*Id.*, p. 3).
>
> 55. Saker made twenty-three (23) cash withdrawals from the Wells Fargo E Street Market business account and Arrowhead personal accounts totaling $66,402.04. *Id.*, p. 2.
>
> 56. The number and amount of cash withdrawals made from the Saker Enterprise, Inc. account remain unknown to Roberts and the Trustee.
>
> 57. Although Roberts reported the above-described situation to the Trustee, the Trustee never requested that Saker produce the missing records.
>
> 58. At the May 17 341(a) Meeting, counsel for the US Trustee, Everett Green, stated in essence, "Our office will submit a request for bank statements of companies that you owned or operated."
>
> 59. At that same meeting, Roberts asked Saker why he never produced the Saker Enterprise bank statements. Saker responded, in essence, that he had provided his state court attorney with all the documents available to him.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

60. Roberts followed up by speaking with a paralegal for that state court attorney. She checked the file and stated to Roberts that no statements had been provided to the firm pursuant to the Saker Enterprise account.

61. In response to an email follow-up by Roberts, Mr. Green stated on June 6, "At the moment, I am holding off on conducting discovery in the Saker case until the court rules on the motion to dismiss. The debtor has raised various defenses and rebuttals to your allegations. I will re-assess after the hearing."

62. The "rebuttals" in Saker's Opposition (main case DE #19) did not contradict any of Roberts' allegations above, other than stating that "E Street Market" was a fictitious business name of Saker rather than that of his company (a statement "supported" by a list of business license holders rather than fictitious business name registrations; see below).

63. Saker's Opposition was unaccompanied by any of the missing bank statements, nor by a declaration in support."

*Complaint*, DE #1, pp. 9-11.

Rather than attempting to waive this evidence away in a Motion to Dismiss, a litigant interested in establishing his credibility and innocence of the charges in the Complaint would pay a few dollars for another set of statements from his bank, and then file them as an exhibit to the Motion, or as an exhibit to an Answer denying the allegations of the Complaint. Instead, the Motion tries to simply wave away the allegations and hide behind the lack of action by the Trustees.[7] Wouldn't it have made more sense to go ahead and DISPROVE the allegations? The

---

[7] Roberts remembers this Court's comments – again from the hearing on Roberts' Motion to Dismiss the Debtor/Defendant's *petition* – to the effect that the Trustees are disinterested parties and so this Court trusts their professional judgment far more than the self-serving statements of creditors or debtors. Roberts respectfully urges this Court to consider, first, that the Bankruptcy Trustees are *very busy* and *are not paid much for each case*. Nor are they paid extra for conducting a second Meeting of Creditors, and might well resent being "put on the spot" to do so. On information and belief, Trustees are not paid a commission for urging the denial of a discharge. The incentive structure drives them to dispose of each case as fast as possible, within some bounds of discretion, which might vary considerably from Trustee to Trustee.

---

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

fact that the account is now closed provides little obstacle to obtaining the records.

Debtor/Defendant might have had to pay a little bit more for them than he would if the account

were still open and he had lost them. With his family allegedly giving him $4000 per month to

live on when his home is completely paid for, he had plenty of money to pay for extra copies of

statements from a closed bank account.

_____

Roberts has not been involved in many bankruptcy cases. However, in one of those few cases, a
complaint that Roberts submitted to the US Trustee regarding the apparent violation of law by a
Bankruptcy Trustee resulted in an apology and a promise of remedial training from the US
Trustee. Ex. 4.

Roberts suggests to this Court that a lack of action on the part of Bankruptcy Trustees in the face
of "smoke that might indicate fire" is more common – and bankruptcy debtors are getting away
with more misconduct – than this Court currently suspects.

The Court might not be aware that the Trustee's Manual does *not* direct the Trustee to file a
nondischargeability action in every case just because the Trustee believes that such an action
would have merit:

> "The Trustee testified that she has not objected to the Debtor's discharge and she
> has not joined this adversary proceeding. She explained that under the manual for
> trustees she is required to undergo a cost-benefit analysis before pursuing a
> nondischargeability action, including considering the expense of pursuing the
> action, the *35 likelihood of success on the merits and whether such an action
> would benefit creditors. She testified that this Chapter 7 case is an asset case, but
> that after considering the cost-benefit factors as required by the trustees manual
> she decided not to object to Debtor's discharge."

> *In re Liechti*, United States Bankruptcy Court, D. Montana, December 16, 2015, 543 BR
> 26.

Thus, even in a case where assets were available for distribution to creditors, *the Trustee decided
not to litigate against a debtor he/she believed had violated bankruptcy law*, relying on the
official Trustee's Manual cost-benefit directive to justify that decision.

At the Second Meeting of Creditors, which convened at noon on May 17, 2023, Debtor/Defendant stated that he gave his state court attorney "everything." Roberts had already had many previous email and telephonic communications with legal assistant Shirley Ann Claybon, "Office Manager" at The Carson Law Firm, Debtor/Defendant's state court attorney. After that last Meeting of Creditors, Roberts called Ms. Claybon again regarding the missing bank statements. Claybon forwarded Roberts an email that she had stated by telephone contained the last set of documents received by that office from or on behalf of Debtor/Defendant. Ex. 5. See also the Complaint at paras. 59 and 60 on p. 10.

The email from Nakaa Clark, who had been telephonically introduced as Debtor/Defendant's daughter by the latter's state court counsel to Roberts during a previous conference call, was dated March 3, 2023. Claybon forwarded it to Roberts on May 17, at 2:35 PM, the same day as the Second Meeting. The documents pertained only to the foreclosure of the E Street Market property; they included no bank statements. Roberts had already several times before this brought the missing Saker Enterprise Inc. statements to the attention of that law office. See Roberts' Motion to Dismiss the Debtor/Defendant's petition, Case #6:23-bk-10976-SY, DE #17, pp. 8-13. The gap in the records production was obviously no mere oversight, but a long-running deliberate act of "playing dumb" – one that persisted long after the filing of the petition.

Even if Debtor/Defendant had followed the suggestion to file the missing statements as an exhibit to the Motion in an attempt to prove his innocence, it would be too little, too late. The violation justifying denial of discharge lies in the Debtor/Defendant's failure and refusal to

provide the documents necessary for Roberts and the Trustee(s) to conduct a reasonably

thorough but *inexpensive* investigation *before* the deadline to file a 727 adversary proceeding.

Moreover, Roberts had no obligation to go beyond the Meetings of Creditors by

expending the resources necessary to examine the Debtor/Defendant and witnesses under Rule

2004 to justify his cause of action under 727 by proving that undisclosed assets existed, were

dissipated or moved outside the jurisdiction, or anything like that. The fact that the

Debtor/Defendant made it impossible for Roberts to form a reasonable conclusion as to whether

undisclosed assets existed, justifies the 727 claim.

Cause for denial of discharge under a 727 failure to preserve or produce relevant

documents cannot be remedied by a late production of the documents, regardless of what they

show.  The concealment of *relevant records alone* justifies denial of discharge, without any need

to allege or prove actual concealment of assets that would have been available for distribution to

creditors.

In support of all the above arguments, Roberts provides the following case law citations:

"The court shall grant the debtor a discharge, unless ... the debtor has concealed,
destroyed, mutilated, falsified, or failed to keep or preserve any recorded
information, including books, documents, *190 records, and papers, from which
the debtor's financial condition or business transactions might be ascertained,
unless such act or failure to act was justified under all of the circumstances of the
case." 11 U.S.C. § 727(a)(3). Section 727(a)(3) of the Bankruptcy Code does not
require that a debtor preserve and provide all financial records. *Caneva v. Sun
Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008).
However, the debtor must provide written documentation which would allow
creditors to "ascertain his present financial condition and to follow his business
transactions for a reasonable period in the past." *Rhoades v. Wikle*, 453 F.2d 51,

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

53 (9th Cir. 1971). An objector establishes a § 727(a)(3) prima facie case by showing that: (1) the debtor failed to maintain and preserve adequate records; and (2) this failure rendered it impossible to ascertain the debtor's financial condition and material business transactions. *In re Caneva*, 550 F.3d at 761."

*In re Wyatt*, 625 B.R. 184 at 190-191 (2020), Bankr. L. Rep. P 83,604.

"[12] In this case, the bankruptcy court determined that the false statements and omissions in Debtors' petition were not material solely because Fogal did not show that the assets had sufficient value to increase the amount paid to creditors. *64 Based on the above authorities, we conclude that a statement or omission relating to an asset that is of little value or that would not be property of the estate can be material if it detrimentally affects the administration of the estate.

The bankruptcy court applied an incorrect interpretation of the materiality requirement of § 727(a)(4)(A)."

*In re Wills*, 243 B.R. 58 (1999) at 63-64, 43 Collier Bankr.Cas.2d 852, 35 Bankr.Ct.Dec. 121, Bankr. L. Rep. P 78,086.

"[S]ee also *In re Devers*, 759 F.2d at 754 (concluding that debtors could be denied discharge under § 727(a)(5) where they failed to offer a "satisfactory explanation" for the "disappearance" of a tractor that they had owned that they did not produce for repossession). Once the creditor has made a prima facie case, the debtor must offer credible evidence regarding the disposition of the missing assets. *In re Devers*, 759 F.2d at 754.

*In re Retz*, 606 F.3d 1189 (2010) Bankr. L. Rep. P 81,776, 10 Cal. Daily Op. Serv. 6914, 2010 Daily Journal D.A.R. 8241.

A false statement or omission may be material even in the absence of direct financial prejudice to creditors. See *Weiner*, 208 B.R. at 72 [*Weiner v. Perry, Settles & Lawson (In re Weiner)*, 208 B.R. 69, 72 (9th Cir. BAP 1997)]; *Chalik*, 748 F.2d at 618 []; see also *Stanley v. Hoblitzell (In re Hoblitzell)*, 223 B.R. 211, 215–16 (Bankr.E.D.Cal.1998) (omission of an asset may be material despite the lack of prejudice to the estate or to creditors, "if it aids in understanding the debtor's financial affairs and transactions"); *Ford v. Ford (In re Ford)*, 159 B.R. 590, 593 (Bankr.D.Or.1993) (omission or false statement may be material if it concerns discovery of assets, materiality does not depend on the financial significance of the omitted assets, and detriment to creditors need not be shown); *Sergent v. Haverland (In re Haverland)*, 150 B.R. 768, 771 (Bankr.S.D.Cal.1993) (materiality of false oath does not depend on detriment to creditors).

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

*In re Roberts*, 331 B.R. 876 (2005), p. 6.

All that is required for a denial of discharge under the plain language of §
727(a)(4)(A) is a single false oath or account. *Smith v. Grondin (In re Grondin)*,
232 B.R. 274, 277 (1st Cir. BAP 1999) (citing *Schmitz* ).

*In re Wright*, 364 B.R. 51 (2007), at 73.

Fraudulent intent may be inferred from a pattern of behavior. *Devers v. Sheridan
(In re Devers)*, 759 F.2d 751, 754 (9th Cir.1985). The denial of discharge was
proper.

*In re Khalil*, 578 F.3d 1167 (2009), p. 2, 09 Cal. Daily Op. Serv. 10,852, 2009
Daily Journal D.A.R. 12,601

*2. Objection Based on Pretending the Debtor Is Allowed to Give a False Account As Long
As It Is Unsworn; and Based on Assertions Outside the Complaint*

**MOTION:** "Plaintiff's allegations that Defendant made false statements in his
opposition to Robert's [*sic*] Motion to Dismiss is unfounded. Debtor's opposition to
Roberts [*sic*] motion to dismiss was not accompanied by a sworn declaration. Plaintiff
asserts that Defendant failed to disclose that E Street Market was a partnership with his
son. To the best of Debtor's knowledge and recollection, he was and acted as the only
owner of E Street Market. While technically Debtor and his son were partners in name,
the records and bank statements show all transactions were between Debtor and E Street
Market."

**RESPONSE:** First, the language of the statute is not restricted to a false *oath*; a false *account*

*presented by the Debtor/Defendant as part of the bankruptcy lead case OR ensuing litigation*,

even if unsworn, is sufficient to deny discharge.

Second, the last sentence is disingenuous. As clearly alleged (and supported by exhibits),

numerous transactions were between an account held in the name of E Street Market and another

account held in the name of Saker Enterprise Inc. *No statements from the latter account were*

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

25

*provided.* Cash withdrawals or transfers to overseas accounts from that account could have been made so as to squirrel away assets and/or remove them from the jurisdiction.

To belabor what might be obvious, disclosed transfers to an account where no statements were provided allow for the debtor to have withdrawn significant amounts of cash and squirreled them away, out of view and the reach of creditors and the Trustee. Again, that *concealment* is the violation, regardless of whether any such "squirreling away" actually occurred, because the concealment made it impossible (or at least would have required a much more resource-intensive Rule 2004 examination with subpoenas) under the circumstances to determine whether any such squirreling away had occurred.

### D. CONCLUSION

The Complaint is nowhere near deficient enough as to make amendment futile. Leave to amend should be granted.

Roberts requests at least eight weeks from the date of the Order granting leave as the deadline to file an Amended Complaint, to provide time to obtain transcripts and other evidence, in hopes of staving off another Motion to Dismiss from the Debtor/Defendant.

Respectfully submitted this _23rd_ day of October, 2023.

_Gregg Roberts_ Gregg Roberts

Gregg Roberts
43430 E Florida Ave Ste #F-293
Hemet CA 92544
951-330-4450
Assignee of Record and Judgment Creditor, Pro Se

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

In re Jihad Saker,

Debtor

      Gregg Roberts,
      Plaintiff,
      v.

      Jihad Saker,
      Defendant

Main Case #6:23-bk-10976-SY
Chapter 7
Adv. Proc. Case #6:23-ap-01055-SY

**DECLARATION OF GREGG ROBERTS**

    I am over the age of 18 years and competent to make this Declaration. I have personal knowledge of the matters herein, other than those indicated as being known by information and belief, and I would and could competently testify about them if called to do so.

    All factual claims in the accompanying Response are true and correct, to the best of my knowledge, information, and belief.

---

DECLARATION OF GREGG ROBERTS

1

All exhibits to this Motion are true and correct copies of the documents that they purport to be.

All the words transcribed from any proceeding recordings are accurate to the best of my knowledge, information, and belief.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Signed at Hemet, California, this _____th day of October, 2023.

_____

Gregg Roberts

DECLARATION OF GREGG ROBERTS

2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 ~~and not a party to this bankruptcy case or adversary proceeding.~~ My business address is:

43430 E Florida Ave F-293, Hemet CA 92544                                      A.R.

A true and correct copy of the foregoing document entitled (*specify*): <u>RESPONSE IN OPPOSITION TO MOTION TO</u>
<u>MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND; Declaration of Gregg Roberts; and five exhibits</u>
_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

I have no access to CM/ECF.

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>10/23/2023</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.
Debtor Counsel: Amanda Billyard, Financial Relief Law Center, 1200 Main St, Ste C, Irvine, CA 92614-6749 via email per written permission.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/23/2023 | Gregg Roberts | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

PO Box 100599, Denver CO 80250

A true and correct copy of the foregoing document entitled (*specify*): RESPONSE IN OPPOSITION TO MOTION TO
MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND; Declaration of Gregg Roberts; and five exhibits

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

I have no access to CM/ECF.

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 10 23 23, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Debtor: Jihad Saker, 1137 W. 17th St., San Bernardino, CA 92411
Hon. Scott Yun, United States Courthouse, 3420 Twelfth Street, Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10 23 23 | RODNEY D GAGNON | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                             **F 9013-3.1.PROOF.SERVICE**