Gregg Roberts
43430 E Florida Ave Ste #F-293
Hemet CA 92544
951-330-4450
gregg@legalsupport-sc.com
Assignee of Record and Judgment Creditor, Pro Se

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| In re Jihad Saker,<br><br>Debtor<br><br>    Gregg Roberts,<br>    Plaintiff,<br>    v.<br><br>    Jihad Saker,<br>    Defendant | Main Case #6:23-bk-10976-SY<br>Chapter 7<br>Adv. Proc. Case #6:23-ap-01055-SY<br>**Amended**<br>**RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND**<br><br>Judge: Hon. Scott H. Yun |

## A. SUMMARY

The Motion casts many aspersions but barely makes a dent in the overall adequacy of the Complaint. The Motion points to the weakest portions of the Complaint, ignoring the fact that several sets of allegations are made in the alternative with a stronger prong than the one attacked. The Motion implies that the case is already at the stage where evidence must be supplied; clearly that is not true. Allegations that Roberts cannot YET prove must be assumed to be true for purposes of a motion to dismiss, as long as they meet the general plausibility requirements of

---

*Twombly* and *Iqbal*. Debtor counsel must be aware of these things, but is apparently hoping that Roberts and his Court are not.

Regardless, Roberts acknowledges that the Complaint could be strengthened. Roberts requests leave to do so. Although he has identified some specific places where he would like to add some allegations, he invites guidance from this Court as to the specific issues that need attention. This will help minimize the chance of an additional Motion to Dismiss, moving the case forward with judicial economy.

Leave to amend shall be liberally granted. "The court should freely give leave when justice so requires." FRCP 15, which "applies in adversary proceedings." FRBP 7015.

> "In the Central District, the plaintiff in an adversary proceeding almost always gets at least one extra bite at the apple, if not two or three."
> The Hon. Scott Clarkson, at a telephonic hearing on a Motion to Dismiss one of Roberts' previous adversary complaints.[1]

---

[1] Roberts does not remember the date of this hearing and does not have the resources to order transcripts of all the hearings, but he clearly remembers the essential details of the statement.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

## Contents

A.  SUMMARY ................................................................................................ 1

B.  DETAILED RESPONSES TO THE MOTION REGARDING THE 523(a)(6) CAUSE
OF ACTION ................................................................................................ 6

   1.  Statute of Limitations Objection .............................................................. 6

   2.  Objection Based on Insufficient Specificity as to the Agency Relationship .............. 8

   3.  Objection Based on Not Imputing Conduct or Knowledge to the Principal ............ 14

   4.  Objection Based on Agent Not Being a Partner ...................................... 16

C.  DETAILED RESPONSES TO THE MOTION REGARDING THE 727 CAUSE OF
ACTION ................................................................................................ 18

   1.  Objection Based on Denying the Evidence and Seeing the Trustees as Infallible ... 18

   2.  Objection Based on Pretending the Debtor Is Allowed to Give a False Account As Long
As It Is Unsworn; and Based on Assertions Outside the Complaint .............................. 25

D.  CONCLUSION ................................................................................................ 26

**Cases**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................14

*Berr v. FDIC (In re Berr)*, 172 B.R. 299......................................................................7

*Cal. Capital Ins. Co. v. Riley (In re Riley)*, BAP No. CC-15-1379-TaLKi ............................8, 10

*Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755 ........................23, 24

*Cecchini, 780 F.2d at 1444* .......................................................................12

*Devers v. Sheridan (In re Devers)*, 759 F.2d 751, 754 (9th Cir.1985) .........................................25

*Grogan v. Garner*, 498 U.S. 279 ...........................................................................7

*Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373 ..................................................8

*In re An*, BAP No. CC-16-1001-KuFKi..................................................................9

*In re Devers*, 759 F.2d at 754 ...........................................................................24

*In re Khalil*, 578 F.3d 1167 (2009), p. 2, 09 Cal. Daily Op. Serv. 10,852, 2009 Daily Journal
    D.A.R. 12,601 .......................................................................................25

*In re Lauricella*, 105 B.R. 536..........................................................................14

*In re Retz*, 606 F.3d 1189 (2010) Bankr. L. Rep. P 81,776, 10 Cal. Daily Op. Serv. 6914, 2010
    Daily Journal D.A.R. 8241 ........................................................................24

*In re Roberts*, 331 B.R. 876 (2005)....................................................................25

*In re Tsurukawa*, 258 B.R. at 198........................................................................9

*In re Wills*, 243 B.R. 58 (1999) at 63-64, 43 Collier Bankr.Cas.2d 852, 35 Bankr.Ct.Dec. 121,
    Bankr. L. Rep. P 78,086 ............................................................................24

*In re Wright*, 364 B.R. 51 (2007),......................................................................25

*In re Wyatt*, 625 B.R. 184 at 190-191 (2020), Bankr. L. Rep. P 83,604.....................................24

*Kelly v. Okoye (In re Kelly)*, 182 B.R. 255...............................................................7

*Lucido v. Superior Court*, 51 Cal.3d 335 ...............................................................7

*Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir. 1971)....................................................24

*Sergent v. Haverland (In re Haverland)*, 150 B.R. 768, 771 (Bankr.S.D.Cal.1993)...................24

*Smith v. Grondin (In re Grondin)*, 232 B.R. 274, 277 (1st Cir. BAP 1999) ...............................25

*Weiner v. Perry, Settles & Lawson (In re Weiner)*, 208 B.R. 69, 72 (9th Cir. BAP 1997)............24

**Statutes**

California Civil Code § 3519......................................................................................................13

FRCP 8(d)(2) / FRBP 7008(d)(2) ............................................................................................12

**B.  DETAILED RESPONSES TO THE MOTION REGARDING THE 523(a)(6)**

**CAUSE OF ACTION**

*1.  Statute of Limitations Objection*

**MOTION:**  "Plaintiffs allegations are barred by the statute of limitations. Bankruptcy Court applies state law statute of limitations. In this case, Plaintiff allegations willful or malicious conduct is barred by the 2 year statute of limitations in CA for intentional torts. Therefore, if Plaintiff wanted to assert intentional tortious claims against Defendant, it must have been brought within 2 years of the act. Accordingly, the statute of limitations as to willful or malicious or intentional torts has run." 3:20-22.

**RESPONSE:** This is a shocking misstatement of both the relevant facts of this case and the applicable law. The state court Complaint DID allege intentional tort, at Item 10(c):

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: CIVDS1607235 |
| --- | --- |

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
   a. [ ] Motor Vehicle
   b. [X] General Negligence
   c. [X] Intentional Tort
   d. [ ] Products Liability
   e. [X] Premises Liability
   f. [X] Other *(specify)*: Wrongful Death

*Ex. 1*, p. 3.

How did the represented Debtor/Defendant miss that?

As for the law, bankruptcy courts routinely re-examine the facts of how a debt arose and reach conclusions about what was in the mind of the debtor regarding the events that caused or created the debt, even if no allegations about the debtor's state of mind were made in state court litigation. Bankruptcy courts are restrained against making findings that go beyond the findings

of a previous court *only to the extent that there is issue preclusion*. The elements required to except a debt from discharge do not need to be alleged in the state court litigation for the debt to be ruled nondischargeable in Bankruptcy Court.

Unlike claim preclusion, issue preclusion *may* apply to a dischargeability claim. See *Grogan v. Garner*, 498 U.S. 279 at 284 n. 11, 111 S.Ct. 654 ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). Six criteria must be met for issue preclusion to apply to a California judgment under *Lucido v. Superior Court*, 51 Cal.3d 335 at 341-43, 272 Cal.Rptr. 767, 795 P.2d 1223: (1) the issue "must be identical to that decided in a former proceeding"; (2) it "must have been actually litigated in the former proceeding"; (3) it "must have been necessarily decided in the former proceeding"; (4) "the decision in the former proceeding must be final and on the merits"; (5) "the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding"; and (6) application of issue preclusion must be consistent with the public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." Whether the elements of issue preclusion are met is a factual issue on which Karapet has the burden to "introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995); *Berr v. FDIC (In re Berr)*, 172 B.R. 299, 306 (9th Cir. BAP 1994). This burden is made weightier by the presumption against applying issue preclusion in nondischargeability cases. *Honkanen v. Hopper*

---

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

*(In re Honkanen)*, 446 B.R. 373, 384 (9th Cir. BAP 2011). [From *In re Yaikian*, 508 B.R. 175, 183-184 (Bankr. S.D. Cal. 2014).]

The state court did not issue findings of fact and conclusions of law or state anything else that would allow us to know the basis for the award of judgment. Accordingly, there is no issue preclusion as to whether the damage was done negligently or through an intentional tort. *Ex. 2.*

2.  *Objection Based on Insufficient Specificity as to the Agency Relationship*

**MOTION: "**Section 523(a)(6) clearly requires a "willful and malicious injury by the debtor. ..." Plaintiff can meet this standard only if one imputes to the Debtor the knowledge and intent of unknown agents, representatives, or other person acting on her behalf or at her unspecified direction. Such an application involves inappropriate speculation and calls for an extremely attenuated conclusion of law with respect to agency. We are unable to determine that the Debtor acted with willfulness and malice based on the admissions. . . when they leave open the possibility that the damage to the Property was done by others. And we, like the bankruptcy court, reach this conclusion notwithstanding that the Debtor may have had an unspecified agency relationship with these third parties and may have directed them in an unspecified manner. *Cal. Capital Ins. Co. v. Riley (In re Riley)*, BAP No. CC-15-1379-TaLKi, at 16-17 (B.A.P. 9th Cir. June 8, 2016)." 8:7-19.

**RESPONSE:** *Riley* is an unpublished case, and as such may have only persuasive, not precedential, value.

Roberts has put forth his own effort, to no avail, to find *binding* precedent that is precisely on point. The most applicable discussion that he found is as follows, in a ruling issued just six weeks after the same Panel issued its ruling in *Riley*:

"When, as here, there are no allegations, evidence or findings that the debtor participated in the spouse's nondischargeable conduct or that a partnership or principal-agent relationship existed between the spouses, the bankruptcy court commits reversible error

---

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

by imputing the nondischargeable conduct to the debtor. *Id.* at 270 (citing *In re Tsurukawa*, 258 B.R. at 198)."

*In re An*, BAP No. CC-16-1001-KuFKi at 5, unpublished, Not Reported in B.R. Rptr. (B.A.P. 9th Cir. July 27, 2016), 2016 WL 4077291.

The clear implication of this statement is that if there *had* been such allegations of a principal-agent relationship – as there are in Roberts' Complaint – there might have been no error in imputing the nondischargeable conduct to the debtor. Accordingly, it would not be error to allow the case to go forward without amendment to this aspect of the Complaint.

If the above is not enough, Roberts respectfully reminds this Court that his Honor suggested to Roberts that an adversary complaint for nondischargeability might be appropriate:

"I don't think there's cause to dismiss this [bankruptcy petition], but if your allegations are right, it may be [that] this debt is nondischargeable. So I'm inclined to deny this motion, but I think you should consider filing a nondischargeability complaint."[2]

*Recording of Hearing on Roberts' Motion to Dismiss Bankruptcy Petition*, March 2, 2023, filename RS302_20230608-0954_01d999ef3fc13380.mp3, provided to Roberts on CD by the Bankruptcy Clerk's office, time codes 3:11-3:25.

This Court expressed no concerns about Roberts' agency theory, which was clearly expressed on page 15 of his Motion to Dismiss the Bankruptcy Petition (although in his Complaint, Roberts amplified on that theory and alleged alternative versions of it)[3].

---

[2] Roberts had already been planning to file an adversary complaint on 523 and 727 grounds, but he appreciated the reassurance from the Court.

[3] The only substantive difference in the allegations relating to the injury in the Complaint relative to Roberts' Motion to Dismiss the Petition, is that Roberts realized he was mistaken in alleging that Stokes was a minor at the time of the shootings. Roberts had misread something indicating

It was certainly already clear to this Court from that earlier Motion that the Debtor was not the shooter on the night of the 2014 killings. So how else, other than through an agency theory, was Roberts to bring an adversary proceeding for willful and malicious injury?

The necessity for such a theory does not mean that it necessarily "involves inappropriate speculation" or "calls for an extremely attenuated conclusion of law". The Motion cites none of the allegations from California Capital's complaint against Riley to show that Roberts' allegations are equally inadequate. Neither this Court nor Roberts are required to read the entire cited case looking for language to support the position expressed in the Motion.

While it is true that in his Complaint, Roberts "repeatedly imputes Suav's knowledge to Defendant," the Motion in no way makes clear that those imputations are inadequate under *Riley* (or, more properly, under the *binding* precedent(s) on which *Riley* was presumably based).

Certainly, Roberts' allegations did not consist solely of allegations about "Suav's" training or the lack thereof. Rather, *as one of several alternatives*, the allegations referred to the *Debtor/Defendant's* knowledge. It has not yet been factually determined who was actually in charge at the Ahalena Hookah Lounge that night, nor what knowledge had or had not been communicated from any possible agent to the Debtor/Defendant as the principal (if indeed he was not managing the Lounge that night). Those are matters for discovery.

---

Stokes' age in the transcript of his testimony; Roberts realized his mistake when he later read a news article stating that Stokes was 32 years old at the time of his arrest for the shootings.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

Moreover, among the alternative theories in the Complaint – perhaps the one with the greatest merit – is that the shooter, Travon Stokes, was injured by being provided with alcohol and possibly cocaine by *either* the Debtor *or* his *agent* Suav. Stokes then essentially became the *instrument* through which the injury underlying the *judgment debt* was committed. Roberts clearly alleged in the Complaint that the provision of the alcohol to Stokes was willful and malicious:

> "24. Suav brought Stokes' vodka bottle in for him past the door security person, and let it be known to the door security person that Stokes was not to be patted down." *Complaint*, p. 6.
>
> "29. Suav knew that providing hard liquor to Stokes was substantially certain to lead to injury to Stokes and/or to others." *Id.*, p. 7.

The Motion alleged that both Suav and the Debtor/Defendant had this knowledge, which did not have to be transferred from one of them to the other. It is common sense and common knowledge, for someone old enough and with the basic ability to manage a hookah lounge, that any alcohol and especially hard liquor damages the brain's functioning. The effects relevant here are impairment of judgment and reduction of inhibition. "The Debtor is charged with the knowledge of the natural consequences of his actions." *In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010). The fact that the provision of the liquor to Stokes was authorized and even invited by him is irrelevant. He got injured by it, and as a result three young men were shot dead.

The Motion also adequately alleged that Suav and the Debtor knew of Stokes' gang affiliation or aspirations (p. 5, para. 19), and that "Stokes habitually carried a firearm" (p. 5, para.

20). For Suav or the Debtor to "walk Stokes in" past security, as alleged, shows that the injury was willful.

Whether *the entire chain of injuries* that would ensue from that *first* injury had to be subjectively known to the Debtor/Defendant, is perhaps the real legal question here. Roberts' position, as alleged, is that once the first domino fell – with the subjective knowledge, by "Suav" and/or the Debtor/Defendant Saker, of the substantially certain injury to Stokes – the remaining dominoes were also subjectively certain to cause the injury leading to the debt (even if the *specific, final* victims were *not* known to the debtor or his agent, only the fact that there would be some victims, starting with Stokes).

"If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." FRCP 8(d)(2) / FRBP 7008(d)(2).

> **MOTION:** "Under Agency theory, however, a principal is not liable for the intentional or malicious conduct of an Agent." 8:23-24. [Citing *Cecchini*:] "[T]here was insufficient evidence to establish that the business was intended to or did benefit from the wrongful conduct of James Chadick." 9:21-24.

**RESPONSE:**  The Motion cites no law in support of the first sentence in the above excerpt, and it is not a true statement of the law. Indeed, if it were the law, it would establish a perverse incentive; principals could almost *never* be held accountable for the actions of their agents, because the principal could always claim that the actions of the agent were intentional rather than negligent. Yet, intentional actions that cause injury should be punished more, not less, severely than negligent ones.

---

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

"However, unless the limitations of the agency are known or can be readily ascertained, the principal may be bound by unauthorized acts of an agent through which a third party has sustained a loss if reasonable reliance on the agent's authority is demonstrated…. Often, a principal is liable for the tortous [*sic*] acts of an agent within the course and scope of the agent's employment. However, it must be emphasized that unless the principal commands or directs the act, a principal is not liable for the torts committed by an agent while acting adversely to the principal or outside the scope of the agent's employment.

https://www.stimmel-law.com/en/articles/agency-basic-law[4]

It was within the scope of Suav's employment (or partnership duties; see below) to control access to the Lounge (and Roberts could obviously amend the Complaint to state this). Otherwise the security guard at the door would not have deferred to Suav when he "walked Stokes in". Whether it was within that same scope to provide alcohol and illicit drugs to favored customers is another question for discovery, but it could certainly be alleged in an Amended Complaint. This is not the stage of the litigation to be talking about "insufficient evidence."

"He who can and does not forbid that which is done on his behalf, is deemed to have bidden it."

California Civil Code § 3519, one of the *maxims of jurisprudence*.

The more paying customers who were allowed into the Hookah Lounge, the more money the Debtor would make. Clearly, allowing Stokes to enter the Hookah Lounge was done on the Debtor/Defendant's behalf. The Debtor/Defendant's business *did* benefit from the wrongful

---

[4] Roberts requested from Stimmel Law, both through its website and by telephone, citations in support of its secondary source statement. No response was received by the time of filing of this Response. And Roberts has searched the Internet, to no avail, for citations in support. However, he has heard the principal in the excerpt stated numerous times over the years and believes it to be a fair statement of black letter law.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

13

conduct of his agent (if indeed "Suav" is not the Debtor/Defendant): Stokes must have been

charged a cover charge to enter the Lounge, or must have habitually purchased items such as

tobacco from the Lounge, or must have habitually brought with him other customers who *did* pay

money to the Lounge for such things; otherwise Stokes would not have been allowed in. This is

common sense and certainly plausible under *Twombly*. Roberts seeks leave to file an Amended

Complaint that makes the relevant allegations.

### 3. Objection Based on Not Imputing Conduct or Knowledge to the Principal

**MOTION:** "Plaintiff cites *Lauricella* but fails to distinguish it from the case at hand. The court in that case too did not impute conduct or knowledge to the principal because the partner was not acting in the ordinary course of business. In this case, not only was [*sic*] the actions that led to the injury not part of Defendant's ordinary course of business, but Defendant was not partners with Suav." 10:1-2.

**RESPONSE:** Roberts did not cite *Lauricella* as if it disposed of all the issues, but rather to

illustrate that Congress did allow for a finding of nondischargeability in connection with an

action that is not actually *substantially certain* to result in injury: driving while under the

influence of alcohol or another intoxicating drug. It is common knowledge within the purview of

this Court that many people drive while over the legal limit for blood alcohol without causing

injury to anyone. And yet, when a driver under the influence *does* cause injury as a result of

being over the legal limit, the debt arising such an injury is nondischargeable. This provides

some wiggle room in terms of interpreting 11 USC 523(a)(6) harmoniously with the entire

statute and the interpretation of "substantially certain" from case law. "Substantially certain"

does not mean "absolutely certain," nor even does it mean "certain beyond a reasonable doubt".

The bar for "substantially certain" is simply not that high.

Moreover, the two allegations of fact in the last sentence of the excerpt from the Motion – about the ordinary course of business and the partnership issue – assert facts outside the parameters of the Complaint. They can be given no weight here. Such allegations might be appropriate to assert as denials or affirmative defenses in an Answer, but not in a Motion to Dismiss, even if they were supported by declaration (which they were not – and if they are true, why weren't they so supported?).

If Roberts needs to amend the Complaint to allege that such irresponsible behavior on the part of Debtor/Defendant and/or his agent were part of the ordinary course of business – at least with VIP customers – he should be granted leave to do so. Such an allegation would be plausible. The Complaint alleged "Suav brought Stokes' vodka bottle in for him past the door security person, and let it be known to the door security person that Stokes was not to be patted down." Para 24. That allegation was based on Travon Stokes' sworn testimony at his trial for the killings:

> Q Okay. Now, we talked about it a little bit. Why did you get the gun?
>
> A As I said, I always kept it on me for my protection after my friend [was killed], and I also knew that I was gonna be able to walk into the Hookah Lounge without being patted down.
>
> Q Because why?
>
> A Because Suav's family owned the place. He came out there to meet us and basically walked us in, and I had a bottle of alcohol with us. He took that in.
>
> *Stokes Trial Transcript*, Ex. 3.[5]

---

[5] See also Ex. 10 to Roberts' Motion to Dismiss [Petition], lead case DE # 17.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

15

Thus, it wasn't by mere luck that Stokes was able to "walk into the Hookah Lounge without being patted down" and presumably also get his vodka brought in for him. He had obviously been there at least a few times before and been extended such courtesy. That courtesy by Debtor/Defendant and/or his agents toward people such as Mr. Stokes did not need to be extended to all customers, for them to be part of the ordinary course of business. Many businesses distinguish between "everyday" customers and VIP customers. The practice of one way of handling one situation one way and the other way of handling the other, do not put the courtesy "outside the ordinary course of business".

Roberts could similarly amend the Complaint with regard to the statement about the Debtor/Defendant and Suav being partners. A man who identified himself to Roberts as one of the Debtor/Defendant's sons and the person managing the Lounge that night[6], also stated to Roberts that family members – apparently including this son – had been financially supporting the Debtor/Defendant's various businesses for a number of years, but had gotten tired of losing money by doing so, and so decided to stop funding the last such business, the E Street Market.

See the next Motion excerpt and response below.

### 4. *Objection Based on Agent Not Being a Partner*

**MOTION:**  "There is no legal theory that Defendant is liable for the actions of an agent, especially a non partner not acting in the ordinary course of business." 10:3-4.

---

[6] That unsworn statement could certainly have been false, intended only to try to persuade Roberts to stop trying to collect the debt. And Stokes could have been confused or mistaken about who actually "owned the place" relative to "Suav".

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

**RESPONSE:** The sweeping generalization in the first part of that sentence is clearly false. More often than not, a principal *is* liable for the actions of his agent, especially when the agent is an employee of the principal (*respondeat superior*). The agent need not be a *partner* of the principal for this to be true; an employee-employer relationship is sufficient. Moreover, if "Suav" was among the family members who contributed money to keep the Debtor/Defendant's businesses afloat, then by all rights he *was* a partner.

Again, the Complaint could easily be alleged to add all relevant allegations. Amendment would *clearly* not be futile.

Finally, it was unlawful ("a public nuisance") for the Debtor/Defendant, whether personally or through his agent or partner, to allow the consumption of alcohol on the premises of the Lounge, given that it was not licensed to serve alcohol. This is true regardless of whether the alcohol was brought in by the customer personally or with the assistance of an employee or partner managing the premises:

> "It is a public nuisance for any person to maintain any club room in which any alcoholic beverage is received or kept, or to which any alcoholic beverage is brought, for consumption on the premises by members of the public or of any club, corporation, or association, unless the person and premises are licensed under this division….
>
> The Attorney General or any district attorney may bring an action in the name of the people to abate the nuisance, and the Attorney General shall, upon request of the department, bring the action.
>
> California Business and Professions Code § 25604.

The unlawfulness of a debtor's conduct provides additional plausibility that the conduct was willful and malicious. The purpose of requiring licensing for alcohol-serving establishments

has to do with being able to discern the level of intoxication of a customer for the purpose of

public safety:

> The topics covered in this course include:
>> The Social Impact of Alcohol
>> The Impact of Alcohol on the Body
>> State Laws and Regulations Relating to Alcoholic Beverage Control, Including Laws and Regulations Related to Driving Under the Influence
>> Intervention Techniques to Prevent the Service or Sale of Alcoholic Beverages to Underage Persons or Intoxicated Patrons
>> Development of Management Policies that Support the Prevention of Service or Sale of Alcoholic Beverages to Underage Persons or Intoxicated Patrons.

*California Responsible Beverage Service Training*, excerpt downloaded by Roberts from https://foodserviceprep.com/Courses/CaliforniaRBSAlcoholSellerServer, October 21, 2023.

Roberts requests leave to amend the complaint to add allegations relevant to this issue.

## C.  DETAILED RESPONSES TO THE MOTION REGARDING THE 727 CAUSE OF ACTION

*1. Objection Based on Denying the Evidence and Seeing the Trustees as Infallible*

**MOTION:**  "In his Complaint, Plaintiff concludes without any factual support or sworn declaration that Defendant concealed, destroyed and failed to preserve documents. Plaintiff ignores the testimony that resulted from extensive examination by the Chapter 7 Trustee, the UST, and Roberts himself, at the continued Meeting of Creditors on May, 17 2023. In that meeting, Debtor was questioned by all three of the above and the Chapter 7 trustee and the US Trustee both determined that there was no evidence that Debtor concealed, destroyed or failed to preserve documents." 9:8-16.

**RESPONSE:**  First, Roberts had no duty, nor is it normal practice, to include a sworn

declaration with the Complaint. Counsel for Debtor/Defendant certainly knows that all well-

pleaded allegations of the Complaint must be taken as true for purposes of a motion to dismiss.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

18

The above statement in the Motion is disingenuous for another reason. Not only did Roberts make well-pleaded allegations in support of his conclusions about destruction, concealment, or failure to preserve documents; he went beyond his duty in a Complaint by providing *documentary evidence* – the kind of evidence that is almost always taken as more convincing than self-serving testimony. This portion of the Complaint started with paragraph 51 on page 9:

"51. The records haphazardly provided to Roberts eventually showed twenty-eight (28) transfers to a Wells Fargo account for which no statements had been provided, totaling $21,703.49. Exhibit 8 to Roberts' Motion to Dismiss (main case DE #17), p. 1."

52. These transfers were sent from a Wells Fargo account held in a fictitious business name of Saker Enterprise Inc., "E Street Market," to an account held in the actual corporate name.

53. Saker controlled both these accounts, as well as a personal checking account held at Arrowhead Credit Union.

54. Twenty-one (21) payments were made from the E Street Market account to Nationstar DBA Mr. Cooper, the company apparently holding Saker's personal mortgage, totaling $72,144.64 (*Id.*, p. 3).

55. Saker made twenty-three (23) cash withdrawals from the Wells Fargo E Street Market business account and Arrowhead personal accounts totaling $66,402.04. *Id.*, p. 2.

56. The number and amount of cash withdrawals made from the Saker Enterprise, Inc. account remain unknown to Roberts and the Trustee.

57. Although Roberts reported the above-described situation to the Trustee, the Trustee never requested that Saker produce the missing records.

58. At the May 17 341(a) Meeting, counsel for the US Trustee, Everett Green, stated in essence, "Our office will submit a request for bank statements of companies that you owned or operated."

59. At that same meeting, Roberts asked Saker why he never produced the Saker Enterprise bank statements. Saker responded, in essence, that he had provided his state court attorney with all the documents available to him.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

60. Roberts followed up by speaking with a paralegal for that state court attorney. She checked the file and stated to Roberts that no statements had been provided to the firm pursuant to the Saker Enterprise account.

61. In response to an email follow-up by Roberts, Mr. Green stated on June 6, "At the moment, I am holding off on conducting discovery in the Saker case until the court rules on the motion to dismiss. The debtor has raised various defenses and rebuttals to your allegations. I will re-assess after the hearing."

62. The "rebuttals" in Saker's Opposition (main case DE #19) did not contradict any of Roberts' allegations above, other than stating that "E Street Market" was a fictitious business name of Saker rather than that of his company (a statement "supported" by a list of business license holders rather than fictitious business name registrations; see below).

63. Saker's Opposition was unaccompanied by any of the missing bank statements, nor by a declaration in support."

*Complaint*, DE #1, pp. 9-11.

Rather than attempting to waive this evidence away in a Motion to Dismiss, a litigant interested in establishing his credibility and innocence of the charges in the Complaint would pay a few dollars for another set of statements from his bank, and then file them as an exhibit to the Motion, or as an exhibit to an Answer denying the allegations of the Complaint. Instead, the Motion tries to simply wave away the allegations and hide behind the lack of action by the Trustees.[7] Wouldn't it have made more sense to go ahead and DISPROVE the allegations? The

_____

[7] Roberts remembers this Court's comments – again from the hearing on Roberts' Motion to Dismiss the Debtor/Defendant's *petition* – to the effect that the Trustees are disinterested parties and so this Court trusts their professional judgment far more than the self-serving statements of creditors or debtors. Roberts respectfully urges this Court to consider, first, that the Bankruptcy Trustees are *very busy* and *are not paid much for each case*. Nor are they paid extra for conducting a second Meeting of Creditors, and might well resent being "put on the spot" to do so. On information and belief, Trustees are not paid a commission for urging the denial of a discharge. The incentive structure drives them to dispose of each case as fast as possible, within some bounds of discretion, which might vary considerably from Trustee to Trustee.

1  fact that the account is now closed provides little obstacle to obtaining the records.

2  Debtor/Defendant might have had to pay a little bit more for them than he would if the account

3  were still open and he had lost them. With his family allegedly giving him $4000 per month to

4  live on when his home is completely paid for, he had plenty of money to pay for extra copies of

5  statements from a closed bank account.

6

7

8

9  ———————————————

10  Roberts has not been involved in many bankruptcy cases. However, in one of those few cases, a
complaint that Roberts submitted to the US Trustee regarding the apparent violation of law by a

11  Bankruptcy Trustee resulted in an apology and a promise of remedial training from the US
Trustee. Ex. 4.

12

13  Roberts suggests to this Court that a lack of action on the part of Bankruptcy Trustees in the face
of "smoke that might indicate fire" is more common – and bankruptcy debtors are getting away

14  with more misconduct – than this Court currently suspects.

15

16  The Court might not be aware that the Trustee's Manual does *not* direct the Trustee to file a
nondischargeability action in every case just because the Trustee believes that such an action

17  would have merit:

18        "The Trustee testified that she has not objected to the Debtor's discharge and she
has not joined this adversary proceeding. She explained that under the manual for

19        trustees she is required to undergo a cost-benefit analysis before pursuing a
nondischargeability action, including considering the expense of pursuing the

20        action, the *35 likelihood of success on the merits and whether such an action
would benefit creditors. She testified that this Chapter 7 case is an asset case, but

21        that after considering the cost-benefit factors as required by the trustees manual
she decided not to object to Debtor's discharge."

22

23        *In re Liechti*, United States Bankruptcy Court, D. Montana, December 16, 2015, 543 BR

24        26.

25  Thus, even in a case where assets were available for distribution to creditors, *the Trustee decided*

26  *not to litigate against a debtor he/she believed had violated bankruptcy law*, relying on the
official Trustee's Manual cost-benefit directive to justify that decision.

27

28      RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

At the Second Meeting of Creditors, which convened at noon on May 17, 2023, Debtor/Defendant stated that he gave his state court attorney "everything." Roberts had already had many previous email and telephonic communications with legal assistant Shirley Ann Claybon, "Office Manager" at The Carson Law Firm, Debtor/Defendant's state court attorney. After that last Meeting of Creditors, Roberts called Ms. Claybon again regarding the missing bank statements. Claybon forwarded Roberts an email that she had stated by telephone contained the last set of documents received by that office from or on behalf of Debtor/Defendant. Ex. 5. See also the Complaint at paras. 59 and 60 on p. 10.

The email from Nakaa Clark, who had been telephonically introduced as Debtor/Defendant's daughter by the latter's state court counsel to Roberts during a previous conference call, was dated March 3, 2023. Claybon forwarded it to Roberts on May 17, at 2:35 PM, the same day as the Second Meeting. The documents pertained only to the foreclosure of the E Street Market property; they included no bank statements. Roberts had already several times before this brought the missing Saker Enterprise Inc. statements to the attention of that law office. See Roberts' Motion to Dismiss the Debtor/Defendant's petition, Case #6:23-bk-10976-SY, DE #17, pp. 8-13. The gap in the records production was obviously no mere oversight, but a long-running deliberate act of "playing dumb" – one that persisted long after the filing of the petition.

Even if Debtor/Defendant had followed the suggestion to file the missing statements as an exhibit to the Motion in an attempt to prove his innocence, it would be too little, too late. The violation justifying denial of discharge lies in the Debtor/Defendant's failure and refusal to

---

provide the documents necessary for Roberts and the Trustee(s) to conduct a reasonably

thorough but *inexpensive* investigation *before* the deadline to file a 727 adversary proceeding.

Moreover, Roberts had no obligation to go beyond the Meetings of Creditors by

expending the resources necessary to examine the Debtor/Defendant and witnesses under Rule

2004 to justify his cause of action under 727 by proving that undisclosed assets existed, were

dissipated or moved outside the jurisdiction, or anything like that. The fact that the

Debtor/Defendant made it impossible for Roberts to form a reasonable conclusion as to whether

undisclosed assets existed, justifies the 727 claim.

Cause for denial of discharge under a 727 failure to preserve or produce relevant

documents cannot be remedied by a late production of the documents, regardless of what they

show.  The concealment of *relevant records alone* justifies denial of discharge, without any need

to allege or prove actual concealment of assets that would have been available for distribution to

creditors.

In support of all the above arguments, Roberts provides the following case law citations:

"The court shall grant the debtor a discharge, unless ... the debtor has concealed,
destroyed, mutilated, falsified, or failed to keep or preserve any recorded
information, including books, documents, *190 records, and papers, from which
the debtor's financial condition or business transactions might be ascertained,
unless such act or failure to act was justified under all of the circumstances of the
case." 11 U.S.C. § 727(a)(3). Section 727(a)(3) of the Bankruptcy Code does not
require that a debtor preserve and provide all financial records. *Caneva v. Sun
Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008).
However, the debtor must provide written documentation which would allow
creditors to "ascertain his present financial condition and to follow his business
transactions for a reasonable period in the past." *Rhoades v. Wikle*, 453 F.2d 51,

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

53 (9th Cir. 1971). An objector establishes a § 727(a)(3) prima facie case by showing that: (1) the debtor failed to maintain and preserve adequate records; and (2) this failure rendered it impossible to ascertain the debtor's financial condition and material business transactions. *In re Caneva*, 550 F.3d at 761."

*In re Wyatt*, 625 B.R. 184 at 190-191 (2020), Bankr. L. Rep. P 83,604.

"[12] In this case, the bankruptcy court determined that the false statements and omissions in Debtors' petition were not material solely because Fogal did not show that the assets had sufficient value to increase the amount paid to creditors. *64 Based on the above authorities, we conclude that a statement or omission relating to an asset that is of little value or that would not be property of the estate can be material if it detrimentally affects the administration of the estate.

The bankruptcy court applied an incorrect interpretation of the materiality requirement of § 727(a)(4)(A)."

*In re Wills*, 243 B.R. 58 (1999) at 63-64, 43 Collier Bankr.Cas.2d 852, 35 Bankr.Ct.Dec. 121, Bankr. L. Rep. P 78,086.

"[S]ee also *In re Devers*, 759 F.2d at 754 (concluding that debtors could be denied discharge under § 727(a)(5) where they failed to offer a "satisfactory explanation" for the "disappearance" of a tractor they had owned that they did not produce for repossession). Once the creditor has made a prima facie case, the debtor must offer credible evidence regarding the disposition of the missing assets. *In re Devers*, 759 F.2d at 754.

*In re Retz*, 606 F.3d 1189 (2010) Bankr. L. Rep. P 81,776, 10 Cal. Daily Op. Serv. 6914, 2010 Daily Journal D.A.R. 8241.

A false statement or omission may be material even in the absence of direct financial prejudice to creditors. See *Weiner*, 208 B.R. at 72 [*Weiner v. Perry, Settles & Lawson (In re Weiner)*, 208 B.R. 69, 72 (9th Cir. BAP 1997)]; *Chalik*, 748 F.2d at 618 []; see also *Stanley v. Hoblitzell (In re Hoblitzell)*, 223 B.R. 211, 215–16 (Bankr.E.D.Cal.1998) (omission of an asset may be material despite the lack of prejudice to the estate or to creditors, "if it aids in understanding the debtor's financial affairs and transactions"); *Ford v. Ford (In re Ford)*, 159 B.R. 590, 593 (Bankr.D.Or.1993) (omission or false statement may be material if it concerns discovery of assets, materiality does not depend on the financial significance of the omitted assets, and detriment to creditors need not be shown); *Sergent v. Haverland (In re Haverland)*, 150 B.R. 768, 771 (Bankr.S.D.Cal.1993) (materiality of false oath does not depend on detriment to creditors).

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

*In re Roberts*, 331 B.R. 876 (2005), p. 6.

All that is required for a denial of discharge under the plain language of §
727(a)(4)(A) is a single false oath or account. *Smith v. Grondin (In re Grondin)*,
232 B.R. 274, 277 (1st Cir. BAP 1999) (citing *Schmitz* ).

*In re Wright*, 364 B.R. 51 (2007), at 73.

Fraudulent intent may be inferred from a pattern of behavior. *Devers v. Sheridan
(In re Devers)*, 759 F.2d 751, 754 (9th Cir.1985). The denial of discharge was
proper.

*In re Khalil*, 578 F.3d 1167 (2009), p. 2, 09 Cal. Daily Op. Serv. 10,852, 2009
Daily Journal D.A.R. 12,601

*2. Objection Based on Pretending the Debtor Is Allowed to Give a False Account As Long
As It Is Unsworn; and Based on Assertions Outside the Complaint*

**MOTION:**  "Plaintiff's allegations that Defendant made false statements in his
opposition to Robert's [*sic*] Motion to Dismiss is unfounded. Debtor's opposition to
Roberts [*sic*] motion to dismiss was not accompanied by a sworn declaration. Plaintiff
asserts that Defendant failed to disclose that E Street Market was a partnership with his
son. To the best of Debtor's knowledge and recollection, he was and acted as the only
owner of E Street Market. While technically Debtor and his son were partners in name,
the records and bank statements show all transactions were between Debtor and E Street
Market."

**RESPONSE:**  First, the language of the statute is not restricted to a false *oath*; a false *account
presented by the Debtor/Defendant as part of the bankruptcy lead case OR ensuing litigation*,
even if unsworn, is sufficient to deny discharge.

Second, the last sentence is disingenuous. As clearly alleged (and supported by exhibits),
numerous transactions were between an account held in the name of E Street Market and another
account held in the name of Saker Enterprise Inc. *No statements from the latter account were*

RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

1  *provided.* Cash withdrawals or transfers to overseas accounts from that account could have been

2  made so as to squirrel away assets and/or remove them from the jurisdiction.

3

4      To belabor what might be obvious, disclosed transfers to an account where no statements

5  were provided allow for the debtor to have withdrawn significant amounts of cash and squirreled

6  them away, out of view and the reach of creditors and the Trustee. Again, that *concealment* is the

7  violation, regardless of whether any such "squirreling away" actually occurred, because the

8  concealment made it impossible (or at least would have required a much more resource-intensive

9

10 Rule 2004 examination with subpoenas) under the circumstances to determine whether any such

11 squirreling away had occurred.

12

13     **D. CONCLUSION**

14     The Complaint is nowhere near deficient enough as to make amendment futile. Leave to

15 amend should be granted.

16

17     Roberts requests at least eight weeks from the date of the Order granting leave as the

18 deadline to file an Amended Complaint, to provide time to obtain transcripts and other evidence,

19 in hopes of staving off another Motion to Dismiss from the Debtor/Defendant.

20

21     Respectfully submitted this $\underline{23rd}$ day of October, 2023.

22     *Gregg Roberts*  Gregg Roberts

23

24

25

26

27

28     RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND

Gregg Roberts
43430 E Florida Ave Ste #F-293
Hemet CA 92544
951-330-4450
Assignee of Record and Judgment Creditor, Pro Se

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

In re Jihad Saker,

Debtor

  Gregg Roberts,
  Plaintiff,
  v.

  Jihad Saker,
  Defendant

Main Case #6:23-bk-10976-SY
Chapter 7
Adv. Proc. Case #6:23-ap-01055-SY

**DECLARATION OF GREGG ROBERTS**

  I am over the age of 18 years and competent to make this Declaration. I have personal knowledge of the matters herein, other than those indicated as being known by information and belief, and I would and could competently testify about them if called to do so.

  All factual claims in the accompanying Response are true and correct, to the best of my knowledge, information, and belief.

DECLARATION OF GREGG ROBERTS

1

1     All exhibits to this Motion are true and correct copies of the documents that they purport

2  to be.

3

4     All the words transcribed from any proceeding recordings are accurate to the best of my

5  knowledge, information, and belief.

6

7     I certify (or declare) under penalty of perjury under the laws of the State of California

8  that the foregoing is true and correct.

9

10  Signed at Hemet, California, this _____23rd_____ th day of October, 2023.

11  _Gregg Roberts_

12

13  Gregg Roberts

14

15

16

17

18

19

20

21

22

23

24

25

26  _____

27                    DECLARATION OF GREGG ROBERTS

28                              2

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Robert B. Gibson, Esq. (SBN: 162347)
GIBSON & HUGHES
1551 N. Tustin Avenue
Suite 530
Santa Ana, CA 92705

TELEPHONE NO: (714) 547-8377   FAX NO. (Optional): (714) 547-8378
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Plaintiffs

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

MAY 1 0 2016

BY _Victoria Sanchez_
VICTORIA SANCHEZ, DEPUTY

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN BERNARDINO
STREET ADDRESS: 247 W. Third Street
MAILING ADDRESS: 247 W. Third Street
CITY AND ZIP CODE: San Bernardino, CA 92415-0240
BRANCH NAME: CENTRAL COURT

PLAINTIFF: DEBBIE ANN LAWLER, CYNTHIA K. JOHNSON

~JIHAD SAKER

DEFENDANT: AHALENA HOOKAH LOUNGE, TRAVON LEWIS STOKES, VALMOR
LIMITED, L.P., AUGUSTA DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI
CAPITAL MANAGEMENT SERVICES, INC., ARGENT RETAIL ADVISORS,
[x] DOES 1 TO 100 inclusive

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**
[ ] AMENDED (Number):
**Type** (check all that apply):
[ ] MOTOR VEHICLE    [x] OTHER (specify): General Negligence
  [ ] Property Damage    [ ] Wrongful Death  Premises Liability
  [ ] Personal Injury    [ ] Other Damages (specify):

$435 —
160570 -0877

**Jurisdiction** (check all that apply):
[ ] ACTION IS A LIMITED CIVIL CASE
  Amount demanded  [ ] does not exceed $10,000
                   [ ] exceeds $10,000, but does not exceed $25,000
[x] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint
  [ ] from limited to unlimited
  [ ] from unlimited to limited

CASE NUMBER:

CIVDS1607235

1. Plaintiff (name or names): DEBBIE ANN LAWLER, CYNTHIA K. JOHNSON

  alleges causes of action against **defendant** (name or names): AHALENA HOOKAH LOUNGE, TRAVON LEWIS STOKES, VALMOR
  LIMITED, L.P., AUGUSTA DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI CAPITAL MANAGEMENT SERVICES, INC., ET AL
2. This pleading, including attachments and exhibits, consists of the following number of pages:
3. Each plaintiff named above is a competent adult
  a. [ ] **except** plaintiff (name):
    (1) [ ] a corporation qualified to do business in California
    (2) [ ] an unincorporated entity (describe):
    (3) [ ] a public entity (describe):
    (4) [ ] a minor  [ ] an adult
      (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
      (b) [ ] other (specify):
    (5) [ ] other (specify):

  b. [ ] **except** plaintiff (name):
    (1) [ ] a corporation qualified to do business in California
    (2) [ ] an unincorporated entity (describe):
    (3) [ ] a public entity (describe):
    (4) [ ] a minor  [ ] an adult
      (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
      (b) [ ] other (specify):
    (5) [ ] other (specify):

**Ex. 1, Page 1 of 6**

[ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

Legal
Solutions
Plus

Code of Civil Procedure, § 425.12

PLD-PI-001

| | |
|---|---|
| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: |

4. ☐ Plaintiff *(name):*

   is doing business under the fictitious name *(specify):*

   and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

a. ☒ **except** defendant *(name):* AHALENA HOOKAH LOUNGE

   (1) ☒ a business organization, form unknown
   (2) ☐ a corporation
   (3) ☐ an unincorporated entity *(describe):*

   (4) ☐ a public entity *(describe):*

   (5) ☐ other *(specify):*

c. ☒ **except** defendant *(name):* AUGUSTA DEVELOPMENT CORPORATION

   (1) ☐ a business organization, form unknown
   (2) ☒ a corporation
   (3) ☐ an unincorporated entity *(describe):*

   (4) ☐ a public entity *(describe):*

   (5) ☐ other *(specify):*

b. ☒ **except** defendant *(name):* VALMOR LIMITED, L.P.

   (1) ☒ a business organization, form unknown
   (2) ☐ a corporation
   (3) ☐ an unincorporated entity *(describe):*

   (4) ☐ a public entity *(describe):*

   (5) ☐ other *(specify):*

d. ☒ **except** defendant *(name):* NAI CAPITAL, INC.

   (1) ☒ a business organization, form unknown
   (2) ☐ a corporation
   (3) ☐ an unincorporated entity *(describe):*

   (4) ☐ a public entity *(describe):*

   (5) ☐ other *(specify):*

☒ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.

a. ☒ Doe defendants *(specify Doe numbers):* 1 TO 100 _____ were the agents or employees of other named defendants and acted within the scope of that agency or employment.

b. ☒ Doe defendants *(specify Doe numbers):* 1 TO 100 _____ are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

8. This court is the proper court because
a. ☐ at least one defendant now resides in its jurisdictional area.
b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
c. ☒ injury to person or damage to personal property occurred in its jurisdictional area.
d. ☐ other *(specify):*

9. ☐ Plaintiff is required to comply with a claims statute, **and**
a. ☐ has complied with applicable claims statutes, **or**
b. ☐ is excused from complying because *(specify):*

# Ex. 1, Page 2 of 6

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

PLD-PI-001

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: CIVDS1607235 |
|---|---|

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
   a. ☐ Motor Vehicle
   b. ☒ General Negligence
   c. ☒ Intentional Tort
   d. ☐ Products Liability
   e. ☒ Premises Liability
   f. ☒ Other *(specify):* Wrongful Death

11. Plaintiff has suffered
   a. ☒ wage loss
   b. ☐ loss of use of property
   c. ☒ hospital and medical expenses
   d. ☒ general damage
   e. ☐ property damage
   f. ☒ loss of earning capacity
   g. ☒ other damage *(specify):* non-economic damages.

12. ☒ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☐ listed in Attachment 12.
   b. ☒ as follows:
   Debbie Ann Lawler -- Surviving mother of decedents, David Dywane Lawler and Terry Lyn Freeman, Jr.
   Cynthia K. Johnson -- surviving mother of decedent, Kavin Lamont Johnson
   Plaintiffs also lost love, comfort, care, assistance, protection, affection and moral support

13. The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☒ compensatory damages
      (2) ☐ punitive damages
      The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
      (1) ☒ according to proof
      (2) ☐ in the amount of: $ 0.00

15. ☒ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*
   All paragraphs of this complaint.

Date: May 9, 2016

Ex. 1, Page 3 of 6

Robert B. Gibson
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

MC-025

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: CIVDS1607235 |
|---|---|

**ATTACHMENT** *(Number):* 5 _____

*(This Attachment may be used with any Judicial Council form.)*

5.

NAI CAPITAL MANAGEMENT SERVICES, INC., a business organization, form unknown.

ARGENT RETAIL ADVISORS, a business organization, form unknown.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

**Ex. 1, Page 4 of 6**

Page _____ of _____

*(Add pages as required)*

**ATTACHMENT**
**to Judicial Council Form**

Legal
Solutions
Plus

PLD-PI-001(2)

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: CIVDS1607235 |
|---|---|

FIRST _____   **CAUSE OF ACTION—General Negligence**   Page _4_
  (number)

ATTACHMENT TO [ ] Complaint  [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name)*:  DEBBIE ANN LAWLER, CYNTHIA K. JOHNSON

   alleges that defendant *(name)*:  AHALENA HOOKAH LOUNGE, TRAVON LEWIS STOKES, VALMOR LIMITED, L.P., AUGUSTA DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI CAPITAL MANAGEMENT SERVICES, INC., ARGENT RETAIL ADVISORS, et al.

   [x] Does _1_____  to _100 inclusive

was the legal (proximate) cause of damages to plaintiff.  By the following acts or omissions to act, defendant negligently caused the damage to plaintiff
on *(date)*: or about May 16, 2014
at *(place)*: or near Ahalena Hookah Lounge located at 1983 Diners Ct in the City of San Bernardino, County of San Bernardino
*(description of reasons for liability)*:

Decedents', David Dywane Lawler, Terry Lyn Freeman, Jr. and Kavin Lamont Johnson, were patrons at Ahalena Hookah Lounge on May 16, 2014.  Decedents were among 60 to 100 people hanging out in front of Ahalena Hookah Lounge after 4:00 a.m., in the parking lot.

Defendant, Travon Lewis Stokes, approached the decedents and fataly shot them. The negligence of security measures allowed the crowd to stay in the parking lot instead of dispersing the crowd.

As the proximate result of the negligence of defendants, decedents were shot and killed.  The defendants failed to maintain, secure and staff the property, and failed to adequately protect its patrons.

The negligence of these defendants was a substantial factor in the death of David Dywane Lawler, Terry Lyn Freeman, Jr., and Kavin Lamont Johnson.

**Ex. 1, Page 5 of 6**

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(2) [Rev. January 1, 2007]
**CAUSE OF ACTION—General Negligence**

Legal Solutions Plus
Code of Civil Procedure 425.12

PLD-PI-001(4)

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: CIVDS1607235 |
|---|---|

| SECOND _____ | **CAUSE OF ACTION—Premises Liability** | Page 5 _____ |
| (number) | | |

ATTACHMENT TO [X] Complaint  [ ] Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

Prem.L-1. Plaintiff *(name):* DEBBIE ANN LAWLER, CYNTHIA K. JOHNSON
alleges the acts of defendants were the legal (proximate) cause of damages to plaintiff.
On *(date):* May 16, 2016            plaintiff was injured on the following premises in the following

fashion *(description of premises and circumstances of injury):*
at or near Ahalena Hookah Lounge located at 1983 Diner Court in the
City of San Bernardino, County of San Bernardino, decedents, David
Dywane Lawler, Terry Lyn Freeman, Jr., and Kavin Lamont Johnson were
shot and killed.

Prem.L-2.   [X] **Count One--Negligence**  The defendants who negligently owned, maintained, managed and operated
the described premises were *(names):*   AHALENA HOOKAH LOUNGE, TRAVON LEWIS STOKES, JIHAD SAKER,
VALMOR LIMITED, L.P.,AUGUSTA DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI CAPITAL MANAGEMENT
SERVICES, INC., ARGENT RETAIL ADVISORS
[X] Does _____ to _____

Prem.L-3.   [ ] **Count Two--Willful Failure to Warn**  [Civil Code section 846] The defendant owners who willfully
or maliciously failed to guard or warn against a dangerous condition, use, structure, or activity were
*(names):*

[ ] Does _____ to _____
Plaintiff, a recreational user, was  [ ] an invited guest  [ ] a paying guest.

Prem.L-4.   [ ] **Count Three--Dangerous Condition of Public Property**  The defendants who owned public property
on which a dangerous condition existed were *(names):*

[ ] Does _____ to _____
a. [ ] The defendant public entity had  [ ] actual  [ ] constructive notice of the existence of the
dangerous condition in sufficient time prior to the injury to have corrected it.
b. [ ] The condition was created by employees of the defendant public entity.

Prem.L-5. a. [X] **Allegations about Other Defendants**  The defendants who were the agents and employees of the
other defendants and acted within the scope of the agency were *(names):* EACH DEFENDANT AS TO
THE OTHER.

[X] Does _____ to _____
b. [X] The defendants who are liable to plaintiffs for other reasons and the reasons for their liability are
[ ] described in attachment Prem.L-5.b [X] as follows *(names):*AHALENA HOOKAH LOUNGE,
TRAVON LEWIS STOKES, JIHAD SAKER, VALMOR LIMITED, L.P.,AUGUSTA
DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI CAPITAL MANAGEMENT
SERVICES, INC., ARGENT RETAIL ADVISORS

Ex. 1 Page 6 of 6

Page 1 of 1

**CAUSE OF ACTION—Premises Liability**

Legal
Solutions
Plus

Code of Civil Procedure, § 425.12

JUD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Robert B. Gibson, Esq.                    SBN: 162347
GIBSON & HUGHES
1851 E. First Street, Suite 650, SANTA ANA, CA 92705
TELEPHONE NO.:714-547-8377      FAX NO. *(Optional)*:714-547-8378
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: Debbie Lawler

*FILED*
*SUPERIOR COURT OF CALIFORNIA*
*COUNTY OF SAN BERNARDINO*
*SAN BERNARDINO DISTRICT*
APR 1 9 2019
BY
*BRENDA MATSUMURA, DEPUTY*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO
STREET ADDRESS:247 West Third Street
MAILING ADDRESS:247 West Third Street
CITY AND ZIP CODE:San Bernardino, 92415-0210
BRANCH NAME:San Bernardino District - Civil Division

PLAINTIFF: Debbie Ann Lawler, Cynthia K. Johnson

DEFENDANT: Ahalena Hookah Lounge, et al.

| | JUDGMENT | | CASE NUMBER: |
|---|---|---|---|
| ☐ By Clerk | ☒ By Default | ☐ After Court Trial | CIVDS1607235 |
| ☒ By Court | ☐ On Stipulation | ☐ Defendant Did Not Appear at Trial | |

### JUDGMENT

1. ☒ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☒ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) ☐ plaintiff's testimony and other evidence.
      (2) ☒ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court ☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time):*
      before *(name of judicial officer):*
   b. Appearances by:
      ☐ Plaintiff *(name each):*          ☐ Plaintiff's attorney *(name each):*
         (1)                                 (1)
         (2)                                 (2)
      ☐ Continued on Attachment 3b.
      ☐ Defendant *(name each):*          ☐ Defendant 's attorney *(name each):*
         (1)                                 (1)
         (2)                                 (2)
      ☐ Continued on Attachment 3b.
   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.
   d. ☐ A statement of decision (Code Civ. Proc., § 632) ☐ was not ☐ was  requested.

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
JUD-100 [New January 1, 2002]

**JUDGMENT**

Code of Civil Procedure, §§ 585, 664.6
Westlaw Doc & Form Builder™

**Ex. 2, Page 1 of 4**

| PLAINTIFF: Debbie Ann Lawler, Cynthia K. Johnson | CASE NUMBER: |
|---|---|
| DEFENDANT: Ahalena Hookah Lounge, et al. | CIVDS1607235 |

**JUDGMENT IS ENTERED AS FOLLOWS BY:**    [X] THE COURT    [ ] THE CLERK

4. [ ]    **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

a. [X] for plaintiff *(name each):* Cynthia K. Johnson

and against defendant *(names):* Jihad Saker dba Ahalena Hookah Lounge and Argent Retail Advisors,

[ ] Continued on Attachment 5a.

b. [ ] for defendant *(name each):*

c. [ ] for cross-complainant *(name each):*

and against cross-defendant *(name each):*

[ ] Continued on Attachment 5c.

d. [ ] for cross-defendant *(name each):*

6. **Amount.**

a. [X] Defendant named in item 5a above must pay plaintiff on the complaint:

| | | | |
|---|---|---|---|
| (1) | [X] Damages | $ | ~~1,500,000.00~~ 1,000,000.00 |
| (2) | [ ] Prejudgment interest at the annual rate of    % | $ | |
| (3) | [ ] Attorney fees | $ | |
| (4) | [X] Costs | $ | 5,251.25 |
| (5) | [ ] Other *(specify):* | $ | |
| (6) | TOTAL | $ | ~~1,505,251.25~~ 1,005,251.25 |

c. [ ] Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| | | | |
|---|---|---|---|
| (1) | [ ] Damages | $ | |
| (2) | [ ] Prejudgment interest at the annual rate of    % | $ | |
| (3) | [ ] Attorney fees | $ | |
| (4) | [ ] Costs | $ | |
| (5) | [ ] Other *(specify):* | $ | |
| (6) | TOTAL | $ | |

b. [ ] Plaintiff to receive nothing from defendant named in item 5b.

[ ] Defendant named in item 5b to recover costs $

[ ] and attorney fees $

d. [ ] Cross-complainant to receive nothing from cross-defendant named in item 5d.

[ ] Cross-defendant named in item 5d to recover costs $

[ ] and attorney fees $

7. [ ] Other *(specify):*

Date: **APR 1 9 2019**

[✓] _____
**MICHAEL A. SACHS** JUDICIAL OFFICER

Date: _____    [ ] Clerk, by _____, Deputy

| (SEAL) | **CLERK'S CERTIFICATE** *(Optional)* |
|---|---|
| | I certify that this is a true copy of the original judgment on file in the court. |
| | Date: |
| | Clerk, by _____, Deputy |

Page 2 of 2

JUD-100 [New January 1, 2002]    **JUDGMENT**

**Ex. 2, Page 2 of 4**

JUD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
Robert B. Gibson, Esq.          SBN: 162347
GIBSON & HUGHES
1851 E. First Street, Suite 650, SANTA ANA, CA 92705
TELEPHONE NO.:714-547-8377   FAX NO. *(Optional):*714-547-8378
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):*Debbie Lawler

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

MAY 13 2019

BY VERONICA GONZALEZ, DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO
STREET ADDRESS:247 West Third Street
MAILING ADDRESS:247 West Third Street
CITY AND ZIP CODE:San Bernardino, 92415-0210
BRANCH NAME:San Bernardino District - Civil Division

PLAINTIFF: Debbie Ann Lawler, Cynthia K. Johnson

DEFENDANT: Ahalena Hookah Lounge, et al.

| | JUDGMENT | | | CASE NUMBER: |
|---|---|---|---|---|
| ☐ By Clerk | ☒ By Default | ☐ After Court Trial | | CIVDS1607235 |
| ☒ By Court | ☐ On Stipulation | ☐ Defendant Did Not Appear at Trial | | |

## JUDGMENT

1. ☒ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☒ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) ☐ plaintiff's testimony and other evidence.
      (2) ☒ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court   ☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time):*
      before *(name of judicial officer):*
   b. Appearances by:
      ☐ Plaintiff *(name each):*          ☐ Plaintiff's attorney *(name each):*
         (1)                                 (1)
         (2)                                 (2)
      ☐ Continued on Attachment 3b.
      ☐ Defendant *(name each):*           ☐ Defendant's attorney *(name each):*
         (1)                                 (1)
         (2)                                 (2)
      ☐ Continued on Attachment 3b.
   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.
   d. ☐ A statement of decision (Code Civ. Proc., § 632) ☐ was not ☐ was   requested.

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
JUD-100 [New January 1, 2002]

JUDGMENT

Code of Civil Procedure, §§ 585, 664.6
Westlaw Doc & Form Builder™

Ex. 2, Page 3 of 4

| PLAINTIFF: Debbie Ann Lawler, Cynthia K. Johnson | CASE NUMBER: |
|---|---|
| DEFENDANT: Ahalena Hookah Lounge, et al. | CIVDS1607235 |

**JUDGMENT IS ENTERED AS FOLLOWS BY:**   [X] **THE COURT**   [ ] **THE CLERK**

4. [ ]   **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

a. [X] for plaintiff *(name each):* Debbie Ann Lawler

    and against defendant *(names):* Jihad Saker dba Ahalena Hookah Lounge and Argent Retail Advisors

    [ ] Continued on Attachment 5a.

b. [ ] for defendant *(name each):*

c. [ ] for cross-complainant *(name each):*

    and against cross-defendant *(name each):*

    [ ] Continued on Attachment 5c.

d. [ ] for cross-defendant *(name each):*

6. **Amount.**

a. [X] Defendant named in item 5a above must pay plaintiff on the complaint:

| | | | | |
|---|---|---|---|---|
| (1) | [X] | Damages | $ | 1,000,000.00 |
| (2) | [ ] | Prejudgment interest at the annual rate of     % | $ | |
| (3) | [ ] | Attorney fees | $ | |
| (4) | [ ] | Costs | $ | |
| (5) | [ ] | Other *(specify):* | $ | |
| (6) | | **TOTAL** | $ | 1,000,000.00 |

c. [ ] Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| | | | | |
|---|---|---|---|---|
| (1) | [ ] | Damages | $ | |
| (2) | [ ] | Prejudgment interest at the annual rate of     % | $ | |
| (3) | [ ] | Attorney fees | $ | |
| (4) | [ ] | Costs | $ | |
| (5) | [ ] | Other *(specify):* | $ | |
| (6) | | **TOTAL** | $ | |

b. [ ] Plaintiff to receive nothing from defendant named in item 5b.
    [ ] Defendant named in item 5b to recover costs  $
        [ ] and attorney fees  $

d. [ ] Cross-complainant to receive nothing from cross-defendant named in item 5d.
    [ ] Cross-defendant named in item 5d to recover costs  $
        [ ] and attorney fees  $

7. [ ] Other *(specify):*

Date:   **MAY 1 3 2019**   [✓]   _____
                                **MICHAEL A. SACHS**   JUDICIAL OFFICER

Date:   [ ] Clerk, by _____ , Deputy

---

| (SEAL) | **CLERK'S CERTIFICATE** *(Optional)* |
|---|---|
| | I certify that this is a true copy of the original judgment on file in the court. |
| | Date: |
| | Clerk, by _____ , Deputy |

Page 2 of 2

JUD-100 [New January 1, 2002]    **JUDGMENT**

```
 1   well.
 2      Q  Okay.  So you get to the Hookah Lounge.  And do you see
 3   them?  Do you see Alex?  Do you see the rest of the people?
 4      A  When I pulled up, I noticed their car.  We pulled in, and
 5   I backed into the, I believe, the first stall to my left side
 6   as soon as I pulled into the parking lot, and they were across
 7   the way in the other stalls.
 8      Q  Okay.  Do you remember if you parked with your --
 9   backwards into the stall so you could drive straight out or did
10   you park in the stall?  I normally do it where I just pull in.
11      A  I backed in.
12      Q  You backed into the stall?
13      A  Yes.
14      Q  Okay.  When you got out of the car, what did you do?
15      A  We got out of the car.  I went to my trunk and I grabbed
16   the gun and put it in my waistband, and I walked across to
17   where Alex and Alfred were.
18      Q  Okay.  Now, we talked about it a little bit.  Why did you
19   get the gun?
20      A  As I said, I always kept it on me for my protection after
21   my friend, and I also knew that I was gonna be able to walk
22   into the Hookah Lounge without being patted down.
23      Q  Because why?
24      A  Because Suav's family owned the place.  He came out there
25   to meet us and basically walked us in, and I had a bottle of
26   alcohol with us.  He took that in.
27      Q  What type of alcohol did you have with you?
28      A  Serrat.
```



**U.S. Department of Justice**

*United States Trustee*
*Central District of California*

---

*411 W. 4th Street, Suite 7160*
*Santa Ana, CA 92701*
*Telephone: (714) 338-3400*
*Facsimile: (714) 338-3421*

May 3, 2022

Gregg Roberts
Legal Support Services of Southern California
43430 E. Florida Ave. #F-293
Hemet, CA 92544

Re: *In re Louie Russell Vega and Patricia Anne Vega*, Case No. 8:21-bk-12746-ES

Dear Mr. Roberts,

    I am writing in response to your faxed communication dated January 28, 2022, concerning the conduct of Weneta Kosmala, Chapter 7 trustee, and her administration of the bankruptcy case of Louie Russell Vega and Patricia Anne Vega Duane. The United States Trustee Program is the component of the Department of Justice responsible for supervising the administration of bankruptcy cases and private trustees under title 11 of the United States Code. As part of the Program's supervision, the United States Trustee independently reviews public complaints concerning trustee's conduct and evaluates whether appropriate remedial action should be taken. To respond to your complaint, the United States Trustee reviewed the record of this case, including, but not limited to, information you provided, the court's docket and legal pleadings filed in the case and the related adversary proceeding, official recordings of the first meeting of creditors under §341 of the Bankruptcy Code, and information received from trustee Kosmala and Debtors' counsel, Christopher Walker, concerning facts pertinent to the issues you raised.

    On November 19, 2021, Louie Russell Vega and Patricia Anne Vega Duane (collectively, the "Debtors") filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Santa Ana division (the "Bankruptcy Case"). The Bankruptcy Case was assigned case no. 8:21-bk-12746-ES. Upon the filing of the petition, Weneta Kosmala was appointed as the interim Chapter 7 trustee. Since no trustee was elected at the Debtors' initial meeting of creditors, trustee Kosmala became the permanent trustee for the Bankruptcy Case.

    Your complaint raises concerns about trustee Kosmala's conduct in administering the Bankruptcy Case. Specifically, you allege that she scheduled and then cancelled a continued §341

1

**Ex. 4, Page 1 of 3**

meeting of creditors without providing you with documentation requested or the opportunity to participate in the continued meeting. You also advised us that cancellation of the continued §341 meeting shortened the time to object to exemptions which derogated your ability to analyze and possibly object to the Debtors' scheduled exemptions. You further indicate that Ms. Kosmala did not comply with your request for certain documents that the Debtors provided to her.

The initial §341 meeting in the Bankruptcy Case was duly noticed and conducted by trustee Kosmala via Zoom on December 22, 2021. During the initial meeting, the trustee examined the Debtors and requested documents, and then continued the meeting to January 20, 2022. Notice of the continued meeting appears on the court docket. (docket nos. 10 and 11) The §341 recording for the initial meeting indicates that you spoke with trustee Kosmala after she had concluded the meeting and advised her that you were present but did not ask questions because she ended the meeting without asking if there were creditors present with questions. The recording also indicates that you told trustee Kosmala about several potential estate assets you wanted to investigate. You advised her that you wanted to confirm with your sources before conducting a Rule 2004 exam of the Debtors and trustee Kosmala asked you to let her know the results of your investigation.   On January 19, 2022 (the day before the continued meeting), trustee Kosmala's administrator notified Debtors' counsel that the trustee had no further questions for the Debtors and that the continued §341 meeting set for January 20, 2022, was cancelled.

Ms. Kosmala filed a no asset report on January 24, 2022. The Debtors' counsel has advised us that you told him that you intended to conduct a Rule 2004 exam of the Debtors in early February but never obtained an order authorizing the exam and it did not go forward. Instead, you filed an action seeking an exception of discharge of your debt under Bankruptcy Code §523 on February 22, 2022, and that action is pending (*Gregg Roberts v. Louie R. Vega and Patricia Anne Vega*, 8:22-ap-01023).

Among the documents you provided to us are several emails from you to trustee Kosmala's administrator and Debtors' counsel (dated 12/27/21, 1/12/22 & 1/18/22) indicating that you intended to participate in the second §341 meeting and also planned to conduct a Rule 2004 exam. There is also an email (dated 12/22/21) from trustee Kosmala's administrator acknowledging that the §341 meeting was continued for two reasons: to give the Debtors time to provide documents and due to difficulties with the Zoom technology, the initial meeting was concluded before the trustee and you were aware of each other. The trustee's administrator specified in his email that "as such, [you]  will also have an opportunity to appear on January 20, 2022, to question the Debtor re potential assets (if any)." The January 21, 2022, email, which you sent to trustee Kosmala's administrator Mr. Fitzgerald, asked for reinstatement of a continued §341 meeting and whether the trustee received documents confirming the Debtors' rent, which can be shared with you. You indicated that the Debtors would not provide information regarding rent and an inheritance directly to you. On the same date Mr. Fitzgerald responded to you via email, indicating that he was forwarding your request to the trustee.

Trustee Kosmala advised us that she confirmed that there was no basis to administer non-exempt property based on her investigation, which included a review of information she received from the Debtors. Her investigation supported a conclusion that non-exempt assets were valued at $3,281.47, which would not provide a meaningful distribution to creditors in light of

2

**Ex. 4, Page 2 of 3**

administrative costs; it also appears that the Debtors only scheduled a $20,000 wildcard exemption and had the ability to amend their schedules to increase this to $30,825 under section 703.140(b)(5) of the California Code of Civil Procedure if their assets were more valuable than scheduled.

### Conclusion

Our investigation confirms that trustee Kosmala properly examined Debtors' claimed exemptions before filing a no-asset report and properly concluded that there was no basis for a challenge that could result in assets that could be distributed to creditors. However, our review leads us to believe that, under the circumstances of this matter, trustee Kosmala should have provided you with documents she had received from the Debtors and the opportunity to examine the Debtors at a continued §341 meeting of creditors. Accordingly, we will carefully review her administrative procedures to assure that this practice does not continue. With respect to your ability to conduct discovery to support your §523 action, the Bankruptcy Rules allow you to conduct discovery and obtain the information you need directly from the Debtors.

Thank you for bringing this matter to our attention. My staff and I will continue to monitor the Bankruptcy Case.

Very truly yours,

Peter C. Anderson
United States Trustee for Region 16

3

Fwd: Jihad saker                                    mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-ap-01055-SY     Doc 11     Filed 10/24/23     Entered 10/25/23 11:42:17     Desc
Main Document          Page 43 of 55

Subject: Fwd: Jihad saker
From: Carson Firm <thecarsonlaw@gmail.com>
Date: 5/17/2023, 2:35 PM
To: Gregg Roberts <gregg@legalsupport-sc.com>

Warm Regards,

## Shirley Ann Claybon

## Office Manager

The Carson Law Firm

(951) 384-5860 | Thecarsonlaw@gmail.com
3890 11th Street Suite 103 Riverside CA 92501

**WARNING:** This e-mail is covered by the Electronic Communications Privacy Act, 18
United States Code, §§2510-2521 and is legally privileged. It contains information from the The
Carson Law Firm, which may be privileged, confidential and exempt from disclosure under
applicable law. Dissemination or copying of this by anyone other than the addressee or the
addressee's agent is strictly prohibited. If this electronic transmission is received in error, please
notify The Carson Law Firm at (951)384-6850. Thank you.

Create your own email signature

---------- Forwarded message ---------
From: Nakaa Clark <clark909@icloud.com>
Date: Fri, Mar 3, 2023 at 1:48 PM
Subject: Jihad saker
To: Carson Firm <thecarsonlaw@gmail.com>

Sent from my iPhone

**Ex. 5, Page 1 of 12**

Fwd: Jihad saker                          mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-ap-01055-SY    Doc 11    Filed 10/24/23    Entered 10/25/23 11:42:17    Desc
Main Document     Page 44 of 55

image0.jpeg

**Ex. 5, Page 2 of 12**

Fwd: Jihad saker       mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-ap-01055-SY  Doc 11  Filed 10/24/23  Entered 10/25/23 11:42:17  Desc
Main Document   Page 45 of 55



Trustee Sale No. F22-00037
Loan No. 6723045346 / 646678656
Title Order No. 2345236-05

Legal Description
Personal Property Description   See Exhibit "A" attached hereto and made a part hereof
Assessors Parcel No.     See Exhibit "B" attached hereto and made a part hereof
           0140-042-09-0-000, 0140-042-24-0-000 and 0140-042-33-0-000

The beneficiary under the Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell Under Deed of Trust, Security Agreement, Assignment of Leases, Rents, and Profits, and Fixture Filing (the "Notice of Default and Election to Sell"). The undersigned caused the Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Trustee's Sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to **Section 2924g of the California Civil Code**. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(877)440-4460** or visit this internet web-site **www.mkconsultantsinc.com**, using the file number assigned to this case **F22-00037**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet web-site. The best way to verify postponement information is to attend the scheduled sale.

**NOTICE TO TENANT:** You may have a right to purchase this property after the trustee auction, if conducted after January 1, 2021, pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer" you can ___ the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible ___

**Ex. 5, Page 3 of 12**

Fwd: Jihad saker                                                                          mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-ap-01055-SY    Doc 11    Filed 10/24/23    Entered 10/25/23 11:42:17    Desc
Main Document        Page 46 of 55



image1.jpeg

Fwd: Jihad saker                                        mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-ap-01055-SY    Doc 11    Filed 10/24/23    Entered 10/25/23 11:42:17    Desc
Main Document    Page 47 of 55



EXHIBIT "A"

Real Property in the City of San Bernardino, County of San Bernardino, State of California, described as follow

Parcel 1:

That Portion of Lot 4 in Block 74 of the Survey of San Bernardino Rancho, in the City of San Bernardino, Coun
San Bernardino, State of California, as per plat recorded in Book 7 of Maps, Page 2 of records of said County,
described as follows:

South 56.59 feet of the East 200 feet of the North 353.59 feet of Lot 4, Block 74, as recorded in Map Book 7, P
of Official Records.

Parcel 2:

That portion of Lot 4 in Block 74 of the Survey of San Bernardino Rancho, in the City of San Bernardino, County
San Bernardino, State of California, as per plat recorded in Book 7 of Maps, Page 2 of records of said County,
described as follows:

Beginning at a point 297 feet South and 200 feet West of the Northeast corner of said Lot 4, Block 74; thence So
56.59 feet; thence West 93.63 feet more or less to the East line of Acacia Avenue, thence along said East line of
Acacia Avenue North 56.59 feet; thence 93.63 feet more or less to the point of beginning.

Parcel 3:

Parcel 2 of Parcel Map No. 13952, in the City of San Bernardino, as shown on map recorded in Book 166, Pages
and 89 of Parcel Maps, in the Office of the County recorder of San Bernardino County, California

**Ex. 5, Page 5 of 12**



image2.jpeg

Fwd: Jihad saker                                    mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-ap-01055-SY    Doc 11    Filed 10/24/23    Entered 10/25/23 11:42:17    Desc
Main Document    Page 49 of 55



e Sale No. F22-00037
No. 6723045346 / 646678656
Order No. 2345236-05

THE PROPERTY COVERED IN THIS ACTION INCLUDES ALL SUCH REAL PROPERTY AND THE PERSONAL PROPERTY IN WHICH THE BENEFICIARY HAS A SECURITY INTEREST DESCRIBED IN EXHIBITS "A" AND "B" ATTACHED HERETO, RESPECTIVELY, IT BEING THE ELECTION OF THE CURRENT BENEFICIARY UNDER THE DEED OF TRUST TO CAUSE A UNIFIED SALE TO BE MADE OF SAID REAL AND PERSONAL PROPERTY IN ACCORDANCE WITH THE PROVISIONS OF SECTION 2924F(b)(2) OF THE CALIFORNIA CIVIL CODE.

DATE: 2/08/2023

Assured Lender Services, Inc.

_____
Cherie Maples, Vice President of Trustee Operations
Assured Lender Services, Inc.
111 Pacifica
Suite 140
Irvine, CA 92618
Phone: (714) 508-7373

Sales Line: (877)440-4460
Sales Website: www.mkconsultantsinc.com
Reinstatement Line: (714) 508-7373
To request reinstatement and/or payoff FAX request to: (714) 505-3831

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**Ex. 5, Page 7 of 12**

Fwd: Jihad saker        mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-ap-01055-SY    Doc 11    Filed 10/24/23    Entered 10/25/23 11:42:17    Desc
Main Document     Page 50 of 55



image3.jpeg

Fwd: Jihad saker       mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-ap-01055-SY    Doc 11    Filed 10/24/23    Entered 10/25/23 11:42:17    Desc
Main Document     Page 51 of 55



**Ex. 5, Page 9 of 12**

Fwd: Jihad saker                                      mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-ap-01055-SY    Doc 11    Filed 10/24/23    Entered 10/25/23 11:42:17    Desc
Main Document        Page 52 of 55

10 of 12



image4.jpeg

Fwd: Jihad saker                                                    mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-ap-01055-SY    Doc 11    Filed 10/24/23    Entered 10/25/23 11:42:17    Desc
Main Document        Page 53 of 55



RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

Assured Lender Services, Inc.
111 Pacifica
Suite 140
Irvine, CA 92618

Trustee Sale No. F22-00037    Loan No. 6723045346 / 646678656    Title Order No. 2345236-05

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

PURSUANT TO CIVIL CODE 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES, RENTS, AND PROFITS, AND FIXTURE FILING DATED 12/13/2019 AND MORE FULLY DESCRIBED BELOW (THE "DEED OF TRUST"). UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

A public auction sale to the highest bidder for cash or cashiers check (payable at the time of sale in lawful money of the United States) (payable to Assured Lender Services, Inc.), will be held by a duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, legal fees and costs, charges and expenses of the undersigned trustee ("Trustee") for the total amount (at the time of the initial publication of this Notice of Trustee's Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

SAKER ENTERPRISE, INC., a California corporation

Trustor(s):

Fwd: Jihad saker                                mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-ap-01055-SY    Doc 11    Filed 10/24/23    Entered 10/25/23 11:42:17    Desc
Main Document        Page 54 of 55



Recorded:               recorded on 12/17/2019 as Document No. [illegible] Official Records in the
                        office of the Recorder of San Bernardino County, California;

Date of Sale:           03/15/2023 at 01:00PM

Place of Sale:          near the front steps of the Chino Civic Center located at 13220 Central Avenue,
                        Chino, CA 91710

Amount of unpaid balance and other charges: $261,973.57

The purported property address is:    1152 & 1160 North E Street, San Bernardino, CA 92410-3508

---

Attachments:

| | |
|---|---|
| image0.jpeg | 252 KB |
| image1.jpeg | 130 KB |
| image2.jpeg | 119 KB |
| image3.jpeg | 210 KB |
| image4.jpeg | 189 KB |

**Ex. 5, Page 12 of 12**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 ~~and not a party to this bankruptcy case or adversary proceeding~~. My business address is:

43430 E Florida Ave F-293, Hemet CA 92544                    A.R.

**Amended**

A true and correct copy of the foregoing document entitled (*specify*): RESPONSE IN OPPOSITION TO MOTION TO
MOTION TO DISMISS AND REQUEST FOR LEAVE TO AMEND; Declaration of Gregg Roberts; and five exhibits
_____
_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

I have no access to CM/ECF.

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 10/24/2023 , I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

Debtor Counsel: Amanda Billyard, Financial Relief Law Center, 1200 Main St, Ste C, Irvine, CA 92614-6749 via email
per written permission.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/24/2023 ~~10/23/2023~~ | Gregg Roberts | *[signature]* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.