Gregg Roberts
43430 E Florida Ave Ste #F-293
Hemet CA 92544
951-330-4450
gregg@legalsupport-sc.com
Assignee of Record and Judgment Creditor, Pro Se

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| In re Jihad Saker,<br><br>Debtor<br><br><br>       Gregg Roberts,<br>       Plaintiff,<br><br><br>v.<br><br>Jihad Saker,<br><br>Defendant | Main Case #6:23-bk-10976-SY<br><br>Chapter 7<br><br>Adv. Proc. Case #6:23-ap-01055-SY<br><br>**FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY UNDER 11 USC 523(A)(6), WILLFUL AND MALICIOUS INJURY, AND TO DENY DISCHARGE UNDER 11 USC 727**<br><br>**JURY DEMANDED**<br><br>Judge: Hon. Scott H. Yun |

## A. JURISDICTION

1. This complaint seeking a determination of a debt is an adversary proceeding within the

   meaning of Part VII of the Federal Rules of Bankruptcy Procedure. This action is a

---

FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY
AND TO DENY DISCHARGE

proceeding arising in or related to a case under Chapter 7 of the Bankruptcy Code.  This

Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334.  This proceeding is

a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I). **Per FRBP 7008, the Plaintiff DOES**

**NOT consent to the entry of final orders and judgments by the Bankruptcy Court.**[1]

2.  The deadline to file this Amended Complaint is January 31, 2024, per this Court's oral ruling

of November 7, 2023 and its signed Order of January 11, 2024.

### B.  PARTIES

3.  The plaintiff is Gregg Roberts ("Roberts"), whose mailing address is 43430 E Florida Ave

#F-293, Hemet CA 92544.

4.  On March 14, 2023, Defendant Jihad Saker ("Saker") filed with this Court a voluntary

petition in bankruptcy under Chapter 7 of the Bankruptcy Code, case #6:23-bk-10976-SY,

showing his address as 1137 W. 17th St., San Bernardino, CA 92411 (DE #1, p. 2).

### C.  STANDING

5.  Roberts' claims against Saker arise from the debt underlying two California state court

judgments entered in the Superior Court of California, County of San Bernardino, in case

#CIVDS1607235.

---

[1] In changing his position on this issue relative to the original Complaint, Roberts means no
disrespect to the Court. It is just there is so much at stake in this case, Roberts would prefer to
have an additional set of judicial eyes reviewing all the key decisions.

6. The judgments were awarded for a triple murder committed on May 16, 2014, at the Ahalena Hookah Lounge at 1983 Diners Court in the City of San Bernardino, a now-defunct business then owned by Saker. Decedents David Dywane Lawler, Terry Lyn Freeman, Jr. and Kavin Lamont Johnson ("the murder victims"), were shot and killed by Travon Lewis Stokes ("Stokes"), who admitted to and was convicted of all three shootings.

7. Roberts became the assignee of record of the state court judgment in favor of Debbie Ann Lawler by virtue of the assignment filed November 13, 2020 (Ex. 1, pp. 1-4), and in favor of Cynthia K. Johnson by virtue of the assignment filed June 30, 2022 (Ex. 1, pp. 5-7).

8. In the state court proceeding, the Complaint named the Ahalena Hookah Lounge as one of the defendants, with causes of action for general negligence, premises liability, and wrongful death (Ex. 2). On December 22, 2016, Saker, acting pro se, filed an Answer as "Jihad Saker dba Ahalena Hookah Lounge" (Ex. 3). His Answer admitted that he was the owner of the lounge but denied that the shootings were foreseeable.

9. Form interrogatories were served on Saker on January 12, 2017 (Ex. 4). On May 10, 2018, Saker's Answer was stricken, with a Minute Order explaining the reasons as follows:

> JIHAD SAKER - PROCEEDINGS: PREDISPOSITION HEARING HELD DEFENDANT JIHAD SAKER IS NOT PRESENT IN COURT TODAY AND HAS FAILED TO APPEAR ON EVERY OCCASSION. ANSWER OF JIHAD SAKER ORDERED STRICKEN. ANSWER OF JIHAD SAKER HAVING BEEN ORDERED STRICKEN,THE COURT ORDERS DEFAULT ENTERED.
>
> https://cap.sb-court.org/case/NjA2MTkzNw==, accessed by Roberts June 10, 2023.

---

FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY
AND TO DENY DISCHARGE

10. On information and belief, based on what he believes he either was told by a paralegal in the office of the law firm that obtained the judgments for Ms. Johnson and Ms. Lawler, or a document that he saw in the client case file but cannot now find, Roberts alleges that an additional reason for the striking of Saker's Answer was lack of cooperation in discovery, specifically the lack of any response to the above-mentioned form interrogatories. However, Roberts sees no document in the state court record alleging this.

11. Whatever the complete list of reason(s) for the striking of the Answer, default was entered, followed by default judgments in favor of Lawler and Johnson (Ex. 5).

### D.  GENERAL ALLEGATIONS SUPPORTING THE 523 CAUSE OF ACTION

12. As a direct result of Saker's actions, Stokes became a murderer, leading to the debt in this case.

13. Stokes shot the murder victims while under the influence of the alcohol and cocaine given to him by Saker.

14. Although drunk driving is not an issue in this case, the following dicta from a case where it was the subject of a 523(a)(6) action are instructive here:

> [T]he Ninth Circuit and this Panel have held that driving while intoxicated is willful and malicious conduct under section 523(a)(6), see *In re Adams*, 761 F.2d 1422 (9th Cir.1985); *In re Ray*, 51 B.R. 236 (9th Cir. BAP 1985),[4] the drunk driving cases are distinguishable from this case. Operating a motor vehicle while intoxicated is a dangerous activity where injury to another is, at the very least, a highly foreseeable consequence.[5] In such circumstances, the inherent danger of driving while intoxicated

---

FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY
AND TO DENY DISCHARGE

provides the culpability required for section 523(a)(6)."

*In re Lauricella*, 105 BR 536 at 541, Bankr. Appellate Panel, 9th Circuit 1989.

15. It does not matter that the specific, future/secondary victim of the debtor's willful and malicious act was not known by the debtor, or by the person who consumed the alcohol (the initial/primary victim). Hatred or ill will toward the victim is not required for nondischargeability.

16. Nor does it matter whether the ultimate victims of the willful and malicious acts by the debtor and/or his agent were not the same as the person to whom the alcohol and cocaine were given.

17. Saker had subjective knowledge that providing hard liquor and cocaine to Stokes was substantially certain to injure him in the sense above, of causing dysfunction in Stokes' brain, a major organ in the body. The pleasant feeling of intoxication (which Stokes was presumably seeking) does not come without degradation in the exercise of moral or practical judgment (which Stokes might not have been seeking). Suav knew that also.

18. Saker knew that Stokes was carrying a firearm with him on the night of the murders.

19. Saker knew that Stokes was either interested in joining a street gang or had already been admitted into one.

20. Saker knew that Stokes habitually carried a firearm.

---

21. Saker knew that Stokes was legally barred from possessing or carrying a firearm because he was a convicted felon.

22. Saker knew that Stokes was a heavy user of various drugs, and of alcohol.

23. Saker knew that Stokes had consumed some marijuana just before Saker let him into the club.

24. Saker brought Stokes' vodka bottle in for him past the door security person, and let it be known to the door security person that Stokes was not to be patted down.

25. Violent acts were a frequent occurrence at the Hookah Lounge during the 15 months leading up to the Stokes murders. Saker knew that.

26. According to the San Bernardino Police Department Call for Service record in Case #2014-00024241: Officers were dispatched to the Ahalena Hookah Lounge in the early hours of the morning on February 28, 2014. A customer of the lounge who had been inside, went outside briefly. He told police that he was assaulted just outside the door after being blocked by the security guard from reentering. Other patrons who had been inside joined in the assault. The victim told the police that the other assailants worked for Saker and his son. The police spoke with Nawras Saker about the incident. A manager of a business that shared the parking lot with the Ahalena Hookah Lounge stated "[There are] always issues at the Hookah Lounge, and they don't know how to run a business. [He] stated there are always fight[s] and issues stemming from the Hookah Lounge."

---

FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY
AND TO DENY DISCHARGE

27. From February 16, 2013 through May 4, 2014 – a period of approximately 15 months ending 12 days before the murders – there were 12 incidents leading to Calls for Service by the SBPD. The brief descriptions in the records thus far acquired by Roberts do not make it entirely clear which incidents involved violence.

28. Saker knew that defeating or evading security protocols was, substantially certain to lead to injury, over the long term if not the short term.

29. Saker knew that providing hard liquor to Stokes was substantially certain to lead to injury to Stokes *and/or to others*.

30. Saker's actions with respect to Stokes were wrongful.

31. Saker's actions with respect to Stokes were done intentionally.

32. Injury was substantially certain to result from Saker's actions leading up to the night of the murders.

33. Injury was substantially certain to result from Saker's actions with respect to Stokes.

34. Saker's actions with respect to Stokes had no just cause or excuse.

35. Injury was substantially certain to result from Saker's acts and omissions described above.

36. Saker's acts and omissions had no just cause or excuse.

FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY
AND TO DENY DISCHARGE

37. Saker has apparently not learned his lesson from the tragedy to which his actions contributed. He was arrested around October 2017 along with four associates in connection with an allegedly illegal gambling operation. "Police seized several guns, gambling machines, some drugs and in excess of $100,000 in cash from several locations in San Bernardino — all part of a crackdown on illegal gambling, police said," according to a *San Bernardino Sun* article by Beatriz E. Valenzuela and Gail Wesson, "Guns, money and drugs seized during illegal gambling bust in San Bernardino," published October 5, 2017. Ex. 6. https://www.sbsun.com/2017/10/05/guns-money-drugs-seized-during-illegal-gambling-bust-in-san-bernardino/. This evidence helps establish *Twombly/Iqbal* plausibility.

### E.  GENERAL ALLEGATIONS SUPPORTING THE 727 CAUSES OF ACTION

38. In response to a document request under CCP 1987 and two court orders in the state court action, more than a year after the first request, Saker finally started producing *some* of the bank records that would allow Roberts – and potentially the Trustee and this Court – to assess his financial condition.

39. The records haphazardly provided to Roberts eventually showed twenty-eight (28) transfers to a Wells Fargo account in the name Saker Enterprise, Inc., for which *no* statements had been provided. The total amount of the transfers between from January 2020 through December 2022 was $21,703.49. Exhibit 8 to Roberts' Motion to Dismiss Saker's bankruptcy petition (main case DE #17), p. 1.

---

FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY
AND TO DENY DISCHARGE

40. One of the above-referenced transfers took place in the year prepetition, in the amount of $1,259 on May 16, 2022.

41. Improper disposition of the funds that were transferred to Saker Enterprise, Inc. more than one year prepetition, might still have occurred during the year prepetition, or even postpetition.

42. Saker's failure and refusal to provide any additional documents to the Trustee and Creditor Roberts that would allow Roberts to determine "inexpensively" whether there were in fact any improper dispositions of funds during the year prepetition, forms the core of the 11 USC 727(a)(3) and (a)(4)(A) and causes of action.

43. The transfers in question were sent from a Wells Fargo account held in a fictitious business name of Saker Enterprise Inc., "E Street Market," to an account held in the actual corporate name.

44. Saker controlled both these accounts, as well as a personal checking account held at Arrowhead Credit Union.

45. Twenty-one (21) payments were made from the E Street Market account to Nationstar DBA Mr. Cooper, the company apparently holding Saker's personal mortgage, totaling $72,144.64 (*Id.*, p. 3).

46. Saker made twenty-three (23) cash withdrawals from the Wells Fargo E Street Market business account and Arrowhead personal accounts totaling $66,402.04. *Id.*, p. 2.

FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY
AND TO DENY DISCHARGE

47. In the year prepetition, cash withdrawals were made from the E Street Market account
totaling .

48. The number and amount of cash withdrawals made from the Saker Enterprise, Inc. account
remain unknown to Roberts and the Trustee. This, again, is at the core of the 11 USC
727(a)(3) and (a)(4)(A) and causes of action.

49. Although Roberts reported the above-described situation to the Trustee, the Trustee never
requested that Saker produce the missing records.

50. At the May 17 341(a) Meeting, counsel for the US Trustee, Everett Green, stated in essence,
"Our office will submit a request for bank statements of companies that you owned or
operated."

51. At that same meeting, Roberts asked Saker why he never produced the Saker Enterprise bank
statements. Saker responded, in essence, that he had provided his state court attorney with all
the documents available to him.

52. Roberts followed up by speaking with a paralegal for that state court attorney. She checked
the file and stated to Roberts that no statements had been provided to the firm pursuant to the
Saker Enterprise account.

53. In response to an email follow-up by Roberts, Mr. Green stated on June 6, "At the moment, I
am holding off on conducting discovery in the Saker case until the court rules on the motion

---

FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY
AND TO DENY DISCHARGE

to dismiss. The debtor has raised various defenses and rebuttals to your allegations. I will re-assess after the hearing."

54. The "rebuttals" in Saker's Opposition (main case DE #19) did not contradict any of Roberts' allegations above, other than stating that "E Street Market" was a fictitious business name of Saker rather than that of his company (a statement "supported" by a list of business license holders rather than fictitious business name registrations; see below).

55. Saker's Opposition was unaccompanied by any of the missing bank statements, nor by a declaration in support.

56. Roberts was told by a US Trustee's staff member who answered the phone that any request for documents would neither be filed with the Court nor provided to Roberts. Accordingly, Roberts does not know whether the US Trustee made the request after the hearing on Roberts' motion for dismissal; or if it did, or to what extent Saker complied. Roberts was also told that he was not entitled to receive copies of documents provided by Saker to the US Trustee.

57. Even if Saker has finally complied, it is "too little, too late" in view of the deadline to file this Complaint and the fact that Roberts would not be provided with any responsive documents.

58. At the May 17 341(a) Meeting, Roberts also questioned Saker regarding the purpose of the largest set of cash withdrawals: two withdrawals from Saker's personal checking account in

the amount of $10,004.99 each on March 3, 2021, and a withdrawal from the E Street Market account in the amount of $10,099.99, twenty-three days later.

59. Saker described the purpose of those withdrawals as a combination of plumbing expenses and, in the case of the third withdrawal, expenses for "refrigerator maintenance," which included $2000 spent on "wires."

60. Roberts asked whether Saker could provide the names of the people or companies to whom he paid all this money. Saker replied, in essence, "As Arabs, we don't trust companies, we call specialist individuals." But he provided no names or receipts.

61. Saker stated either personally or through counsel that he had not filed tax returns for several years, and so had no tax returns to support any of his oral statements regarding his decision to close down the E Street Market and allow it to be foreclosed on.

62. For a business paying nearly $5000 per month in mortgage payments and which had been in business for more than three years, and which was held by a corporation, to file no tax returns, is not consistent with the business maintaining or preserving proper business documents.

63. Normal business practice would be to process properly preserved business records and use them to prove to the taxing authorities that no tax is due.

FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY
AND TO DENY DISCHARGE

64. Roberts asked Saker "Who made the decision to allow the E Street Market real property to be foreclosed on?" And Saker responded in essence "I had no money even to feed myself. Where would I get money to pay the loan?"

65. Even just the bank records that Saker did provide, combined with a public record, contradict that statement. The table below shows the ending balances for 2022 in the accounts for which Saker provided bank statements to Roberts:

| Month | Personal Sav | Personal Chk | E Street Chk | Total |
|---|---|---|---|---|
| Jan | $ 2,043.99 | $ 23,752.95 | $ 1,235.05 | $ 27,031.99 |
| Feb | $ 2,044.15 | $ 14,113.91 | $ 1,634.58 | $ 17,792.64 |
| Mar | $ 2,044.32 | $ 11,842.57 | $ 7,343.53 | $ 21,230.42 |
| Apr | $ 2,044.49 | $ 7,538.51 | $ 3,280.43 | $ 12,863.43 |
| May | $ 2,044.66 | $ 2,167.18 | $ 3,114.50 | $ 7,326.34 |
| Jun | $ 2,044.83 | $ 710.16 | $ 2,313.58 | $ 5,068.57 |
| July | $ 2,045.00 | $ 310.16 | $ 1,003.10 | $ 3,358.26 |
| Aug | $ 445.04 | $ 195.45 | $ (104.56) | $ 535.93 |
| Sep | $ 5.00 | $ 576.12 | $ 5.49 | $ 586.61 |
| Oct | $ 5.00 | $ 576.12 | $ (44.51) | $ 536.61 |
| Nov | $ 5.00 | $ (254.88) | $ (44.51) | $ (294.39) |
| Dec | $ 5.00 | $ (254.88) | $ - | $ (249.88) |

66. May, in bold, was the first month when Saker did not make the E Street Market mortgage payment of approximately $4820.

67. The table above includes no funds that were held in the Saker Enterprise Inc. account, since Roberts never received any statements for that account.

68. It was a false statement made under oath when Saker said that he "had no money even to feed himself" when he stopped paying his commercial mortgage. That one false statement or account, alone, is sufficient to deny discharge. *Smith v. Grondin (In re Grondin)*, 232 B.R. 274, 277 (1st Cir. BAP 1999).

69. Without providing any sworn declaration in support of any facts alleged in his Opposition, Saker further gave multiple false accounts in his Opposition to Roberts' Motion for Dismissal.

70. Saker misrepresented the nature of the delay of which Roberts complained: "Response: "There's no evidence that Debtor has hindered or delayed Roberts…." 7:20-21. Roberts did not complain that "Debtor" had delayed Roberts:

> Roberts does not claim that he was delayed. Roberts' Motion cited 11 USC 707(a), which provides for the penalty of dismissal for "unreasonable delay *by the debtor [emphasis added]* that is prejudicial to creditors," not delay of collection per se. Saker's promised offer in compromise has not been delayed; it has never been made at all. It is the delay in filing for bankruptcy protection, finally making official Saker's "change of purpose to the injury of another," that was unreasonable and prejudicial.

> Reply, 7:5-11

71. Saker misrepresented the timeline in the state court litigation in order to make its argument that Roberts was trying to relitigate the state court's denial of Roberts' motion for an order to show cause for contempt. To make this misrepresentation, Saker spoke of the diligence he

---

FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY
AND TO DENY DISCHARGE

allegedly exercised in 2023 to produce the required bank records, and cited the state court's

denial of Roberts' motion for contempt.

72. But Roberts was instead complaining about an ADDITIONAL act of contempt: Saker's

disobedience of the state court's LAST order, issued the same day that the state court denied

Roberts' request pursuant to the EARLIER orders – as stated in Exhibit A to Saker's own

Opposition.

73. Saker misrepresented the nature of the prejudice of which Roberts complained, asserting that

Roberts was complaining about being prejudiced by never receiving any money toward the

satisfaction of the judgments. Of course that was also a problem, but Roberts specifically

complained about time and money he spent trying to hold Saker accountable for the offer he

promised to make. "Roberts' attempts to enforce the promise and the court order to deliver

documents and make an offer cost Roberts time and money that could have been spent on

other cases." Reply, 3:18-19.

74. Saker falsely stated in his Opposition that "E Street Market is a DBA for the Debtor. See

Exhibit "C." Opposition, 6:26.

75. Exhibit C to Saker's Opposition shows business license registrations with the City of San

Bernardino, not fictitious business name registrations on file with the San Bernardino County

Clerk.

FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY
AND TO DENY DISCHARGE

76. San Bernardino FBN #202000033843 shows "E Street Market" to be a "copartnership" with Najed Saker (see the last line in the screenshot), not an FBN of the debtor Jihad Saker alone.

77. In conflict with the FBN registration, in response to question 19 on page 7 of main case DE #11, a set of 3/28/2023 supplemental filings, "Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture", Saker answered "No". Another supplemental amended filing, DE #16, filed May 4, 2023, said nothing about any such stock or interest, but also denied that Saker was a "a sole proprietor of any full- or part-time business" (page 5, Item 12).[2]

78. The amounts stated in connection with Roberts' two secured claims (Items 2.1 and 2.2, pp. 11-12) and Valmor Limited's single secured claim (Item 2.3, p. 12) reflected no interest, in conflict with California state law which automatically awards 10% postjudgment interest. Since these debts were incurred several years before the filing of the original petition, the accumulated interest with regard to both debts is a substantial percentage of the principal. These are yet additional false oaths or accounts.

79. The name "Najed Saker" does not appear in Jihad Saker's bankruptcy schedules.

80. Najed Saker did not announce his presence at either of the 341 meetings.

---

[2] This supplemental filing did finally correct the false statement in the Original Petition to the effect that Saker's debts were primarily consumer debts.

81. Neither Roberts nor the Trustee had any opportunity to question Najed Saker about the financial affairs of Saker's "copartnership".

82. Saker gave yet another version of his relationship with his eponymous corporation. In response to "to question 42 on page 9 of DE #11 … Saker admitted ownership of "Any business-related property you did not already list" as "Saker Enterprises, Inc. DBA E Street Market". That latter statement, made under penalty of perjury, indicates that "E Street Market" was a fictitious business name, not of Saker, but of his corporation." Reply, 9:8-13.

83. Saker admitted in his Opposition to making the following statement at the 341 meeting: "During the meeting, the Debtor testified that he supplied all of the documents he had to Roberts, that his business accounts have been closed for almost a year…" Opposition, 2:22-23.

84. But the E Street Market account, at least, remained open until sometime in December, 2022, roughly five months before Saker gave that testimony on May 17, 2023. Ex. 7, December 2022 bank statement of E Street Market. Thus, that account had not been closed for "almost a year". This was no innocent mistake; it was a statement made specifically to try to excuse the lack of disclosure of even a single Saker Enterprise, Inc. account statement.

85. Even if the statement had been true or innocently incorrect, it would not work as an excuse for the failure to produce the Saker Enterprise, Inc. account statements. Former account holders are entitled to receive statements from closed accounts held in their names, despite

---

FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY
AND TO DENY DISCHARGE

the closing of such accounts. This may generally be done for up to seven years after the

closing of the account. Anyone with Saker's extensive business experience would know this.

86. That last part, "failed to be kept," was essentially admitted under oath by Saker when he

testified that "he supplied all of the documents he had to Roberts" through state court

counsel, yet that counsel's paralegal denied having received any Saker Enterprise, Inc.

statements. To be clear, Saker admitted *not having kept* any Saker Enterprise, Inc. bank

statements.

87. It is irrelevant to the Third and Fourth Causes of Action whether the never-disclosed Saker

Enterprise, Inc. bank records contain damning information. The failure to keep records that

would show what happened to all the money transferred into that account justifies denial of

discharge.

88. It is irrelevant to all the Causes of Action whether the Bankruptcy or US Trustees have

expressed any agreement with Roberts' allegations. This Court must make its own

determination as to the sufficiency and *Twombly/Iqbal* plausibility of this First Amended

Complaint without any deference to those Court officers' silence or unkept promises about

these matters.

89. Roberts supported the above allegation in a lengthy footnote in his *Response in Opposition to

Motion to Dismiss and Request for Leave to Amend* [pp. 20-21]. The footnote concluded with

"Thus, even in a case where assets were available for distribution to creditors, *the Trustee*

FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY
AND TO DENY DISCHARGE

*decided not to litigate against a debtor he/she believed had violated bankruptcy law*, relying on the official Trustee's Manual cost-benefit directive to justify that decision."

90. Saker also gave yet another false account, when in his Opposition he stated "Bankruptcy is a constitutionally protected right in the United States."

> Held: [T]here is no constitutional right to obtain a discharge of one's debts in bankruptcy; the right to a discharge in bankruptcy is not a 'fundamental' right…
>
> *U.S. v. Kras*, 409 U.S. 434, 434 (1973), 93 S.Ct. 631, 34 L.Ed.2d 626.

91. All that is required for a denial of discharge under the plain language of § 727(a)(4)(A) is a single false oath or account. *Smith v. Grondin (In re Grondin)*, 232 B.R. 274, 277 (1st Cir. BAP 1999).

92. The debtor's false oaths and accounts were made knowingly and fraudulently.

93. Significant portions of the $66,402.04 in 32 cash withdrawals shown in bank statements that *were* provided, and additional cash withdrawals from the $21,703 in 28 transfers to Saker Enterprise, Inc. (for which statements were never provided), were either improperly retained and concealed, transferred, or dissipated, during the year prepetition. See Ex. 8 to Roberts' Motion for Dismissal of the petition, DE #17 in Case #6:23-bk-10976-SY.

## F.  FIRST CAUSE OF ACTION: WILLFUL AND MALICIOUS INJURY BY THE DEBTOR TO ANOTHER ENTITY (11 USC 523(A)(6))

94. All the preceding allegations are incorporated herein by reference.

95. The actions and/or omissions of Saker and his agent leading to the debt were done intentionally, were wrongful, were done without just cause or excuse, and injury was substantially certain to result from them.

96. Accordingly, the debt is for willful and malicious injury by the debtor to another entity, and is nondischargeable.

### G. SECOND CAUSE OF ACTION: CONCEALMENT OF ASSETS, 11 USC 727(a)(2)(A)

97. All the preceding allegations are incorporated herein by reference.

98. The debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition.

### H. THIRD CAUSE OF ACTION: CONCEALMENT OF, DESTRUCTION OF, AND/OR FAILURE TO PRESERVE FINANCIAL DOCUMENTS, 11 USC 727(a)(3)

99. All the preceding allegations are incorporated herein by reference.

100. The debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained.

---

101.  These acts and failures were not justified under all of the circumstances of the case.

## I.  FOURTH CAUSE OF ACTION: FALSE OATH OR ACCOUNT, 11 USC 727(a)(4)(A)

102.  All the preceding allegations are incorporated herein by reference.

103.  Each of Saker's false oaths or accounts were made in or in connection with the case.

104.  Each of Saker's false oaths or accounts were made with respect to a matter material to the bankruptcy proceeding.[3]

---

[3] ***Note to the Court***: Roberts respectfully requests that, in evaluating any motion to dismiss this First Amended Complaint, this Court carefully read all the excerpts below, which were presented in Roberts' Response to the Motion to Dismiss (DE #, 23-25). These case law holdings were apparently not taken into account in the Court's remarks concerning materiality at the November 7 hearing. Roberts remembers the Court stating that the Complaint needed to make allegations supporting the conclusion that assets improperly transferred, dissipated or concealed by the debtor were significant in amount relative to the debtor's overall financial picture, and that any such impropriety must have occurred within the 12 months prepetition. However, those conditions apply only to the Second Cause of Action, Concealment of Assets, 11 USC 727(a)(2)(A). The Third and Fourth Causes of Action, 11 USC 727(a)(3) and (a)(4)(A)

respectively, do not have such conditions, as is made clear by the following citations, all of

which were presented at the end of Roberts' Response to the Motion to Dismiss:

> "The court shall grant the debtor a discharge, unless ... the debtor has concealed,
> destroyed, mutilated, falsified, or failed to keep or preserve any recorded
> information, including books, documents, *190 records, and papers, from which
> the debtor's financial condition or business transactions might be ascertained,
> unless such act or failure to act was justified under all of the circumstances of the
> case." 11 U.S.C. § 727(a)(3). Section 727(a)(3) of the Bankruptcy Code does not
> require that a debtor preserve and provide all financial records. *Caneva v. Sun
> Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008).
> However, the debtor must provide written documentation which would allow
> creditors to "ascertain his present financial condition and to follow his business
> transactions for a reasonable period in the past." *Rhoades v. Wikle*, 453 F.2d 51,
> 53 (9th Cir. 1971). An objector establishes a § 727(a)(3) prima facie case by
> showing that: (1) the debtor failed to maintain and preserve adequate records; and
> (2) this failure rendered it impossible to ascertain the debtor's financial condition
> and material business transactions. *In re Caneva*, 550 F.3d at 761."

*In re Wyatt*, 625 B.R. 184 at 190-191 (2020), Bankr. L. Rep. P 83,604.

> "[12] In this case, the bankruptcy court determined that the false statements and
> omissions in Debtors' petition were not material solely because Fogal did not
> show that the assets had sufficient value to increase the amount paid to creditors.
> *64 Based on the above authorities, we conclude that a statement or omission
> relating to an asset that is of little value or that would not be property of the estate
> can be material if it detrimentally affects the administration of the estate.
>
> **The bankruptcy court applied an incorrect interpretation of the materiality
> requirement of § 727(a)(4)(A)."** [emphasis added]

*In re Wills*, 243 B.R. 58 (1999) at 63-64, 43 Collier Bankr.Cas.2d 852, 35
Bankr.Ct.Dec. 121, Bankr. L. Rep. P 78,086.

> "[S]ee also *In re Devers*, 759 F.2d at 754 (concluding that debtors could be denied
> discharge under § 727(a)(5) where they failed to offer a "satisfactory explanation"
> for the "disappearance" of a tractor they had owned that they did not produce for
> repossession). Once the creditor has made a prima facie case, the debtor must

offer credible evidence regarding the disposition of the missing assets. *In re Devers*, 759 F.2d at 754.

*In re Retz*, 606 F.3d 1189 (2010) Bankr. L. Rep. P 81,776, 10 Cal. Daily Op. Serv. 6914, 2010 Daily Journal D.A.R. 8241.

A false statement or omission may be material even in the absence of direct financial prejudice to creditors. See *Weiner*, 208 B.R. at 72 [*Weiner v. Perry, Settles & Lawson (In re Weiner)*, 208 B.R. 69, 72 (9th Cir. BAP 1997)]; *Chalik*, 748 F.2d [616] at 618 [*In re Chalik*]; see also *Stanley v. Hoblitzell (In re Hoblitzell)*, 223 B.R. 211, 215–16 (Bankr.E.D.Cal.1998) (omission of an asset may be material despite the lack of prejudice to the estate or to creditors, "if it aids in understanding the debtor's financial affairs and transactions"); *Ford v. Ford (In re Ford)*, 159 B.R. 590, 593 (Bankr.D.Or.1993) (omission or false statement may be material if it concerns discovery of assets, materiality does not depend on the financial significance of the omitted assets, and detriment to creditors need not be shown); *Sergent v. Haverland (In re Haverland)*, 150 B.R. 768, 771 (Bankr.S.D.Cal.1993) (materiality of false oath does not depend on detriment to creditors).

*In re Roberts*, 331 B.R. 876 (2005), p. 6.

All that is required for a denial of discharge under the plain language of § 727(a)(4)(A) is a single false oath or account. *Smith v. Grondin (In re Grondin)*, 232 B.R. 274, 277 (1st Cir. BAP 1999) (citing *Schmitz [Torgenrud v. Schmitz (In re Schmitz)*, 224 B.R. 149, 152 (Bankr.D.Mont.1998) (finding fraudulent intent when debtor failed to disclose her current, married name)*]*).

*In re Wright*, 364 B.R. 51 (2007), at 73.

"Fraudulent intent may be inferred from a pattern of behavior. *Devers v. Sheridan (In re Devers)*, 759 F.2d 751, 754 (9th Cir.1985). The denial of discharge was proper."

*In re Khalil*, 578 F.3d 1167 (2009), p. 2, 09 Cal. Daily Op. Serv. 10,852, 2009 Daily Journal D.A.R. 12,601.

105.  Each of Saker's false oaths or accounts were made knowingly and fraudulently. This is

evident from how many times Roberts requested the additional records, from how easy it

---

Expanding on *Chalik* relative to what Roberts cited before:

> A false oath or *72 statement is made when it occurs (1) in the debtor's schedules **or (2) at an examination during the course of the proceedings [emphasis added]**. *Scimeca v. Umanoff*, 169 B.R. 536, 542 (D.N.J.1993); aff'd, 30 F.3d 1488 (3d Cir.1994). The Court in *Scimeca* noted that while the initial burden lies on the objector to prove that the debtor made a false statement in connection with the proceedings, once it "reasonably appears the oath is false, the burden falls on the bankrupt" to disprove the allegation. *Scimeca*, 169 B.R. at 542; *Kramer v. Poland (In re Poland)*, 222 B.R. 374 (Bankr.M.D.Fla.1998) ("it is well established that once the Plaintiff has met the initial burden by producing evidence which establishes a basis for the objection, the Defendant has the ultimate burden of persuasion. See, *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir.1984).").

*In re Wright*, 364 B.R. 51 (2007), p. 16.

The plain language of the statute makes clear that the two contexts described at the

beginning of the citation above are not the only two contexts in which a material false oath or

account may be made, requiring denial of discharge. 11 USC 727(a)(4) contains the phrase "**in

or in connection with the case**". Plainly, without any need for a case citation, the statute covers

factual allegations made in answers, motions, responses, replies, or oral argument in a

bankruptcy main case or adversary proceeding, as long as they are made knowingly and

fraudulently.

would have been to supply the missing records with or without assistance from family or state court counsel, and from the evasive answers provided by Saker at the second meeting of creditors. (He was allegedly sick on the date of the first meeting.)

### J.  FIFTH CAUSE OF ACTION: FAILURE TO EXPLAIN, 11 USC 727(a)(5)

106.  All the preceding allegations are incorporated herein by reference.

107.  Saker has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, a loss of assets or deficiency of assets to meet his liabilities.

### K.  RELIEF REQUESTED

Accordingly, the Plaintiff prays for the following relief:

1.  That the full amount of the debt underlying both state court judgments be found nondischargeable under 11 USC 523 and that enforcement of the judgments be remanded to state court;

2.  That the discharge requested by the debtor be denied under 11 USC 727;

3.  That the Court issue Findings of Fact and Conclusions of Law pursuant to any and all appealable orders or judgments issued or entered in the case, to help establish a proper record on appeal;

4.  That the plaintiff be awarded his reasonable and necessary costs and attorney or paralegal fees incurred in connection with the prosecution of this action; and

---

FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY
AND TO DENY DISCHARGE

5.  Any other relief to which he may be justly entitled.

**JURY DEMANDED.**


Respectfully submitted this 23rd day of January, 2024.

*Gregg Roberts*


Gregg Roberts, Assignee of Record / Judgment Creditor

# Exhibit 1

1    Gregg Roberts
     43430 E Florida Ave #F-293
2    Hemet CA 92544
     951-330-4450
3

4    Assignee *In Pro Per*

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

NOV 13 2020

BY _____
DEBRA PEDROSA, DEPUTY

5

6                    IN THE SUPERIOR COURT OF CALIFORNIA,

7                         COUNTY OF SAN BERNARDINO

8    Debbie Ann Lawler and Cynthia K. Johnson    )    Case No. CIV DS1607235
                                                  )
9    Plaintiffs,                                  )    ACKNOWLEDGMENT OF
                                                  )
10                  v.                            )    ASSIGNMENT OF JUDGMENT
                                                  )
11   Ahalena Hookah Lounge, et al.,               )    CA CCP §673
                                                  )
12   Defendants                                   )
                                                  )
13                                                )

14   Debbie Ann Lawler, Plaintiff and Judgment Creditor in the within matter, hereby provides the

15   following in support of an ASSIGNMENT OF JUDGMENT:

16

17   1.  THAT final judgment was entered by this Court against Defendants Jihad Saker dba Ahalena
18       Hookah Lounge and Argent Retail Advisors on 5/13/2019.

19   2.  THAT Plaintiff was awarded the total amount of $1,000,000 against Defendants Jihad Saker dba
20       Ahalena Hookah Lounge, and Argent Retail Advisors, plus post-judgment interest on that amount
21       at the statutory rate.

22   3.  THAT the judgment has not been renewed.
23

24   4.  THAT Debbie Ann Lawler, whose address is 807 Master Way, Beaumont CA 92223, is the
25       Judgment Creditor of Record.

26   5.  THAT the Judgment Debtors of Record are Jihad Saker dba Ahalena Hookah Lounge (last known
27       address 1983 Diners Court, San Bernardino CA 92415) and Argent Retail Advisors (last known
28       address 27285 Las Ramblas Ste 147, Mission Viejo CA 92691).

Ex. 1, p. 1 of 7



**Ex. 1, p. 2 of 7**

6. THAT the Judgment Creditor Debbie Ann Lawler has been paid a total of $ __0.00__ toward the satisfaction of said judgment.

7. THAT Debbie Ann Lawler, Judgment Creditor in the above action, does hereby assign all rights, title, interest and ownership of said judgment to:

Gregg Roberts
43430 E Florida Ave #F-293
Hemet CA 92544
951-330-4450

Signed this _3rd_ day of _November_, 2020 at

_Beaumont, California_
(City / State)

Signed: _Debbie Lawler_

Debbie Ann Lawler

Plaintiff / Original Judgment Creditor

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

## ACKNOWLEDGMENT

State of _California_

County of _Riverside_ } ss.

On _November 3, 2020_ (date) before me, _Krista Lindberg Notary Public_,

_____ (title), personally appeared

_Debbie Ann Lawler_ _____

_____

who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity,

ACKNOWLEDGMENT OF ASSIGNMENT OF JUDGMENT

**Ex. 1, p. 3 of 7**

*Page 2 of 3*

and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

KRISTA LINDBERG
Notary Public – California
Riverside County
Commission # 2208012
My Comm. Expires Jul 30, 2021

_____
Signature

(seal)

ACKNOWLEDGMENT OF ASSIGNMENT OF JUDGMENT

*Page 3 of 3*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUN 30 2022

BY _____
GLORIA MARIN, DEPUTY

1  Gregg Roberts
   43430 E Florida Ave #F-293
2  Hemet CA 92544
   951-330-4450
3

4  Assignee *In Pro Per*

5

6              IN THE SUPERIOR COURT OF CALIFORNIA,

7                 COUNTY OF SAN BERNARDINO

8  Debbie Ann Lawler and Cynthia K. Johnson          )          Case #CIVDS1607235
                                                      )
9  Plaintiffs,                                        )          ACKNOWLEDGMENT OF
                             v.                       )
10                                                    )          ASSIGNMENT OF JUDGMENT
                                                      )
11  Ahalena Hookah Lounge, et al.,                    )          CA CCP §673
                                                      )
12  Defendants                                        )
                                                      )
13

14  Cynthia K. Johnson, Plaintiff and Judgment Creditor in the within matter, hereby provides the

15  following in support of an ASSIGNMENT OF JUDGMENT:

16
17  1.  THAT final judgment was entered by this Court in favor of Cynthia K. Johnson against
18      Defendants Jihad Saker dba Ahalena Hookah Lounge and Argent Retail Advisors on 4/19/2019.

19  2.  THAT Plaintiff was awarded the total amount of $1,005,251.25 against Defendants Jihad Saker
20      dba Ahalena Hookah Lounge and Argent Retail Advisors, plus post-judgment interest on that
21      amount at the statutory rate.

22  3.  THAT the judgment has not been renewed.

23
24  4.  THAT Cynthia K. Johnson, whose address is 2260 Valencia ave, San Bernardino CA 92404, is
        the Judgment Creditor of Record.
25

26  5.  THAT the Judgment Debtors of Record are Jihad Saker DBA Ahalena Hookah Lounge (last
27      known address 1137 W 17th St, San Bernardino CA 92411) and Argent Retail Advisors (last
        known address 9870 Research Drive, Irvine CA 92618).
28

6.  THAT the Judgment Creditor Cynthia K. Johnson has been paid a total of $ _0.00_ toward the satisfaction of said judgment.

7.  THAT Cynthia K. Johnson, Judgment Creditor in the above action, does hereby assign all rights, title, interest and ownership of said judgment to:

> Gregg Roberts
> 43430 E Florida Ave #F-293
> Hemet CA 92544
> 951-330-4450

Signed this 30th day of June , 2022 at
San Bernardino, California
(City / State)

Signed: _Cynthia_
Cynthia K. Johnson
Plaintiff / Original Judgment Creditor

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

## ACKNOWLEDGMENT

State of California
County of San Bernardino } ss.

On June 30 2022 (date) before me, J. Cerda Madrigal, notary public ,
Notary Public (title), personally appeared
Cynthia K. Johnson

who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity,

**Ex. 1, p. 6 of 7**

ACKNOWLEDGMENT OF ASSIGNMENT OF JUDGMENT

*Page 2 of 3*

and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

J. CERDA MADRIGAL
Notary Public - California
San Bernardino County
Commission # 2337741
My Comm. Expires Nov 19, 2024

_____
Signature

(seal)

ACKNOWLEDGMENT OF ASSIGNMENT OF JUDGMENT

*Page 3 of 3*

**Ex. 1, p. 7 of 7**

# Exhibit 2

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Robert B. Gibson, Esq. (SBN: 162347)
GIBSON & HUGHES
1551 N. Tustin Avenue
Suite 530
Santa Ana, CA 92705
TELEPHONE NO: (714) 547-8377   FAX NO. *(Optional):* (714) 547-8378
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* Plaintiffs

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

MAY 1 0 2016

BY *Victoria Sanchez*
VICTORIA SANCHEZ, DEPUTY

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN BERNARDINO
STREET ADDRESS: 247 W. Third Street
MAILING ADDRESS: 247 W. Third Street
CITY AND ZIP CODE: San Bernardino, CA 92415-0240
BRANCH NAME: CENTRAL COURT

PLAINTIFF: DEBBIE ANN LAWLER, CYNTHIA K. JOHNSON

~JIHAD SAKER

DEFENDANT: AHALENA HOOKAH LOUNGE, TRAVON LEWIS STOKES, VALMOR
LIMITED, L.P., AUGUSTA DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI
CAPITAL MANAGEMENT SERVICES, INC., ARGENT RETAIL ADVISORS,
[x] DOES 1 TO  100 inclusive

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**
[ ] **AMENDED** *(Number):*
**Type** *(check all that apply):*
[ ] MOTOR VEHICLE   [x] OTHER *(specify):* General Negligence
[ ] Property Damage   [ ] Wrongful Death  Premises Liability
[ ] Personal Injury   [ ] Other Damages *(specify):*

$835 —
160570 -0877

**Jurisdiction** *(check all that apply):*
[ ] ACTION IS A LIMITED CIVIL CASE
  Amount demanded  [ ] does not exceed $10,000
          [ ] exceeds $10,000, but does not exceed $25,000
[x] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint
    [ ] from limited to unlimited
    [ ] from unlimited to limited

CASE NUMBER:

CIVDS1607235

1. **Plaintiff** *(name or names):* DEBBIE ANN LAWLER, CYNTHIA K. JOHNSON

  alleges causes of action against **defendant** *(name or names):* AHALENA HOOKAH LOUNGE, TRAVON LEWIS STOKES, VALMOR
  LIMITED, L.P., AUGUSTA DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI CAPITAL MANAGEMENT SERVICES, INC., ET AL
2. This pleading, including attachments and exhibits, consists of the following number of pages:
3. Each plaintiff named above is a competent adult
  a. [ ] **except** plaintiff *(name):*
    (1) [ ] a corporation qualified to do business in California
    (2) [ ] an unincorporated entity *(describe):*
    (3) [ ] a public entity *(describe):*
    (4) [ ] a minor  [ ] an adult
      (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
      (b) [ ] other *(specify):*
    (5) [ ] other *(specify):*

  b. [ ] **except** plaintiff *(name):*
    (1) [ ] a corporation qualified to do business in California
    (2) [ ] an unincorporated entity *(describe):*
    (3) [ ] a public entity *(describe):*
    (4) [ ] a minor  [ ] an adult
      (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
      (b) [ ] other *(specify):*
    (5) [ ] other *(specify):*

[ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

**Ex. 2, p. 1 of 6**
Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

Legal
Solutions
Plus

Code of Civil Procedure, § 425.12

| | |
|---|---|
| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: |

4. ☐ Plaintiff (name):

is doing business under the fictitious name (specify):

and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

a. ☒ **except** defendant (name): AHALENA HOOKAH LOUNGE

   (1) ☒ a business organization, form unknown
   (2) ☐ a corporation
   (3) ☐ an unincorporated entity (describe):

   (4) ☐ a public entity (describe):

   (5) ☐ other (specify):

c. ☒ **except** defendant (name): AUGUSTA DEVELOPMENT CORPORATION

   (1) ☐ a business organization, form unknown
   (2) ☒ a corporation
   (3) ☐ an unincorporated entity (describe):

   (4) ☐ a public entity (describe):

   (5) ☐ other (specify):

b. ☒ **except** defendant (name): VALMOR LIMITED, L.P.

   (1) ☒ a business organization, form unknown
   (2) ☐ a corporation
   (3) ☐ an unincorporated entity (describe):

   (4) ☐ a public entity (describe):

   (5) ☐ other (specify):

d. ☒ **except** defendant (name): NAI CAPITAL, INC.

   (1) ☒ a business organization, form unknown
   (2) ☐ a corporation
   (3) ☐ an unincorporated entity (describe):

   (4) ☐ a public entity (describe):

   (5) ☐ other (specify):

☒ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.

  a. ☒ Doe defendants (specify Doe numbers): 1 TO 100     were the agents or employees of other named defendants and acted within the scope of that agency or employment.

  b. ☒ Doe defendants (specify Doe numbers): 1 TO 100     are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are (names):

8. This court is the proper court because

  a. ☐ at least one defendant now resides in its jurisdictional area.
  b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
  c. ☒ injury to person or damage to personal property occurred in its jurisdictional area.
  d. ☐ other (specify):

9. ☐ Plaintiff is required to comply with a claims statute, **and**

  a. ☐ has complied with applicable claims statutes, **or**
  b. ☐ is excused from complying because (specify):

**Ex. 2, p. 2 of 6**

PLD-PI-001

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: CIVDS1607235 |

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*
   a. ☐ Motor Vehicle
   b. ☒ General Negligence
   c. ☒ Intentional Tort
   d. ☐ Products Liability
   e. ☒ Premises Liability
   f. ☒ Other *(specify):* Wrongful Death

11. Plaintiff has suffered
   a. ☒ wage loss
   b. ☐ loss of use of property
   c. ☒ hospital and medical expenses
   d. ☒ general damage
   e. ☐ property damage
   f. ☒ loss of earning capacity
   g. ☒ other damage *(specify):* non-economic damages.

12. ☒ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☐ listed in Attachment 12.
   b. ☒ as follows:
   Debbie Ann Lawler -- Surviving mother of decedents, David Dywane Lawler and Terry Lyn Freeman, Jr.
   Cynthia K. Johnson -- surviving mother of decedent, Kavin Lamont Johnson
   Plaintiffs also lost love, comfort, care, assistance, protection, affection and moral support

13. The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☒ compensatory damages
      (2) ☐ punitive damages
      The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
      (1) ☒ according to proof
      (2) ☐ in the amount of: $ 0.00

15. ☒ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*
   All paragraphs of this complaint.

Date: May 9, 2016

Robert B. Gibson
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

Ex 2 p 3 of 6

MC-025

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: CIVDS1607235 |
| --- | --- |

**ATTACHMENT** *(Number):* 5

*(This Attachment may be used with any Judicial Council form.)*

5.

NAI CAPITAL MANAGEMENT SERVICES, INC., a business organization, form unknown.

ARGENT RETAIL ADVISORS, a business organization, form unknown.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page _____ of _____
*(Add pages as required)*

Ex. 2 p. 4 of 6

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

Legal
Solutions
℗ Plus

PLD-PI-001(2)

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: CIVDS1607235 |
| --- | --- |

FIRST _____   **CAUSE OF ACTION—General Negligence**   Page 4 _____
       (number)

ATTACHMENT TO ☐ Complaint   ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name)*:  DEBBIE ANN LAWLER, CYNTHIA K. JOHNSON

      alleges that defendant *(name)*:  AHALENA HOOKAH LOUNGE, TRAVON LEWIS STOKES, VALMOR LIMITED, L.P.,AUGUSTA DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI CAPITAL MANAGEMENT SERVICES, INC., ARGENT RETAIL ADVISORS, et al.

        ☒ Does 1_____ to 100 inclusive

was the legal (proximate) cause of damages to plaintiff.  By the following acts or omissions to act, defendant negligently caused the damage to plaintiff
on *(date)*:  or about May 16, 2014
at *(place)*:  or near Ahalena Hookah Lounge located at 1983 Diners Ct in the City of San Bernardino, County of San Bernardino
*(description of reasons for liability)*:

Decedents', David Dywane Lawler, Terry Lyn Freeman, Jr. and Kavin Lamont Johnson, were patrons at Ahalena Hookah Lounge on May 16, 2014.  Decedents were among 60 to 100 people hanging out in front of Ahalena Hookah Lounge after 4:00 a.m., in the parking lot.

Defendant, Travon Lewis Stokes, approached the decedents and fataly shot them. The negligence of security measures allowed the crowd to stay in the parking lot instead of dispersing the crowd.

As the proximate result of the negligence of defendants, decedents were shot and killed.  The defendants failed to maintain, secure and staff the property, and failed to adequately protect its patrons.

The negligence of these defendants was a substantial factor in the death of David Dywane Lawler, Terry Lyn Freeman, Jr., and Kavin Lamont Johnson.

**Ex. 2, p. 5 of 6**

**CAUSE OF ACTION—General Negligence**

Legal Solutions Plus

Page 1 of 1
Code of Civil Procedure 425.12

PLD-PI-001(4)

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: CIVDS1607235 |

SECOND _____    **CAUSE OF ACTION—Premises Liability**    Page 5 _____
(number)

ATTACHMENT TO [x] Complaint  [ ] Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

Prem.L-1. Plaintiff *(name):* DEBBIE ANN LAWLER, CYNTHIA K. JOHNSON
alleges the acts of defendants were the legal (proximate) cause of damages to plaintiff.
On *(date):* May 16, 2016      plaintiff was injured on the following premises in the following

fashion *(description of premises and circumstances of injury):*
at or near Ahalena Hookah Lounge located at 1983 Diner Court in the
City of San Bernardino, County of San Bernardino, decedents, David
Dywane Lawler, Terry Lyn Freeman, Jr., and Kavin Lamont Johnson were
shot and killed.

Prem.L-2.   [x] **Count One--Negligence**  The defendants who negligently owned, maintained, managed and operated
the described premises were *(names):*  AHALENA HOOKAH LOUNGE, TRAVON LEWIS STOKES, JIHAD SAKER,
VALMOR LIMITED, L.P.,AUGUSTA DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI CAPITAL MANAGEMENT
SERVICES, INC., ARGENT RETAIL ADVISORS
[x] Does _____ to _____

Prem.L-3.   [ ] **Count Two--Willful Failure to Warn**  [Civil Code section 846] The defendant owners who willfully
or maliciously failed to guard or warn against a dangerous condition, use, structure, or activity were
*(names):*

[ ] Does _____ to _____
Plaintiff, a recreational user, was  [ ] an invited guest  [ ] a paying guest.

Prem.L-4.   [ ] **Count Three--Dangerous Condition of Public Property**  The defendants who owned public property
on which a dangerous condition existed were *(names):*

[ ] Does _____ to _____
a. [ ]   The defendant public entity had  [ ] actual  [ ] constructive notice of the existence of the
dangerous condition in sufficient time prior to the injury to have corrected it.
b. [ ]   The condition was created by employees of the defendant public entity.

Prem.L-5. a. [x] **Allegations about Other Defendants**  The defendants who were the agents and employees of the
other defendants and acted within the scope of the agency were *(names):* EACH DEFENDANT AS TO
THE OTHER.

[X] Does _____ to _____
b. [x] The defendants who are liable to plaintiffs for other reasons and the reasons for their liability are
[ ] described in attachment Prem.L-5.b [x] as follows *(names):*AHALENA HOOKAH LOUNGE,
TRAVON LEWIS STOKES, JIHAD SAKER, VALMOR LIMITED, L.P.,AUGUSTA
DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI CAPITAL MANAGEMENT
SERVICES, INC., ARGENT RETAIL ADVISORS     **Ex. 2, p. 6 of 6**

Page 1 of 1

# Exhibit 3

1    Jihad Saker and Ahalena Hookah Lounge Erroniously Sued As Ahalena Hookha Lounge
        DBA

2    1983 Diners Court

3    San Bernardino California 92415

4    Defendants In Pro Per

**FILED-Central District**
SUPERIOR COURT
SAN BERNARDINO COUNTY

**DEC 2 2 2016**

Shannon Pratt
DEPUTY

7    **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

8    **247 WEST 3RD STREET SAN BERNARDINO CA. 92415**

9    **COUNTY OF SAN BERNARDINO**

10    **JUSTICE CENTER CIVIL DIVISION**

| | |
|---|---|
| GIBSON & HUGHES LAW FIRM | ) CASE NO: CIVDS1607235 |
| ROBERT B. GIBSON ATTORNEY FOR | ) |
| DEBBIE ANN LAWLER     AND | ) ANSWER BY DEFENDANT TO PLAINTFFS |
| CYNTHIA K. JOHNSON | ) WRONGFUL DEATH COMPLAINT |
|      Plaintiff's | ) Dept.: S28 |
|       VS | ) ORDER TO SHOW CAUSE |
| JIHAD SAKER    AND | ) 8:30 AM |
| AHALENA HOOKAH LOUNGE | )DATE:1-19-2017 |
| ERRONEOUSLY SUED AS AHALENA | |
| HOOKHA LOUNGE | |

Filing Fee in the amount of $ 435.00
waived. (G.C. §6103-6103.5; 68630-68640)
fee waiver

Defendants Answer to Wrongful Death Case # CIVDS1607235

**Ex. 3, p. 1 of 14**

1

2

3

4

## 1. PARTIES

5

6

7   A. PLAINTIFF 'S DEBBIE ANN LAWLER AND CYNTHIA K. JOHNSON Residents of San

8      Bernardino County California

9   B. DEFENDANT JIHAD SAKER AND AHALENA HOOKAH LOUNGE . Jihad Saker as an

10     individual dba Ahalena Hookah Lounge Erroneously sued bas Ahalena Hookha Lounge a

11     business which resides at 1983 Diners Court in San Bernardino California 92415 in San

12     Bernardino County.

13

14

15

16

## 2. PRELIMINARY STATEMENT IN SUPPORT OF DEFENDANTS ANSWER

17

18

19  Defendant Jihad Saker is the business owner of the defendant of Ahalena Hookah Lounge and

20  errouneously sued as Ahalena Hookha Lounge the business is located at 1983 Diners Court in San

21  Bernardino California.

22  On the night of May 16th 2014 there was a fatal shooting that took place after 4:00 am in the far

23  corner of the Diners Court parking lot.

24  Defendant denys these allegations set forth by the plaintiff's in this case and answers the cause of

25  action as a general denial stating that the actions that took place on the evening of May 16th 2014

26  were not foreseeable , have never happened in the past and were not within the scope of liability of

27

28

Defendants Answer to Wrongful Death Case # CIVDS1607235        **Ex. 3, p. 2 of 14**

1  the defendant, the defendants agents or employees as this action happened after the business was

2  closed and all the way across the shopping center parking lot and not within securities protection of

3  the business or its patrons.

4  **(PLEASE SEE ATTACHED PHOTOS LABELED "ATTACHMENT A")**

5

6  _____

7

8

9  **3. ANSWER BY DEFENDANT TO FIRST CAUSE OF ACTION**

10  **(GENERAL NEGLIGENCE)**

11

12

13  Defendant JIHAD SAKER owner of AHALENA HOOKAH LOUNGE erroneously sued as Ahalena

14  Hookha Lounge does hereby answer the Plaintiff's Wrongful Death Complaint

15

16  Page 4 of Plaintiff's Complaint First Cause of Action -Negligence Plaintiff alleges that the Defendant

17  is liable for allowing a crowd of people to gather in the parking lot.

18

19

20      The defendant who has been included in this wrongful death lawsuit states that the

21  defendant's security officer employee was approached shortly after the Ahalena Hookah Lounge had

22  closed.  The three (3) individuals later identified as the decedents David Lawler, Terry Freeman Jr.

23  and Kaven Johnson.

24      The security officer in performing his duties told the individuals that the business was already

25

26  closed for the night.

27

28

The individuals above, David Lawler, Terry Freeman Jr, and Kaven Johnson where never allowed access into the business and immediately left the business location and gathered in the far corner of the malls parking lot also known as the common area.

The defendant's security officer is liable and protects patrons inside the establishment as well as the front of the business to approximately 50 yards in front of the business or the distance of all parking stalls that would patron the Ahalena Hookah Lounge.

**(PLEASE SEE ATTACHED PHOTO LABELED "ATTACHMENT B")**

Defendant answers to Plaintiff's Complaint First Cause of action -General Negligence. Defendant denies this allegation stating that the crowd that had gathered in the far corner of the Diners Court parking lot were not within the defendant business location and were in what is considered a common area of the malls parking lot.

The common area of the Strip mall is thus not a factor for the defendant to be held liable for any harm coming to anyone because of the events that took place on the night of May 16th 2014. California Code of Civil Procedure Section 377.60 in part states that a defendant is liable under wrongful death negligence if the defendant knew or reasonably should have known that a situation would or could cause injury to a patron.

In the case at hand this has been a well-known gathering hangout for years and up until this incident the defendant knows of no other problems that this has caused. Denying plaintiff's allegations of knowing that this would cause harm to those people. As this has never had any previous acts such as this take place at or near this location.

## PLEASE SEE ATTACHED CRIME MAPPING REPORT LABLED ATTACHMENT C

### 4.

### AFFIRMATIVE DEFENSE

8uperseding Cause, The damages the plaintiff's or the person insured by plaintiff claims to have

suffered were almost entirely caused by an event that occurred after the accident described in the

complaint.

The business was already closed for the night and the crowd that gathered was in the far corner of the

parking lot.

The employees of the Ahalena Hookah Lounge were cleaning up and the security officer was not on

the clock when the accident occurred.

Thus this defendant is not responsible for plaintiff's claimed damages.

### 5.

### CONCLUSION

Defendant prays that this answer is sufficient to prove that the defendant did not know or should have

known that the people gathered in the far corner of the parking lot were going to be in danger as this

type of accident has never happened before.

1   The business was already closed for the night when the accident occurred and no security officer was

2   on the clock at the time.

3   The accident was gang related and in the trial it was discovered that this shooting was a pre meditated

4   act on the shooter Traven Stokes. That this act was going to happen no matter where the three

5   individuals were and that the defendant could not have possibly foreseen this tragic event taking

6   place.

7

8   Thus this defendant is not responsible for plaintiff's claimed damages

9

10   Dated: Dec 25  2016                          X _Jahed Saker_____

11

12                                               Jihad Saker/individual dba Ahalena

13                                               Hookha Lounge erroneously sued as

14                                               Ahalena Hookha Lounge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants Answer to Wrongful Death Case # CIVDS1607235

**Ex. 3, p. 6 of 14**

# PROOF OF SERVICE

I am over the age of 18 and not a party to this action.

I am a resident of or employed in the county where the mailing occurred; my
3262 NORTH E STREET SAN BERNARDINO CALIFORNIA 92405

On December 8th , 2016 I served the foregoing document(s) described as Defendants Answer
to Plaintiff's Wrongful Death  Complaint to the following parties:

**NAME AND ADDRESS OF ATTORNEY**

> **THE LAW OFFICES OF**
> **GIBSON & HUGHES**
> **1551 NORTH TUSTIN AVE. SUITE 530**
> **SANTA ANA CALIFORNIA 92705**
> **(714) 547-8377**

> **Attorney of Record for Plaintiff**

[x  ] (By U.S. Mail) I deposited such envelope in the mail at San Bernardino,
    California with postage thereon fully prepaid. At a place of business where I am
    aware that the mail is picked up in the normal course of business.

[  ] (By Personal Service) I caused such envelope to be delivered by hand via messenger
    service to the address above;

[  ] (By Facsimile) I served a true and correct copy by facsimile during regular business
    hours to the number(s) listed above. Said transmission was reported complete
    and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing

Is true and correct.

DATED: DEC 8th 2016

MICHAEL ELLIOTT

ATTACHMENT A



Imagery ©2016 County of San Bernardino, DigitalGlobe, U.S. Geological Survey, Map data ©2016 Google    50 ft





ATTACHMENT B

Google Maps



Map data ©2016 Google    20 ft

Measure distance
Total distance: 126.58 ft (38.58 m)

ATTACHMENT C

**Ex. 3, p. 13 of 14**

Map    Report    Print    CyberWatch



Display incidents on a map. Focus your
search around an address, near a location or
within a geographic area.

Number of items found = 2

Map Information

Select Crime Types    Search by Location    Search by Date    Update Map    Reset

Charts

Map Legend

Summary

Map Style
Display:        Pin Map

What Selection
*Incidents*
CRIME TYPE
  HOMICIDE

Where Selection
Location Type:    Address
Location:        1983 S DINERS CT
Radius:          500 Feet

When Selection
All dates



# Exhibit 4

DISC-001

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

Robert B. Gibson, Esq. (SBN: 162347)
GIBSON & HUGHES
1551 N. Tustin Avenue, Suite 530
Suite 530
Santa Ana, CA 92705

TELEPHONE NO.: (714) 547-8377
FAX NO. *(Optional):* (714) 547-8378
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO
San Bernardino County Superior Court
CENTRAL COURT

SHORT TITLE OF CASE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al.

| FORM INTERROGATORIES—GENERAL | CASE NUMBER: |
|---|---|
| **Asking Party:** Plaintff, Debbie Ann Lawler | CIVDS1607235 |
| **Answering Party:** Defendant, Jihad Saker dba Ahalena Hooka | |
| **Set No.:** One | |

## Sec. 1.    Instructions to All Parties

(a)  Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath. The interrogatories below are form interrogatories approved for use in civil cases.

(b)  For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010–2030.410 and the cases construing those sections.

(c)  These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

## Sec. 2.    Instructions to the Asking Party

(a)  These interrogatories are designed for optional use by parties in unlimited civil cases where the amount demanded exceeds $25,000. Separate interrogatories, Form *Interrogatories—Limited Civil Cases (Economic Litigation)* (form DISC-004), which have no subparts, are designed for use in limited civil cases where the amount demanded is $25,000 or less; however, those interrogatories may also be used in unlimited civil cases.

(b)  Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(c)  You may insert your own definition of **INCIDENT** in Section 4, but only where the action arises from a course of conduct or a series of events occurring over a period of time.

(d)  The interrogatories in section 16.0, Defendant's Contentions—Personal Injury, should not be used until the defendant has had a reasonable opportunity to conduct an investigation or discovery of plaintiff's injuries and damages.

(e)  Additional interrogatories may be attached.

## Sec. 3.    Instructions to the Answering Party

(a)  An answer or other appropriate response must be given to each interrogatory checked by the asking party.

(b)  As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared. See Code of Civil Procedure sections 2030.260–2030.270 for details.

(c)  Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d)  If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e)  Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f)  Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g)  If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h)  Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

_____     _____
*(DATE)*                                    *(SIGNATURE)*

## Sec. 4.  Definitions

Words in **BOLDFACE CAPITALS** in these interrogatories are defined as follows:

(a)  *(Check one of the following):*

[x]  (1)  **INCIDENT** includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.

**Ex. 4, p. 1 of 20**

Form Approved for Optional Use
Judicial Council of California
DISC-001 [Rev. January 1, 2008]

**FORM INTERROGATORIES—GENERAL**

Legal
Solutions™
Plus

Code of Civil Procedure,
§§ 2030.010-2030.410, 2033.710

DISC-001

**(2) INCIDENT** means *(insert your definition here or on a separate, attached sheet labeled "Sec. 4(a)(2)"):*

**(b) YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

(c) **PERSON** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

(d) **DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

(e) **HEALTH CARE PROVIDER** includes any **PERSON** referred to in Code of Civil Procedure section 667.7(e)(3).

(f) **ADDRESS** means the street address, including the city, state, and zip code.

**Sec. 5. Interrogatories**

The following interrogatories have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

## CONTENTS

1.0   Identity of Persons Answering These Interrogatories
2.0   General Background Information—Individual
3.0   General Background Information—Business Entity
4.0   Insurance
5.0   *[Reserved]*
6.0   Physical, Mental, or Emotional Injuries
7.0   Property Damage
8.0   Loss of Income or Earning Capacity
9.0   Other Damages
10.0  Medical History
11.0  Other Claims and Previous Claims
12.0  Investigation — General
13.0  Investigation — Surveillance
14.0  Statutory or Regulatory Violations
15.0  Denials and Special or Affirmative Defenses
16.0  Defendant's Contentions Personal Injury
17.0  Responses to Request for Admissions
18.0  *[Reserved]*
19.0  *[Reserved]*
20.0  How the Incident Occurred—Motor Vehicle
25.0  *[Reserved]*
30.0  *[Reserved]*
40.0  *[Reserved]*
50.0  Contract
60.0  *[Reserved]*
70.0  Unlawful Detainer *[See separate form DISC-003]*
101.0 Economic Litigation *[See separate form DISC-004]*
200.0 Employment Law *[See separate form DISC-002]*
      Family Law *[See separate form FL-145]*

**1.0 Identity of Persons Answering These Interrogatories**

[x] 1.1 State the name, **ADDRESS**, telephone number, and relationship to you of each **PERSON** who prepared or assisted in the preparation of the responses to these interrogatories. (*Do not identify anyone who simply typed or reproduced the responses.*)

**2.0 General Background Information—individual**

[x] 2.1 State:
(a) your name;
(b) every name you have used in the past; and
(c) the dates you used each name.

[x] 2.2 State the date and place of your birth.

[x] 2.3 At the time of the **INCIDENT**, did you have a driver's license? If so, state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

[x] 2.4 At the time of the **INCIDENT**, did you have any other permit or license for the operation of a motor vehicle? If so, state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

[x] 2.5 State:
(a) your present residence **ADDRESS;**
(b) your residence **ADDRESSES** for the past five years; and
(c) the dates you lived at each **ADDRESS.**

[x] 2.6 State:
(a) the name, **ADDRESS**, and telephone number of your present employer or place of self-employment; and
(b) the name, **ADDRESS**, dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the **INCIDENT** until today.

[ ] 2.7 State:
(a) the name and **ADDRESS** of each school or other academic or vocational institution you have attended, beginning with high school;
(b) the dates you attended;
(c) the highest grade level you have completed; and
(d) the degrees received.

[ ] 2.8 Have you ever been convicted of a felony? If so, for each conviction state:
(a) the city and state where you were convicted;
(b) the date of conviction;
(c) the offense; and
(d) the court and case number.

[x] 2.9 Can you speak English with ease? If not, what language and dialect do you normally use?

[x] 2.10 Can you read and write English with ease? If not, what language and dialect do you normally use?

[x] 2.11 At the time of the **INCIDENT** were you acting as an agent or employee for any **PERSON?** If so, state:
(a) the name, **ADDRESS**, and telephone number of that **PERSON:** and
(b) a description of your duties.

[x] 2.12 At the time of the **INCIDENT** did you or any other person have any physical, emotional, or mental disability or condition that may have contributed to the occurrence of the **INCIDENT?** If so, for each person state:
(a) the name, **ADDRESS**, and telephone number;
(b) the nature of the disability or condition; and
(c) the manner in which the disability or condition contributed to the occurrence of the **INCIDENT.**

[x] 2.13 Within 24 hours before the **INCIDENT** did you or any person involved in the **INCIDENT** use or take any of the following substances: alcoholic beverage, marijuana, or other drug or medication of any kind (prescription or not)? If so, for each person state:
(a) the name, **ADDRESS,** and telephone number;
(b) the nature or description of each substance;
(c) the quantity of each substance used or taken;
(d) the date and time of day when each substance was used or taken;
(e) the **ADDRESS** where each substance was used or taken;
(f) the name, **ADDRESS,** and telephone number of each person who was present when each substance was used or taken; and
(g) the name, **ADDRESS,** and telephone number of any **HEALTH CARE PROVIDER** who prescribed or furnished the substance and the condition for which it was prescribed or furnished.

### 3.0 General Background Information — Business Entity

[x] 3.1 Are you a corporation? If so, state:
(a) the name stated in the current articles of incorporation;
(b) all other names used by the corporation during the past 10 years and the dates each was used;
(c) the date and place of incorporation;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

[x] 3.2 Are you a partnership? If so, state:
(a) the current partnership name;
(b) all other names used by the partnership during the past 10 years and the dates each was used;
(c) whether you are a limited partnership and, if so, under the laws of what jurisdiction;
(d) the name and **ADDRESS** of each general partner; and
(e) the **ADDRESS** of the principal place of business.

[x] 3.3 Are you a limited liability company? If so, state:
(a) the name stated in the current articles of organization;
(b) all other names used by the company during the past 10 years and the date each was used;
(c) the date and place of filing of the articles of organization;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

[x] 3.4 Are you a joint venture? If so, state:
(a) the current joint venture name;
(b) all other names used by the joint venture during the past 10 years and the dates each was used;
(c) the name and **ADDRESS** of each joint venturer; and
(d) the **ADDRESS** of the principal place of business.

[x] 3.5 Are you an unincorporated association?
If so, state:
(a) the current unincorporated association name;
(b) all other names used by the unincorporated association during the past 10 years and the dates each was used; and
(c) the **ADDRESS** of the principal place of business.

[x] 3.6 Have you done business under a fictitious name during the past 10 years? If so, for each fictitious name state:
(a) the name;
(b) the dates each was used;
(c) the state and county of each fictitious name filing; and
(d) the **ADDRESS** of the principal place of business.

[x] 3.7 Within the past five years has any public entity registered or licensed your business? If so, for each license or registration:
(a) identify the license or registration;
(b) state the name of the public entity; and
(c) state the dates of issuance and expiration.

### 4.0 Insurance

[x] 4.1 At the time of the **INCIDENT**, was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the **INCIDENT?** If so, for each policy state:
(a) the kind of coverage;
(b) the name and **ADDRESS** of the insurance company;
(c) the name, **ADDRESS,** and telephone number of each named insured;
(d) the policy number;
(e) the limits of coverage for each type of coverage contained in the policy;
(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and
(g) the name, **ADDRESS,** and telephone number of the custodian of the policy.

[x] 4.2 Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the **INCIDENT?** If so, specify the statute.

### 5.0 *[Reserved]*

### 6.0 Physical, Mental, or Emotional Injuries

[ ] 6.1 Do you attribute any physical, mental, or emotional injuries to the **INCIDENT?** *(If your answer is "no," do not answer interrogatories 6.2 through 6.7).*

[ ] 6.2 Identify each injury you attribute to the **INCIDENT** and the area of your body affected.

**Ex. 4, p. 3 of 20**

6.3 Do you still have any complaints that you attribute to the **INCIDENT**? If so, for each complaint state:
(a) a description;
(b) whether the complaint is subsiding, remaining the same, or becoming worse; and
(c) the frequency and duration.

6.4 Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) or treatment from a **HEALTH CARE PROVIDER** for any injury you attribute to the **INCIDENT**? If so, for each **HEALTH CARE PROVIDER** state:
(a) the name, **ADDRESS,** and telephone number;
(b) the type of consultation, examination, or treatment provided;
(c) the dates you received consultation, examination, or treatment; and
(d) the charges to date.

6.5 Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the **INCIDENT?** If so, for each medication state:
(a) the name;
(b) the **PERSON** who prescribed or furnished it;
(c) the date it was prescribed or furnished;
(d) the dates you began and stopped taking it; and
(e) the cost to date.

6.6 Are there any other medical services necessitated by the injuries that you attribute to the **INCIDENT** that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:
(a) the nature;
(b) the date;
(c) the cost; and
(d) the name, **ADDRESS,** and telephone number of each provider.

6.7 Has any **HEALTH CARE PROVIDER** advised that you may require future or additional treatment for any injuries that you attribute to the **INCIDENT?** If so, for each injury state:
(a) the name and **ADDRESS** of each **HEALTH CARE PROVIDER;**
(b) the complaints for which the treatment was advised; and
(c) the nature, duration, and estimated cost of the treatment. treatment.

## 7.0    Property Damage

7.1 Do you attribute any loss of or damage to a vehicle or other property to the **INCIDENT?** If so, for each item of property:
(a) describe the property;
(b) describe the nature and location of the damage to the property;

(c) state the amount of damage you are claiming for each item of property and how the amount was calculated; and
(d) if the property was sold, state the name, **ADDRESS,** and telephone number of the seller, the date of sale, and the sale price.

7.2 Has a written estimate or evaluation been made for any item of property referred to in your answer to the preceding interrogatory? If so, for each estimate or evaluation state:
(a) the name, **ADDRESS,** and telephone number of the **PERSON** who prepared it and the date prepared;
(b) the name, **ADDRESS,** and telephone number of each **PERSON** who has a copy of it; and
(c) the amount of damage stated.

7.3 Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:
(a) the date repaired;
(b) a description of the repair;
(c) the repair cost;
(d) the name, **ADDRESS,** and telephone number of the **PERSON** who repaired it;
(e) the name, **ADDRESS,** and telephone number of the **PERSON** who paid for the repair.

## 8.0    Loss of Income or Earning Capacity

8.1 Do you attribute any loss of income or earning capacity to the **INCIDENT?** *(If your answer is "no," do not answer interrogatories 8.2 through 8.8).*

8.2 State:
(a) the nature of your work;
(b) your job title at the time of the **INCIDENT;** and
(c) the date your employment began.

8.3 State the last date before the **INCIDENT** that you worked for compensation.

8.4 State your monthly income at the time of the **INCIDENT** and how the amount was calculated.

8.5 State the date you returned to work at each place of employment following the **INCIDENT.**

8.6 State the dates you did not work and for which you lost income as a result of the **INCIDENT.**

8.7 State the total income you have lost to date as a result of the **INCIDENT** and how the amount was calculated.

8.8 Will you lose income in the future as a result of the **INCIDENT?** If so, state:
(a) the facts upon which you base this contention;
(b) an estimate of the amount;
(c) an estimate of how long you will be unable to work; and
(d) how the claim for future income is calculated.

## Ex. 4, p. 4 of 20

**9.0 Other Damages**

☐ 9.1   Are there any other damages that you attribute to the **INCIDENT?** If so, for each item of damage state:
(a) the nature;
(b) the date it occurred;
(c) the amount; and
(d) the name, **ADDRESS,** and telephone number of each **PERSON** to whom an obligation was incurred.

☐ 9.2   Do any **DOCUMENTS** support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

**10.0 Medical History**

☐ 10.1   At any time before the **INCIDENT** did you have complaints or injuries that involved the same part of your body claimed to have been injured in the **INCIDENT?** If so, for each state:
(a) a description of the complaint or injury;
(b) the dates it began and ended; and
(c) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER** whom you consulted or who examined or treated you.

☐ 10.2   List all physical, mental, and emotional disabilities you had immediately before the **INCIDENT.** *(You may omit mental or emotional disabilities unless you attribute any mental or emotional injury to the **INCIDENT**.)*

☐ 10.3   At any time after the **INCIDENT,** did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:
(a) the date and the place it occurred;
(b) the name, **ADDRESS,** and telephone number of any other **PERSON** involved;
(c) the nature of any injuries you sustained;
(d) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER** who you consulted or who examined or treated you; and
(e) the nature of the treatment and its duration.

**11.0 Other Claims and Previous Claims**

☐ 11.1   Except for this action, in the past 10 years have you filed an action or made a written claim or demand for compensation for your personal injuries? If so, for each action, claim, or demand state:
(a) the date, time, and place and location (closest street **ADDRESS** or intersection) of the **INCIDENT** giving rise to the action, claim, or demand;
(b) the name, **ADDRESS,** and telephone number of each **PERSON** against whom the claim or demand was made or the action filed;

(c) the court, names of the parties, and case number of any action filed;
(d) the name, **ADDRESS,** and telephone number of any attorney representing you;
(e) whether the claim or action has been resolved or is pending; and
(f) a description of the injury.

☐ 11.2   In the past 10 years have you made a written claim or demand for workers' compensation benefits? If so, for each claim or demand state:
(a) the date, time, and place of the **INCIDENT** giving rise to the claim;
(b) the name, **ADDRESS,** and telephone number of your employer at the time of the injury;
(c) the name, **ADDRESS,** and telephone number of the workers' compensation insurer and the claim number;
(d) the period of time during which you received workers' compensation benefits;
(e) a description of the injury;
(f) the name, **ADDRESS,** and telephone number of any **HEALTH CARE PROVIDER** who provided services; and
(g) the case number at the Workers' Compensation Appeals Board.

**12.0 Investigation—General**

☒ 12.1   State the name, **ADDRESS,** and telephone number of each individual:
(a) who witnessed the **INCIDENT** or the events occurring immediately before or after the **INCIDENT;**
(b) who made any statement at the scene of the **INCIDENT;**
(c) who heard any statements made about the **INCIDENT** by any individual at the scene; and
(d) who **YOU OR ANYONE ACTING ON YOUR BEHALF** claim has knowledge of the **INCIDENT** (except for expert witnesses covered by Code of Civil Procedure section 2034).

☒ 12.2   Have **YOU OR ANYONE ACTING ON YOUR BEHALF** interviewed any individual concerning the **INCIDENT?** If so, for each individual state:
(a) the name, **ADDRESS,** and telephone number of the individual interviewed;
(b) the date of the interview; and
(c) the name, **ADDRESS,** and telephone number of the **PERSON** who conducted the interview.

☒ 12.3   Have **YOU OR ANYONE ACTING ON YOUR BEHALF** obtained a written or recorded statement from any individual concerning the **INCIDENT?** If so, for each statement state:
(a) the name, **ADDRESS,** and telephone number of the individual from whom the statement was obtained;
(b) the name, **ADDRESS,** and telephone number of the individual who obtained the statement;
(c) the date the statement was obtained; and
(d) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original statement or a copy.

**Ex. 4, p. 5 of 20**

[X] **12.4 Do YOU OR ANYONE ACTING ON YOUR BEHALF**
know of any photographs, films, or videotapes depicting any
place, object, or individual concerning the **INCIDENT** or
plaintiff's injuries?  If so, state:
(a) the number of photographs or feet of film or videotape;
(b) the places, objects, or persons photographed, filmed, or
videotaped;
(c) the date the photographs, films, or videotapes were
taken;
(d) the name, **ADDRESS,** and telephone number of the
individual taking the photographs, films, or videotapes;
and
(e) the name, **ADDRESS,** and telephone number of each
**PERSON** who has the original or a copy of the
photographs, films, or videotapes.

[X] **12.5 Do YOU OR ANYONE ACTING ON YOUR BEHALF**
know of any diagram, reproduction, or model of any place or
thing (except for items developed by expert witnesses
covered by Code of Civil Procedure sections 2034.210-
2034.310) concerning the **INCIDENT**?  If so, for each item
state:
(a) the type (i.e., diagram, reproduction, or model);
(b) the subject matter; and
(c) the name, **ADDRESS**, and telephone number of each
**PERSON** who has it.

[X] **12.6** Was a report made by any **PERSON** concerning the
**INCIDENT**?  If so, state:
(a) the name, title, identification number, and employer of
the **PERSON** who made the report;
(b) the date and type of report made;
(c) the name, **ADDRESS**, and telephone number of the
**PERSON** for whom the report was made; and
(d) the name, **ADDRESS**, and telephone number of each
**PERSON** who has the original or a copy of the report.

[X] **12.7** Have **YOU OR ANYONE ACTING ON YOUR
BEHALF** inspected the scene of the **INCIDENT**?  If so, for
each inspection state:
(a) the name, **ADDRESS**, and telephone number of the
individual making the inspection (except for expert
witnesses covered by Code of Civil Procedure sections
2034.210–2034.310); and
(b) the date of the inspection.

**13.0   Investigation—Surveillance**

[X] **13.1** Have **YOU OR ANYONE ACTING ON YOUR BEHALF**
conducted surveillance of any individual involved in the
**INCIDENT** or any party to this action?  If so, for each sur-
veillance state:
(a) the name, **ADDRESS**, and telephone number of the
individual or party;
(b) the time, date, and place of the surveillance;
(c) the name, **ADDRESS**, and telephone number of the
individual who conducted the surveillance; and
(d) the name, **ADDRESS**, and telephone number of each
**PERSON** who has the original or a copy of any
surveillance photograph, film, or videotape.

[X] **13.2** Has a written report been prepared on the
surveillance?  If so, for each written report state:
(a) the title;
(b) the date;
(c) the name, **ADDRESS**, and telephone number of the
individual who prepared the report; and
(d) the name, **ADDRESS**, and telephone number of each
**PERSON** who has the original or a copy.

**14.0   Statutory or Regulatory Violations**

[x] **14.1** Do **YOU OR ANYONE ACTING ON YOUR BEHALF**
contend that any **PERSON** involved in the **INCIDENT**
violated any statute, ordinance, or regulation and that the
violation was a legal (proximate) cause of the **INCIDENT**?  If
so, identify the name, **ADDRESS,** and telephone number of
each **PERSON** and the statute, ordinance, or regulation that
was violated.

[x] **14.2** Was any **PERSON** cited or charged with a violation of
any statute, ordinance, or regulation as a result of this
**INCIDENT**?  If so, for each **PERSON** state:
(a) the name, **ADDRESS,** and telephone number of the
**PERSON;**
(b) the statute, ordinance, or regulation allegedly violated;
(c) whether the **PERSON** entered a plea in response to the
citation or charge and, if so, the plea entered; and
(d) the name and **ADDRESS** of the court or administrative
agency, names the parties, and case number.

**15.0   Denials and Special or Affirmative Defenses**

[X] **15.1** Identify each denial of a material allegation and each
special or affirmative defense in your pleadings and for
each:
(a) state all facts upon which you base the denial or special
or affirmative defense;
(b) state the names, **ADDRESSES,** and telephone numbers
of all **PERSONS** who have knowledge of those facts;
and
(c) identify all **DOCUMENTS** and other tangible things that
support your denial or special or affirmative defense, and
state the name, **ADDRESS,** and telephone number of
the **PERSON** who has each **DOCUMENT**.

**16.0   Defendant's Contentions—Personal Injury**

[X] **16.1** Do you contend that any **PERSON,** other than you or
plaintiff, contributed to the occurrence of the **INCIDENT** or
the injuries or damages claimed by plaintiff?  If so, for each
**PERSON:**
(a) state the name, **ADDRESS,** and telephone number of
the **PERSON;**
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers
of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that
support your contention and state the name, **ADDRESS,**
and telephone number of the **PERSON** who has each
**DOCUMENT** or thing.

[ ] **16.2** Do you contend that plaintiff was not injured in the
**INCIDENT**?  If so:
(a) state all facts upon which you base your contention;
(b) state the names, **ADDRESSES,** and telephone numbers
of all **PERSONS** who have knowledge of the facts; and
(c) identify all **DOCUMENTS** and other tangible things that
support your contention and state the name, **ADDRESS,**
and telephone number of the **PERSON** who has each
**DOCUMENT** or thing.

Ex. 4, p. 6 of 20

DISC-001

16.3  Do you contend that the injuries or the extent of the injuries claimed by plaintiff as disclosed in discovery proceedings thus far in this case were not caused by the **INCIDENT**?  If so, for each injury:
(a) identify it;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.4  Do you contend that any of the services furnished by any **HEALTH CARE PROVIDER** claimed by plaintiff in discovery proceedings thus far in this case were not due to the **INCIDENT**?  If so:
(a) identify each service;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.5  Do you contend that any of the costs of services furnished by any **HEALTH CARE PROVIDER** claimed as damages by plaintiff in discovery proceedings thus far in this case were not necessary or unreasonable?  If so:
(a) identify each cost;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.6  Do you contend that any part of the loss of earnings or income claimed by plaintiff in discovery proceedings thus far in this case was unreasonable or was not caused by the **INCIDENT**?  If so:
(a) identify each part of the loss;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.7  Do you contend that any of the property damage claimed by plaintiff in discovery Proceedings thus far in this case was not caused by the **INCIDENT**?  If so:
(a) identify each item of property damage;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.8  Do you contend that any of the costs of repairing the property damage claimed by plaintiff in discovery proceedings thus far in this case were unreasonable?  If so:
(a) identify each cost item;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.9  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** (for example, insurance bureau index reports) concerning claims for personal injuries made before or after the **INCIDENT** by a plaintiff in this case?  If so, for each plaintiff state:
(a) the source of each **DOCUMENT;**
(b) the date each claim arose;
(c) the nature of each claim; and
(d) the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

16.10 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** concerning the past or present physical, mental, or emotional condition of any plaintiff in this case from a **HEALTH CARE PROVIDER** not previously identified (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310)?  If so, for each plaintiff state:
(a) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER;**
(b) a description of each **DOCUMENT**; and
(c) the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

**17.0  Responses to Request for Admissions**

17.1  Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:
(a) state the number of the request;
(b) state all facts upon which you base your response;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your response and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**18.0** *[Reserved]*

**19.0** *[Reserved]*

**20.0  How the Incident Occurred—Motor Vehicle**

20.1  State the date, time, and place of the **INCIDENT** (closest street **ADDRESS** or intersection).

20.2  For each vehicle involved in the **INCIDENT,** state:
(a) the year, make, model, and license number;
(b) the name, ADDRESS, and telephone number of the driver;

Ex. 4, p. 7 of 20

DISC-001

(c) the name, **ADDRESS,** and telephone number of each occupant other than the driver;

(d) the name, **ADDRESS,** and telephone number of each registered owner;

(e) the name, **ADDRESS,** and telephone number of each lessee;

(f) the name, **ADDRESS,** and telephone number of each owner other than the registered owner or lien holder; and

(g) the name of each owner who gave permission or consent to the driver to operate the vehicle.

☐ 20.3  State the **ADDRESS** and location where your trip began and the **ADDRESS** and location of your destination.

☐ 20.4  Describe the route that you followed from the beginning of your trip to the location of the **INCIDENT,** and state the location of each stop, other than routine traffic stops, during the trip leading up to the **INCIDENT.**

☐ 20.5  State the name of the street or roadway, the lane of travel, and the direction of travel of each vehicle involved in the **INCIDENT** for the 500 feet of travel before the **INCIDENT.**

☐ 20.6  Did the **INCIDENT** occur at an intersection? If so, describe all traffic control devices, signals, or signs at the intersection.

☐ 20.7  Was there a traffic signal facing you at the time of the **INCIDENT?** If so, state:

(a) your location when you first saw it;

(b) the color;

(c) the number of seconds it had been that color; and

(d) whether the color changed between the time you first saw it and the **INCIDENT.**

☐ 20.8  State how the **INCIDENT** occurred, giving the speed, direction, and location of each vehicle involved:

(a) just before the **INCIDENT;**

(b) at the time of the **INCIDENT;** and

(c) just after the **INCIDENT.**

☐ 20.9  Do you have information that a malfunction or defect in a vehicle caused the **INCIDENT**?  If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, **ADDRESS,** and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS,** and telephone number of each **PERSON** who has custody of each defective part.

☐ 20.10 Do you have information that any malfunction or defect in a vehicle contributed to the injuries sustained in the **INCIDENT?**  If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, **ADDRESS,** and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS,** and telephone number of each **PERSON** who has custody of each defective part.

☐ 20.11 State the name, **ADDRESS,** and telephone number of each owner and each **PERSON** who has had possession since the **INCIDENT** of each vehicle involved in the **INCIDENT.**

**25.0** *[Reserved]*

**30.0** *[Reserved]*

**40.0** *[Reserved]*

**50.0  Contract**

☐ 50.1  For each agreement alleged in the pleadings:

(a) identify each **DOCUMENT** that is part of the agreement and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**

(b) state each part of the agreement not in writing, the name, **ADDRESS,** and telephone number of each **PERSON** agreeing to that provision, and the date that part of the agreement was made;

(c) identify all **DOCUMENTS** that evidence any part of the agreement not in writing and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**

(d) identify all **DOCUMENTS** that are part of any modification to the agreement, and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**

(e) state each modification not in writing, the date, and the name, **ADDRESS,** and telephone number of each **PERSON** agreeing to the modification, and the date the modification was made;

(f) identify all **DOCUMENTS** that evidence any modification of the agreement not in writing and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT.**

☐ 50.2  Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

☐ 50.3  Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

☐ 50.4  Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation?  If so, identify each agreement terminated, the date of termination, and the basis of the termination.

☐ 50.5  Is any agreement alleged in the pleadings unenforceable?  If so, identify each unenforceable agreement and state why it is unenforceable.

☐ 50.6  Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

**60.0** *[Reserved]*

**Ex. 4, p. 8 of 20**

# PROOF OF SERVICE
## (C.C.P. §§ 1013A, 2015.5)

| | |
|---|---|
| STATE OF CALIFORNIA  ) | |
| COUNTY OF SAN       ) § | **Lawler, et al.  v. Ahalena Hookah Lounge, et al.-** |
| BERNARDINO         ) | **Case No.: CIVDS1607235** |

I am employed in the County of Orange, State of California.  I am over the age of eighteen (18) years and not a party to this within action.  My business address is: 1551 N. Tustin Avenue, Suite 530, Santa Ana, CA 92705.

On January 12, 2017, I served the foregoing documents described as:

**PLAINTIFF'S REQUEST FOR FORM INTERROGATORIES, SET NUMBER ONE**

on all interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

*Jihad Saker*
1983 Diners Court
San Bernardino, CA 92415

IN PRO PER

**[ X] Via the United States Postal Service as follows:**  I am "readily familiar" with this firm's business practice for collection and processing correspondence for mailing with the United States Postal Service.  Under that practice it would be deposited with the United States Postal Service this same day with postage thereon fully prepaid at Santa Ana, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after the date for deposit for mailing in affidavit.

**[ ] By Personal Delivery**: [ ] Delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope clearly labeled to identify the attorney being served, with a receptionist or an individual in charge, between the hours of 9:00 a.m. and 5:00 p.m.  [ ] Or, delivery was made to the party or by leaving the documents at the party's residence with some person over the age of 18 between the hours of 8:00 a.m. and 6:00 p.m.

**Ex. 4, p. 9 of 20**

**Name of person served:**
**Address:** *See service list above*

**Date:**                                    **Time:**

[ ] **Via Facsimile** by causing such document to be served via facsimile on the parties in this action via facsimile numbers as stated on this proof of service.

**Fax Number where person served:** *See service list above*
**Time of service:**

[ ] **Via Certified Mail**, Return Receipt Requested  by causing a true copy and/or original thereof to be placed in a sealed envelope with postage thereon fully prepaid in the designated area for outgoing mail.

I caused such envelope to be deposited in the mail at Santa Ana, CA.  The envelope was mailed with postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 12, 2017 at Santa Ana, California.

OFELIA GODINEZ

DISC-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: |
|---|
| Robert B. Gibson, Esq. (SBN: 162347)<br>GIBSON & HUGHES<br>1551 N. Tustin Avenue, Suite 530<br>Suite 530<br>Santa Ana, CA 92705 |
| TELEPHONE NO.: (714) 547-8377 |
| FAX NO. *(Optional)*: (714) 547-8378 |
| E-MAIL ADDRESS *(Optional)*: |
| ATTORNEY FOR *(Name)*: Plaintiffs |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO |
|---|
| San Bernardino County Superior Court<br>CENTRAL COURT |

| SHORT TITLE OF CASE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. |
|---|

| FORM INTERROGATORIES—GENERAL | CASE NUMBER: |
|---|---|
| **Asking Party:** Plaintiff, Cynthia K. Johnson | CIVDS1607235 |
| **Answering Party:** Defendant, Jihad Saker dba Ahalena Hookah Lounge | |
| **Set No.:** One | |

### Sec. 1.   Instructions to All Parties

(a)  Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath. The interrogatories below are form interrogatories approved for use in civil cases.

(b)  For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010–2030.410 and the cases construing those sections.

(c)  These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

### Sec. 2.   Instructions to the Asking Party

(a)  These interrogatories are designed for optional use by parties in unlimited civil cases where the amount demanded exceeds $25,000. Separate interrogatories, Form *Interrogatories—Limited Civil Cases (Economic Litigation)* (form DISC-004), which will have no subparts, are designed for use in limited civil cases where the amount demanded is $25,000 or less; however, those interrogatories may also be used in unlimited civil cases.

(b)  Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(c)  You may insert your own definition of **INCIDENT** in Section 4, but only where the action arises from a course of conduct or a series of events occurring over a period of time.

(d)  The interrogatories in section 16.0, Defendant's Contentions—Personal Injury, should not be used until the defendant has had a reasonable opportunity to conduct an investigation or discovery of plaintiff's injuries and damages.

(e)  Additional interrogatories may be attached.

### Sec. 3.   Instructions to the Answering Party

(a)  An answer or other appropriate response must be given to each interrogatory checked by the asking party.

(b)  As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all parties to the action who have appeared. See Code of Civil Procedure sections 2030.260–2030.270 for details.

(c)  Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d)  If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e)  Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f)  Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g)  If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h)  Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

_____   _____
(DATE)                                 (SIGNATURE)

### Sec. 4.   Definitions

Words in **BOLDFACE CAPITALS** in these interrogatories are defined as follows:

(a) *(Check one of the following):*

☒  (1)  **INCIDENT** includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.

☐ **(2)  INCIDENT** means *(insert your definition here or on a separate, attached sheet labeled "Sec. 4(a)(2)"):*

**(b)  YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

**(c)  PERSON** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

**(d)  DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

**(e)  HEALTH CARE PROVIDER** includes any **PERSON** referred to in Code of Civil Procedure section 667.7(e)(3).

**(f)  ADDRESS** means the street address, including the city, state, and zip code.

**Sec. 5. Interrogatories**

The following interrogatories have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

CONTENTS

1.0    Identity of Persons Answering These Interrogatories
2.0    General Background Information—Individual
3.0    General Background Information—Business Entity
4.0    Insurance
5.0    *[Reserved]*
6.0    Physical, Mental, or Emotional Injuries
7.0    Property Damage
8.0    Loss of Income or Earning Capacity
9.0    Other Damages
10.0   Medical History
11.0   Other Claims and Previous Claims
12.0   Investigation — General
13.0   Investigation — Surveillance
14.0   Statutory or Regulatory Violations
15.0   Denials and Special or Affirmative Defenses
16.0   Defendant's Contentions Personal Injury
17.0   Responses to Request for Admissions
18.0   *[Reserved]*
19.0   *[Reserved]*
20.0   How the Incident Occurred—Motor Vehicle
25.0   *[Reserved]*
30.0   *[Reserved]*
40.0   *[Reserved]*
50.0   Contract
60.0   *[Reserved]*
70.0   Unlawful Detainer *[See separate form DISC-003]*
101.0  Economic Litigation *[See separate form DISC-004]*
200.0  Employment Law *[See separate form DISC-002]*
         Family Law *[See separate form FL-145]*

**1.0  Identity of Persons Answering These Interrogatories**

☒  1.1 State the name, **ADDRESS**, telephone number, and relationship to you of each **PERSON** who prepared or assisted in the preparation of the responses to these interrogatories. (*Do not identify anyone who simply typed or reproduced the responses.*)

**2.0  General Background Information—individual**

☒  2.1 State:
   (a)  your name;
   (b)  every name you have used in the past; and
   (c)  the dates you used each name.

☒  2.2 State the date and place of your birth.

☒  2.3 At the time of the **INCIDENT**, did you have a driver's license? If so, state:
   (a)  the state or other issuing entity;
   (b)  the license number and type;
   (c)  the date of issuance; and
   (d)  all restrictions.

☒  2.4 At the time of the **INCIDENT**, did you have any other permit or license for the operation of a motor vehicle? If so, state:
   (a)  the state or other issuing entity;
   (b)  the license number and type;
   (c)  the date of issuance; and
   (d)  all restrictions.

☒  2.5 State:
   (a)  your present residence **ADDRESS;**
   (b)  your residence **ADDRESSES** for the past five years; and
   (c)  the dates you lived at each **ADDRESS.**

☒  2.6 State:
   (a)  the name, **ADDRESS,** and telephone number of your present employer or place of self-employment; and
   (b)  the name, **ADDRESS,** dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the **INCIDENT** until today.

☒  2.7 State:
   (a)  the name and **ADDRESS** of each school or other academic or vocational institution you have attended, beginning with high school;
   (b)  the dates you attended;
   (c)  the highest grade level you have completed; and
   (d)  the degrees received.

☒  2.8 Have you ever been convicted of a felony? If so, for each conviction state:
   (a)  the city and state where you were convicted;
   (b)  the date of conviction;
   (c)  the offense; and
   (d)  the court and case number.

☒  2.9 Can you speak English with ease? If not, what language and dialect do you normally use?

☒  2.10 Can you read and write English with ease? If not, what language and dialect do you normally use?

[X] 2.11 At the time of the **INCIDENT** were you acting as an agent or employee for any **PERSON?** If so, state:
(a) the name, **ADDRESS,** and telephone number of that **PERSON:** and
(b) a description of your duties.

[X] 2.12 At the time of the **INCIDENT** did you or any other person have any physical, emotional, or mental disability or condition that may have contributed to the occurrence of the **INCIDENT?** If so, for each person state:
(a) the name, **ADDRESS,** and telephone number;
(b) the nature of the disability or condition; and
(c) the manner in which the disability or condition contributed to the occurrence of the **INCIDENT.**

[X] 2.13 Within 24 hours before the **INCIDENT** did you or any person involved in the **INCIDENT** use or take any of the following substances: alcoholic beverage, marijuana, or other drug or medication of any kind (prescription or not)? If so, for each person state:
(a) the name, **ADDRESS,** and telephone number;
(b) the nature or description of each substance;
(c) the quantity of each substance used or taken;
(d) the date and time of day when each substance was used or taken;
(e) the **ADDRESS** where each substance was used or taken;
(f) the name, **ADDRESS,** and telephone number of each person who was present when each substance was used or taken; and
(g) the name, **ADDRESS,** and telephone number of any **HEALTH CARE PROVIDER** who prescribed or furnished the substance and the condition for which it was prescribed or furnished.

### 3.0  General Background Information — Business Entity

[X] 3.1  Are you a corporation? If so, state:
(a) the name stated in the current articles of incorporation;
(b) all other names used by the corporation during the past 10 years and the dates each was used;
(c) the date and place of incorporation;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

[X] 3.2  Are you a partnership? If so, state:
(a) the current partnership name;
(b) all other names used by the partnership during the past 10 years and the dates each was used;
(c) whether you are a limited partnership and, if so, under the laws of what jurisdiction;
(d) the name and **ADDRESS** of each general partner; and
(e) the **ADDRESS** of the principal place of business.

[X] 3.3  Are you a limited liability company? If so, state:
(a) the name stated in the current articles of organization;
(b) all other names used by the company during the past 10 years and the date each was used;
(c) the date and place of filing of the articles of organization;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

[X] 3.4  Are you a joint venture? If so, state:
(a) the current joint venture name;
(b) all other names used by the joint venture during the past 10 years and the dates each was used;
(c) the name and **ADDRESS** of each joint venturer; and
(d) the **ADDRESS** of the principal place of business.

[X] 3.5  Are you an unincorporated association? If so, state:
(a) the current unincorporated association name;
(b) all other names used by the unincorporated association during the past 10 years and the dates each was used; and
(c) the **ADDRESS** of the principal place of business.

[X] 3.6  Have you done business under a fictitious name during the past 10 years? If so, for each fictitious name state:
(a) the name;
(b) the dates each was used;
(c) the state and county of each fictitious name filing; and
(d) the **ADDRESS** of the principal place of business.

[X] 3.7  Within the past five years has any public entity registered or licensed your business? If so, for each license or registration:
(a) identify the license or registration;
(b) state the name of the public entity; and
(c) state the dates of issuance and expiration.

### 4.0  Insurance

[X] 4.1  At the time of the **INCIDENT**, was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the **INCIDENT?** If so, for each policy state:
(a) the kind of coverage;
(b) the name and **ADDRESS** of the insurance company;
(c) the name, **ADDRESS,** and telephone number of each named insured;
(d) the policy number;
(e) the limits of coverage for each type of coverage contained in the policy;
(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and
(g) the name, **ADDRESS,** and telephone number of the custodian of the policy.

[X] 4.2  Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the **INCIDENT?** If so, specify the statute.

### 5.0  *[Reserved]*

### 6.0  Physical, Mental, or Emotional Injuries

[ ] 6.1  Do you attribute any physical, mental, or emotional injuries to the **INCIDENT?** *(If your answer is "no," do not answer interrogatories 6.2 through 6.7).*

[ ] 6.2  Identify each injury you attribute to the **INCIDENT** and the area of your body affected.

**Ex. 4, p. 13 of 20**

6.3 Do you still have any complaints that you attribute to the **INCIDENT?** If so, for each complaint state:
(a) a description;
(b) whether the complaint is subsiding, remaining the same, or becoming worse; and
(c) the frequency and duration.

6.4 Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) or treatment from a **HEALTH CARE PROVIDER** for any injury you attribute to the **INCIDENT**? If so, for each **HEALTH CARE PROVIDER** state:
(a) the name, **ADDRESS,** and telephone number;
(b) the type of consultation, examination, or treatment provided;
(c) the dates you received consultation, examination, or treatment; and
(d) the charges to date.

6.5 Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the **INCIDENT?** If so, for each medication state:
(a) the name;
(b) the **PERSON** who prescribed or furnished it;
(c) the date it was prescribed or furnished;
(d) the dates you began and stopped taking it; and
(e) the cost to date.

6.6 Are there any other medical services necessitated by the injuries that you attribute to the **INCIDENT** that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:
(a) the name;
(b) the date;
(c) the cost; and
(d) the name, **ADDRESS,** and telephone number of each provider.

6.7 Has any **HEALTH CARE PROVIDER** advised that you may require future or additional treatment for any injuries that you attribute to the **INCIDENT?** If so, for each injury state:
(a) the name and **ADDRESS** of each **HEALTH CARE PROVIDER;**
(b) the complaints for which the treatment was advised; and
(c) the nature, duration, and estimated cost of the treatment.

**7.0    Property Damage**

7.1 Do you attribute any loss of or damage to a vehicle or other property to the **INCIDENT?** If so, for each item of property:
(a) describe the property;
(b) describe the nature and location of the damage to the property;

(c) state the amount of damage you are claiming for each item of property and how the amount was calculated; and
(d) if the property was sold, state the name, **ADDRESS,** and telephone number of the seller, the date of sale, and the sale price.

7.2 Has a written estimate or evaluation been made for any item of property referred to in your answer to the preceding interrogatory? If so, for each estimate or evaluation state:
(a) the name, **ADDRESS,** and telephone number of the **PERSON** who prepared it and the date prepared;
(b) the name, **ADDRESS,** and telephone number of each **PERSON** who has a copy of it; and
(c) the amount of damage stated.

7.3 Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:
(a) the date repaired;
(b) a description of the repair;
(c) the repair cost;
(d) the name, **ADDRESS,** and telephone number of the **PERSON** who repaired it;
(e) the name, **ADDRESS,** and telephone number of the **PERSON** who paid for the repair.

**8.0    Loss of Income or Earning Capacity**

8.1 Do you attribute any loss of income or earning capacity to the **INCIDENT**? *(If your answer is "no," do not answer interrogatories 8.2 through 8.8).*

8.2 State:
(a) the nature of your work;
(b) your job title at the time of the **INCIDENT;** and
(c) the date your employment began.

8.3 State the last date before the **INCIDENT** that you worked for compensation.

8.4 State your monthly income at the time of the **INCIDENT** and how the amount was calculated.

8.5 State the date you returned to work at each place of employment following the **INCIDENT.**

8.6 State the dates you did not work and for which you lost income as a result of the **INCIDENT.**

8.7 State the total income you have lost to date as a result of the **INCIDENT** and how the amount was calculated.

8.8 Will you lose income in the future as a result of the **INCIDENT?** If so, state:
(a) the facts upon which you base this contention;
(b) an estimate of the amount;
(c) an estimate of how long you will be unable to work; and
(d) how the claim for future income is calculated.

**Ex. 4, p. 14 of 20**

**DISC-001**

### 9.0 Other Damages

☐ 9.1 Are there any other damages that you attribute to the **INCIDENT?** If so, for each item of damage state:
(a) the nature;
(b) the date it occurred;
(c) the amount; and
(d) the name, **ADDRESS,** and telephone number of each **PERSON** to whom an obligation was incurred.

☐ 9.2 Do any **DOCUMENTS** support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

### 10.0 Medical History

☐ 10.1 At any time before the **INCIDENT** did you have complaints or injuries that involved the same part of your body claimed to have been injured in the **INCIDENT?** If so, for each state:
(a) a description of the complaint or injury;
(b) the dates it began and ended; and
(c) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER** whom you consulted or who examined or treated you.

☐ 10.2 List all physical, mental, and emotional disabilities you had immediately before the **INCIDENT.** *(You may omit mental or emotional disabilities unless you attribute any mental or emotional injury to the INCIDENT.)*

☐ 10.3 At any time after the **INCIDENT,** did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:
(a) the date and the place it occurred;
(b) the name, **ADDRESS,** and telephone number of any other **PERSON** involved;
(c) the nature of any injuries you sustained;
(d) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER** who you consulted or who examined or treated you; and
(e) the nature of the treatment and its duration.

### 11.0 Other Claims and Previous Claims

☐ 11.1 Except for this action, in the past 10 years have you filed an action or made a written claim or demand for compensation for your personal injuries? If so, for each action, claim, or demand state:
(a) the date, time, and place and location (closest street **ADDRESS** or intersection) of the **INCIDENT** giving rise to the action, claim, or demand;
(b) the name, **ADDRESS,** and telephone number of each **PERSON** against whom the claim or demand was made or the action filed;

(c) the court, names of the parties, and case number of any action filed;
(d) the name, **ADDRESS,** and telephone number of any attorney representing you;
(e) whether the claim or action has been resolved or is pending; and
(f) a description of the injury.

☐ 11.2 In the past 10 years have you made a written claim or demand for workers' compensation benefits? If so, for each claim or demand state:
(a) the date, time, and place of the **INCIDENT** giving rise to the claim;
(b) the name, **ADDRESS,** and telephone number of your employer at the time of the injury;
(c) the name, **ADDRESS,** and telephone number of the workers' compensation insurer and the claim number;
(d) the period of time during which you received workers' compensation benefits;
(e) a description of the injury;
(f) the name, **ADDRESS,** and telephone number of any **HEALTH CARE PROVIDER** who provided services; and
(g) the case number at the Workers' Compensation Appeals Board.

### 12.0 Investigation—General

☒ 12.1 State the name, **ADDRESS,** and telephone number of each individual:
(a) who witnessed the **INCIDENT** or the events occurring immediately before or after the **INCIDENT;**
(b) who made any statement at the scene of the **INCIDENT;**
(c) who heard any statements made about the **INCIDENT** by any individual at the scene; and
(d) who **YOU OR ANYONE ACTING ON YOUR BEHALF** claim has knowledge of the **INCIDENT** (except for expert witnesses covered by Code of Civil Procedure section 2034).

☒ 12.2 Have **YOU OR ANYONE ACTING ON YOUR BEHALF** interviewed any individual concerning the **INCIDENT?** If so, for each individual state:
(a) the name, **ADDRESS,** and telephone number of the individual interviewed;
(b) the date of the interview; and
(c) the name, **ADDRESS,** and telephone number of the **PERSON** who conducted the interview.

☒ 12.3 Have **YOU OR ANYONE ACTING ON YOUR BEHALF** obtained a written or recorded statement from any individual concerning the **INCIDENT?** If so, for each statement state:
(a) the name, **ADDRESS,** and telephone number of the individual from whom the statement was obtained;
(b) the name, **ADDRESS,** and telephone number of the individual who obtained the statement;
(c) the date the statement was obtained; and
(d) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original statement or a copy.

## Ex. 4, p. 15 of 20

[X] **12.4 Do YOU OR ANYONE ACTING ON YOUR BEHALF** know of any photographs, films, or videotapes depicting any place, object, or individual concerning the **INCIDENT** or plaintiff's injuries? If so, state:

(a) the number of photographs or feet of film or videotape;
(b) the places, objects, or persons photographed, filmed, or videotaped;
(c) the date the photographs, films, or videotapes were taken;
(d) the name, **ADDRESS,** and telephone number of the individual taking the photographs, films, or videotapes; and
(e) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy of the photographs, films, or videotapes.

[X] **12.5 Do YOU OR ANYONE ACTING ON YOUR BEHALF** know of any diagram, reproduction, or model of any place or thing (except for items developed by expert witnesses covered by Code of Civil Procedure sections 2034.210-2034.310) concerning the **INCIDENT**? If so, for each item state:

(a) the type (i.e., diagram, reproduction, or model);
(b) the subject matter; and
(c) the name, **ADDRESS**, and telephone number of each **PERSON** who has it.

[X] **12.6** Was a report made by any **PERSON** concerning the **INCIDENT**? If so, state:

(a) the name, title, identification number, and employer of the **PERSON** who made the report;
(b) the date and type of report made;
(c) the name, **ADDRESS**, and telephone number of the **PERSON** for whom the report was made; and
(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of the report.

[X] **12.7** Have **YOU OR ANYONE ACTING ON YOUR BEHALF** inspected the scene of the **INCIDENT**? If so, for each inspection state:

(a) the name, **ADDRESS**, and telephone number of the individual making the inspection (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310); and
(b) the date of the inspection.

**13.0 Investigation—Surveillance**

[X] **13.1** Have **YOU OR ANYONE ACTING ON YOUR BEHALF** conducted surveillance of any individual involved in the **INCIDENT** or any party to this action? If so, for each surveillance state:

(a) the name, **ADDRESS**, and telephone number of the individual or party;
(b) the time, date, and place of the surveillance;
(c) the name, **ADDRESS**, and telephone number of the individual who conducted the surveillance; and
(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of any surveillance photograph, film, or videotape.

[X] **13.2** Has a written report been prepared on the surveillance? If so, for each written report state:

(a) the title;
(b) the date;
(c) the name, **ADDRESS**, and telephone number of the individual who prepared the report; and
(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy.

**14.0 Statutory or Regulatory Violations**

[X] **14.1 Do YOU OR ANYONE ACTING ON YOUR BEHALF** contend that any **PERSON** involved in the **INCIDENT** violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the **INCIDENT?** If so, identify the name, **ADDRESS**, and telephone number of each **PERSON** and the statute, ordinance, or regulation that was violated.

[X] **14.2** Was any **PERSON** cited or charged with a violation of any statute, ordinance, or regulation as a result of this **INCIDENT**? If so, for each **PERSON** state:

(a) the name, **ADDRESS,** and telephone number of the **PERSON;**
(b) the statute, ordinance, or regulation allegedly violated;
(c) whether the **PERSON** entered a plea in response to the citation or charge and, if so, the plea entered; and
(d) the name and **ADDRESS** of the court or administrative agency, names of the parties, and case number.

**15.0 Denials and Special or Affirmative Defenses**

[X] **15.1** Identify each denial of a material allegation and each special or affirmative defense in your pleadings and for each:

(a) state all facts upon which you base the denial or special or affirmative defense;
(b) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(c) identify all **DOCUMENTS** and other tangible things that support your denial or special or affirmative defense, and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT.**

**16.0 Defendant's Contentions—Personal Injury**

[X] **16.1** Do you contend that any **PERSON,** other than you or plaintiff, contributed to the occurrence of the **INCIDENT** or the injuries or damages claimed by plaintiff? If so, for each **PERSON:**

(a) state the name, **ADDRESS,** and telephone number of the **PERSON;**
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

[ ] **16.2** Do you contend that plaintiff was not injured in the **INCIDENT**? If so:

(a) state all facts upon which you base your contention;
(b) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(c) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

Ex. A, p. 16 of 20

16.3  Do you contend that the injuries or the extent of the injuries claimed by plaintiff as disclosed in discovery proceedings thus far in this case were not caused by the **INCIDENT**?  If so, for each injury:

(a) identify it;

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.4  Do you contend that any of the services furnished by any **HEALTH CARE PROVIDER** claimed by plaintiff in discovery proceedings thus far in this case were not due to the **INCIDENT**?  If so:

(a) identify each service;

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.5  Do you contend that any of the costs of services furnished by any **HEALTH CARE PROVIDER** claimed as damages by plaintiff in discovery proceedings thus far in this case were not necessary or unreasonable?  If so:

(a) identify each cost;

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.6  Do you contend that any part of the loss of earnings or income claimed by plaintiff in discovery proceedings thus far in this case was unreasonable or was not caused by the **INCIDENT**?  If so:

(a) identify each part of the loss;

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.7  Do you contend that any of the property damage claimed by plaintiff in discovery Proceedings thus far in this case was not caused by the **INCIDENT**?  If so:

(a) identify each item of property damage;

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.8  Do you contend that any of the costs of repairing the property damage claimed by plaintiff in discovery proceedings thus far in this case were unreasonable?  If so:

(a) identify each cost item;

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.9  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** (for example, insurance bureau index reports) concerning claims for personal injuries made before or after the **INCIDENT** by a plaintiff in this case?  If so, for each plaintiff state:

(a) the source of each **DOCUMENT**;

(b) the date each claim arose;

(c) the nature of each claim; and

(d) the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT**.

16.10 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** concerning the past or present physical, mental, or emotional condition of any plaintiff in this case from a **HEALTH CARE PROVIDER** not previously identified (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310)?  If so, for each plaintiff state:

(a) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER;**

(b) a description of each **DOCUMENT**; and

(c) the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT**.

**17.0  Responses to Request for Admissions**

[x] 17.1  Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:

(a) state the number of the request;

(b) state all facts upon which you base your response;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of those facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your response and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**18.0** *[Reserved]*

**19.0** *[Reserved]*

**20.0  How the Incident Occurred—Motor Vehicle**

20.1  State the date, time, and place of the **INCIDENT** (closest street **ADDRESS** or intersection).

20.2  For each vehicle involved in the **INCIDENT,** state:

(a) the year, make, model, and license number;

(b) the name, ADDRESS, and telephone number of the driver;

Ex. 4 p. 7 of 20

(c) the name, **ADDRESS,** and telephone number of each occupant other than the driver;

(d) the name, **ADDRESS,** and telephone number of each registered owner;

(e) the name, **ADDRESS,** and telephone number of each lessee;

(f) the name, **ADDRESS,** and telephone number of each owner other than the registered owner or lien holder; and

(g) the name of each owner who gave permission or consent to the driver to operate the vehicle.

☐ 20.3  State the **ADDRESS** and location where your trip began and the **ADDRESS** and location of your destination.

☐ 20.4  Describe the route that you followed from the beginning of your trip to the location of the **INCIDENT,** and state the location of each stop, other than routine traffic stops, during the trip leading up to the **INCIDENT.**

☐ 20.5  State the name of the street or roadway, the lane of travel, and the direction of travel of each vehicle involved in the **INCIDENT** for the 500 feet of travel before the **INCIDENT.**

☐ 20.6  Did the **INCIDENT** occur at an intersection? If so, describe all traffic control devices, signals, or signs at the intersection.

☐ 20.7  Was there a traffic signal facing you at the time of the **INCIDENT?** If so, state:

(a) your location when you first saw it;

(b) the color;

(c) the number of seconds it had been that color; and

(d) whether the color changed between the time you first saw it and the **INCIDENT.**

☐ 20.8  State how the **INCIDENT** occurred, giving the speed, direction, and location of each vehicle involved:

(a) just before the **INCIDENT;**

(b) at the time of the **INCIDENT;** and

(c) just after the **INCIDENT.**

☐ 20.9  Do you have information that a malfunction or defect in a vehicle caused the **INCIDENT**?  If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, **ADDRESS,** and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS,** and telephone number of each **PERSON** who has custody of each defective part.

☐ 20.10 Do you have information that any malfunction or defect in a vehicle contributed to the injuries sustained in the **INCIDENT?**  If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, **ADDRESS,** and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS,** and telephone number of each **PERSON** who has custody of each defective part.

☐ 20.11 State the name, **ADDRESS,** and telephone number of each owner and each **PERSON** who has had possession since the **INCIDENT** of each vehicle involved in the **INCIDENT.**

**25.0** *[Reserved]*

**30.0** *[Reserved]*

**40.0** *[Reserved]*

**50.0  Contract**

☐ 50.1  For each agreement alleged in the pleadings:

(a) identify each **DOCUMENT** that is part of the agreement and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**

(b) state each part of the agreement not in writing, the name, **ADDRESS,** and telephone number of each **PERSON** agreeing to that provision, and the date that part of the agreement was made;

(c) identify all **DOCUMENTS** that evidence any part of the agreement not in writing and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**

(d) identify all **DOCUMENTS** that are part of any modification to the agreement, and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**

(e) state each modification not in writing, the date, and the name, **ADDRESS,** and telephone number of each **PERSON** agreeing to the modification, and the date the modification was made;

(f) identify all **DOCUMENTS** that evidence any modification of the agreement not in writing and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT.**

☐ 50.2  Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

☐ 50.3  Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

☐ 50.4  Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation?  If so, identify each agreement terminated, the date of termination, and the basis of the termination.

☐ 50.5  Is any agreement alleged in the pleadings unenforce-able?  If so, identify each unenforceable agreement and state why it is unenforceable.

☐ 50.6  Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

**60.0** *[Reserved]*

**Ex. 4, p. 18 of 20**

## PROOF OF SERVICE
## (C.C.P. §§ 1013A, 2015.5)

| | |
|---|---|
| STATE OF CALIFORNIA<br>COUNTY OF SAN<br>BERNARDINO | )<br>) §   **Lawler, et al.  v. Ahalena Hookah Lounge, et al.-**<br>)      **Case No.: CIVDS1607235**<br>) |

I am employed in the County of Orange, State of California.  I am over the age of eighteen (18) years and not a party to this within action.  My business address is: 1551 N. Tustin Avenue, Suite 530, Santa Ana, CA 92705.

On January 12, 2017, I served the foregoing documents described as:

**PLAINTIFF'S REQUEST FOR FORM INTERROGATORIES, SET NUMBER ONE**

on all interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

*Jihad Saker*
1983 Diners Court
San Bernardino, CA 92415

IN PRO PER

**[ X] Via the United States Postal Service as follows:**  I am "readily familiar" with this firm's business practice for collection and processing correspondence for mailing with the United States Postal Service.  Under that practice it would be deposited with the United States Postal Service this same day with postage thereon fully prepaid at Santa Ana, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after the date for deposit for mailing in affidavit.

**[ ] By Personal Delivery**: [  ] Delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope clearly labeled to identify the attorney being served, with a receptionist or an individual in charge, between the hours of 9:00 a.m. and 5:00 p.m.  [  ] Or, delivery was made to the party or by leaving the documents at the party's residence with some person over the age of 18 between the hours of 8:00 a.m. and 6:00 p.m.

**Ex. 4, p. 19 of 20**

**Name of person served:**
**Address:** *See service list above*

**Date:**                               **Time:**

[ ] **Via Facsimile** by causing such document to be served via facsimile on the parties in this action via facsimile numbers as stated on this proof of service.

**Fax Number where person served:** *See service list above*
**Time of service:**

[ ] **Via Certified Mail**, Return Receipt Requested  by causing a true copy and/or original thereof to be placed in a sealed envelope with postage thereon fully prepaid in the designated area for outgoing mail.

I caused such envelope to be deposited in the mail at Santa Ana, CA.  The envelope was mailed with postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 12, 2017 at Santa Ana, California.

OFELIA GODINEZ

**Ex. 4, p. 20 of 20**

# Exhibit 5

**JUD-100**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*<br>Robert B. Gibson, Esq.          SBN: 162347<br>GIBSON & HUGHES<br>1851 E. First Street, Suite 650, SANTA ANA, CA 92705<br>    TELEPHONE NO.:714-547-8377    FAX NO. *(Optional)*: 714-547-8378<br>E-MAIL ADDRESS *(Optional)*:<br>    ATTORNEY FOR *(Name)*: Debbie Lawler | **FOR COURT USE ONLY**<br><br>*F I L E D*<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN BERNARDINO<br>SAN BERNARDINO DISTRICT<br><br>APR 1 9 2019<br><br>BY _____<br>BRENDA MATSUMURA, DEPUTY |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO |
|---|
| STREET ADDRESS:247 West Third Street |
| MAILING ADDRESS:247 West Third Street |
| CITY AND ZIP CODE: San Bernardino, 92415-0210 |
| BRANCH NAME:San Bernardino District - Civil Division |

| PLAINTIFF: Debbie Ann Lawler, Cynthia K. Johnson |
|---|
| DEFENDANT: Ahalena Hookah Lounge, et al. |

| **JUDGMENT** | | | CASE NUMBER: |
|---|---|---|---|
| ☐ **By Clerk**   ☒ **By Default** | ☐ **After Court Trial** | | CIVDS1607235 |
| ☒ **By Court**   ☐ **On Stipulation** | ☐ **Defendant Did Not Appear at Trial** | | |

**JUDGMENT**

1. ☒  **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐  **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☒  **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
       (1) ☐  plaintiff's testimony and other evidence.
       (2) ☒  plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐  **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐  the signed written stipulation was filed in the case.
   c. ☐  the stipulation was stated in open court    ☐  the stipulation was stated on the record.

3. ☐  **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time)*:
      before *(name of judicial officer)*:
   b. Appearances by:

   | ☐ Plaintiff *(name each)*: | ☐ Plaintiff's attorney *(name each)*: |
   |---|---|
   | (1) | (1) |
   | (2) | (2) |
   | ☐ Continued on Attachment 3b. | |
   | ☐ Defendant *(name each)*: | ☐ Defendant 's attorney *(name each)*: |
   | (1) | (1) |
   | (2) | (2) |
   | ☐ Continued on Attachment 3b. | |

   c. ☐  Defendant did not appear at trial. Defendant was properly served with notice of trial.

   d. ☐  A statement of decision (Code Civ. Proc., § 632)  ☐ was not  ☐ was  requested.

**Ex. 5, p. 1 of 5**
Page 1 of 2

| PLAINTIFF: Debbie Ann Lawler, Cynthia K. Johnson | CASE NUMBER: |
|---|---|
| DEFENDANT: Ahalena Hookah Lounge, et al. | CIVDS1607235 |

**JUDGMENT IS ENTERED AS FOLLOWS BY:**  [X] THE COURT   [ ] THE CLERK

4. [ ]  **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

a. [X] for plaintiff (name each): Cynthia K. Johnson

and against defendant (names): Jihad Saker dba Ahalena Hookah Lounge and Argent Retail Advisors

[ ] Continued on Attachment 5a.

b. [ ] for defendant (name each):

c. [ ] for cross-complainant (name each):

and against cross-defendant (name each):

[ ] Continued on Attachment 5c.

d. [ ] for cross-defendant (name each):

6. **Amount.**

a. [X] Defendant named in item 5a above must pay plaintiff on the complaint:

| | | | $ |
|---|---|---|---|
| (1) | [X] | Damages | $ ~~1,500,000.00~~ *1,000,000.00* |
| (2) | [ ] | Prejudgment interest at the annual rate of   % | $ |
| (3) | [ ] | Attorney fees | $ |
| (4) | [X] | Costs | $ 5,251.25 |
| (5) | [ ] | Other (specify): | $ |
| (6) | | TOTAL | $ ~~1,505,251.25~~ *1,005,251.25* |

c. [ ] Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| | | | $ |
|---|---|---|---|
| (1) | [ ] | Damages | $ |
| (2) | [ ] | Prejudgment interest at the annual rate of   % | $ |
| (3) | [ ] | Attorney fees | $ |
| (4) | [ ] | Costs | $ |
| (5) | [ ] | Other (specify): | $ |
| (6) | | TOTAL | $ |

b. [ ] Plaintiff to receive nothing from defendant named in item 5b.
[ ] Defendant named in item 5b to recover costs $
[ ] and attorney fees $

d. [ ] Cross-complainant to receive nothing from cross-defendant named in item 5d.
[ ] Cross-defendant named in item 5d to recover costs $
[ ] and attorney fees $

7. [ ] Other (specify):

Date: **APR 1 9 2019**

[✓] _____
**MICHAEL A. SACHS** JUDICIAL OFFICER

Date: _____   [ ] Clerk, by _____, Deputy

| (SEAL) | **CLERK'S CERTIFICATE** (Optional) |
|---|---|
| | I certify that this is a true copy of the original judgment on file in the court. |
| | Date: |
| | Clerk, by _____, Deputy |

**Ex. 5, p. 2 of 5**
Page 2 of 2

JUD-100 [New January 1, 2002]                **JUDGMENT**

JUD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Robert B. Gibson, Esq.                SBN: 162347 | |

GIBSON & HUGHES

1851 E. First Street, Suite 650, SANTA ANA, CA 92705

TELEPHONE NO.: 714-547-8377    FAX NO. *(Optional)*: 714-547-8378

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*: Debbie Lawler

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN BERNARDINO

STREET ADDRESS: 247 West Third Street

MAILING ADDRESS: 247 West Third Street

CITY AND ZIP CODE: San Bernardino, 92415-0210

BRANCH NAME: San Bernardino District - Civil Division

PLAINTIFF: Debbie Ann Lawler, Cynthia K. Johnson

DEFENDANT: Ahalena Hookah Lounge, et al.

*F I L E D*
*SUPERIOR COURT OF CALIFORNIA*
*COUNTY OF SAN BERNARDINO*
*SAN BERNARDINO CIVIL DIVISION*

MAY 1 3 2019

BY
VERONICA GONZALEZ, DEPUTY

| **JUDGMENT** | CASE NUMBER: |
|---|---|
| ☐ By Clerk   ☒ By Default   ☐ After Court Trial   ☒ By Court   ☐ On Stipulation   ☐ Defendant Did Not Appear at Trial | CIVDS1607235 |

**JUDGMENT**

1. ☒ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☒ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) ☐ plaintiff's testimony and other evidence.
      (2) ☒ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court   ☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time):*
      before *(name of judicial officer):*
   b. Appearances by:
      ☐ Plaintiff *(name each):*          ☐ Plaintiff's attorney *(name each):*
         (1)                                 (1)
         (2)                                 (2)
      ☐ Continued on Attachment 3b.

      ☐ Defendant *(name each):*          ☐ Defendant 's attorney *(name each):*
         (1)                                 (1)
         (2)                                 (2)
      ☐ Continued on Attachment 3b.

   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.

   d. ☐ A statement of decision (Code Civ. Proc., § 632)   ☐ was not   ☐ was   requested.

**Ex. 5, p. 3 of 5**
Page 1 of 2

| Form Approved for Optional Use<br>Judicial Council of California<br>JUD-100 [New January 1, 2002] | **JUDGMENT** | Code of Civil Procedure, §§ 585, 664.6<br>Westlaw Doc & Form Builder™ |
|---|---|---|

| PLAINTIFF: Debbie Ann Lawler, Cynthia K. Johnson | CASE NUMBER: CIVDS1607235 |
|---|---|
| DEFENDANT: Ahalena Hookah Lounge, et al. | |

JUDGMENT IS ENTERED AS FOLLOWS BY:    [X] THE COURT    [ ] THE CLERK

4. [ ]  **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

a. [X]  for plaintiff *(name each):* Debbie Ann Lawler

and against defendant *(names):* Jihad Saker dba Ahalena Hookah Lounge and Argent Retail Advisors

[ ]  Continued on Attachment 5a.

b. [ ]  for defendant *(name each):*

c. [ ]  for cross-complainant *(name each):*

and against cross-defendant *(name each):*

[ ]  Continued on Attachment 5c.

d. [ ]  for cross-defendant *(name each):*

6. **Amount.**

a. [X]  Defendant named in item 5a above must pay plaintiff on the complaint:

c. [ ]  Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| (1) | [X] | Damages | $ | 1,000,000.00 |
|---|---|---|---|---|
| (2) | [ ] | Prejudgment interest at the annual rate of        % | $ | |
| (3) | [ ] | Attorney fees | $ | |
| (4) | [ ] | Costs | $ | |
| (5) | [ ] | Other *(specify):* | $ | |
| (6) | | **TOTAL** | $ | 1,000,000.00 |

| (1) | [ ] | Damages | $ | |
|---|---|---|---|---|
| (2) | [ ] | Prejudgment interest at the annual rate of        % | $ | |
| (3) | [ ] | Attorney fees | $ | |
| (4) | [ ] | Costs | $ | |
| (5) | [ ] | Other *(specify):* | $ | |
| (6) | | **TOTAL** | $ | |

b. [ ]  Plaintiff to receive nothing from defendant named in item 5b.
[ ]  Defendant named in item 5b to recover costs  $
[ ]  and attorney fees  $

d. [ ]  Cross-complainant to receive nothing from cross-defendant named in item 5d.
[ ]  Cross-defendant named in item 5d to recover costs  $
[ ]  and attorney fees  $

7. [ ]  Other *(specify):*

Date:    **MAY 1 3 2019**

[ ] _____
MICHAEL A. SACHS    JUDICIAL OFFICER

Date:    [ ]  Clerk, by _____ , Deputy

| (SEAL) | **CLERK'S CERTIFICATE** *(Optional)* |
|---|---|
| | I certify that this is a true copy of the original judgment on file in the court. |
| | Date: |
| | Clerk, by _____ , Deputy |

**Ex. 5, p. 4 of 5**

JUD-100 [New January 1, 2002]    **JUDGMENT**



RECEIVED

APR 2 3 2019

SUPERIOR COURT
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

**Exhibit 6**

# Guns, money and drugs seized during illegal gambling bust in San Bernardino

- Beatriz E. Valenzuela and Gail Wesson
- PUBLISHED: October 5, 2017 at 2:01 p.m. | UPDATED: October 9, 2017 at 4:51 p.m.
- Categories: Crime and Public Safety, Local News, News

Police seized several guns, gambling machines, some drugs and in excess of $100,000 in cash from several locations in San Bernardino — all part of a crackdown on illegal gambling, police said.

"We've got multiple people in custody," said San Bernardino police Lt. Mike Madden about the operation that targeted five businesses and one residence.

Madden identified the owner of the locations as Jihad Saker, 57, of San Bernardino. He was arrested but information was not immediately available about the bail amount set.

Fourteen people were arrested but names were not immediately available Thursday afternoon.

Locations that were raided included a site in the 1700 block of Base Line and another in the 1100 block of West 17th Street, officials said.

Some 35 gaming machines were seized along with computer hard drives.

All five locations were associated with the same group of people, officials said.

**Ex. 6, Page 1 of 1**

Exhibit 7

# Initiate Business Checking

December 31, 2022 ■ Page 1 of 5



**Questions?**

*Available by phone Mon–Sat 7:00am–11:00pm
Eastern Time, Sun 9:00am–10:00pm Eastern Time:*
We accept all relay calls, including 711

**1-800-CALL-WELLS** (1-800-225-5935)

*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR 97228-6995

E STREET MARKET
1137 W 17TH ST
SAN BERNARDINO CA 92411-1405

## Your Business and Wells Fargo

Visit wellsfargo.com/digitalbusinessresources to explore tours, articles, infographics, and other resources on the topics of money movement, account management and monitoring, security and fraud prevention, and more.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ☑ |
| Online Statements | ☐ |
| Business Bill Pay | ☑ |
| Business Spending Report | ☑ |
| Overdraft Protection | ☐ |

## Statement period activity summary

| | |
|---|---|
| Beginning balance on 12/1 | -$44.51 |
| Deposits/Credits | 44.51 |
| Withdrawals/Debits | - 0.00 |
| Closing balance on 12/13 | $0.00 |

Account number: ▮▮▮▮0994
E STREET MARKET

*California account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 121042882

For Wire Transfers use
Routing Number (RTN): 121000248

Overdraft Protection

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo branch.

**Ex. 7, Page 1 of 5**



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------------|-------------|------------------|--------------------|--------------------|
| 12/13 | | Overdraft Fees Charged Off | 35.00 | | |
| 12/13 | | Closeout Chargeoff Credit | 9.51 | | 0.00 |
| Ending balance on 12/31 | | | | | 0.00 |
| Totals | | | $44.51 | $0.00 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Items returned unpaid

| Date | Description | | | | Amount |
|------|-------------|---|---|---|--------|
| 12/13 | Best Buy    Auto Pymt  | Nawras Saker | Reference # | | 200.00 |

This statement includes an account that has been closed and this is your final statement for that account. You will have 90 days to retrieve historical online documents for this account. Please refer to the Fee & Information Schedule for options to obtain statement copies after 90 days.

If the account that has been closed is the primary account on the statement that includes multiple accounts (a "combined statement"), this is also the final combined statement and you will also have 90 days to retrieve historical online documents for all accounts associated with this combined statement. Going forward, you will receive separate statements for any accounts that remain open.

Thank you for banking with Wells Fargo.

# ✔ IMPORTANT ACCOUNT INFORMATION

_____

ATM Check Deposit Limit

Effective March 15, 2023, we are changing the following paragraph in the "Our right to decline deposits" subsection within the "Depositing Funds" section of the Deposit Account Agreement:

We may decline all or part of a deposit, including cash, for any reason. This could happen, for example, if a payee isn't a co-owner, authorized signer, or authorized representative on your account, we can't verify an endorsement, the check was issued from a credit account, the dollar amount of the deposit, the check looks suspicious, or it's a non-U.S. item. If we decline a deposit that you mailed to us, we may return it to you at your cost (including charging you for postage and handling to return foreign currency coin or paper), or retain any invalid checks or other documents included in the deposit without crediting your account, at our discretion.

The new paragraph is as follows:

We may decline all or part of a deposit, including cash, for any reason. This could happen, for example, if a payee isn't a co-owner, authorized signer, or authorized representative on your account, we can't verify an endorsement, the check was issued from a credit

**Ex. 7, Page 2 of 5**



account, the dollar amount of the deposit, the check looks suspicious, or it's a non-U.S. item. If we decline a deposit that you mailed to us, we may return it to you at your cost (including charging you for postage and handling to return foreign currency coin or paper), or retain any invalid checks or other documents included in the deposit without crediting your account, at our discretion. There are limits on the total dollar amount of checks that can be deposited at Wells Fargo ATMs per transaction. We may decline check deposits that exceed $1 million.

---

Effective January 31, 2023, in the section of your Deposit Account Agreement ("Agreement") titled "Available Balance, Posting Transactions, and Overdraft", under the subsection "How we process and post transactions to your account", the section titled "Step 2: we sort your transactions into categories" is deleted and replaced with the following:

Step 2: we sort your transactions into categories

- We credit deposits received before the cutoff time.

- We subtract withdrawals and payments we have previously authorized that we cannot return unpaid such as debit card purchases, ATM withdrawals, account transfers, Bill Pay transactions, and teller-cashed checks. Transactions are generally sorted by date and time the transaction was conducted or, for some transactions, the day we receive it for payment, or the time assigned by our system. If date and time are the same, we post from lowest to highest dollar amount.

- We pay your checks and preauthorized ACH payments, such as electronic payments you have authorized a company to withdraw using your account and routing number. Transactions are generally sorted by date and time received by the Bank, and if date and time are the same, we post from lowest to highest dollar amount. Merchant-issued payment card transactions (e.g., an ACH payment associated with a purchase you made using a store-issued debit card) post after all other transactions in this category.

Determining Date and Time

- Cutoff time is based on the location where the deposit or transfer was made.

- For debit card transactions, if we do not have date and time information, we use the day we receive it for payment from the merchant.

- For some transactions, such as Bill Pay or teller-cashed checks, a different time may be assigned by our systems.

---

NEW YORK CITY CUSTOMERS ONLY -- Pursuant to New York City regulations, we request that you contact us at 1-800-TO WELLS (1-800-869-3557) to share your language preference.

---

Tax Season Reminder: Wells Fargo delivers tax documents - either by mail or online depending on your delivery preference - no later than January 31 or by the IRS deadline of February 15 for brokerage accounts. Depending on the U.S. Postal delivery service, you should expect to receive your tax documents no later than the end of February. You can update your tax document delivery preferences by visiting Wells Fargo Online®.

The Internal Revenue Service (IRS) requires Wells Fargo to report information regarding the amount of interest, dividend or miscellaneous income earned as well as gross proceeds from sales by providing you with various IRS Forms 1099 based on the different types of transactions that occurred in your account during the calendar tax year (the IRS reportable threshold). For example, if you have interest or dividends in the amount of $10 or more during that timeframe, you will receive a Form 1099-INT from Wells Fargo.

For more information, visit Wells Fargo Tax Center at https://www.wellsfargo.com/tax-center/.

---

Other Wells Fargo Benefits

**WELLS FARGO**

Shopping online this Holiday Season? Avoid scams by watching for red flags like pressure to buy right away, rude or pushy language, or unusually specific ways to pay such as gift cards, crypto or payment apps. Learn more at www.wellsfargo.com/security.

December 31, 2022 ■ Page 5 of 5



---

## Important Information You Should Know

• To dispute or report inaccuracies in information we have furnished to a Consumer Reporting Agency about your accounts: Wells Fargo Bank, N.A. may furnish information about deposit accounts to consumer reporting agencies. You have the right to dispute the accuracy of information that we have furnished to a consumer reporting agency by writing to us at Overdraft Collection and Recovery, P.O. Box 5058, Portland, OR 97208-5058. Please describe the specific information that is inaccurate or in dispute and the basis for the dispute along with supporting documentation. If you believe the information furnished is the result of identity theft, please provide us with an identity theft report.

• In case of errors or questions about other transactions (that are not electronic transfers): Promptly review your account statement within 30 days after we made it available to you, and notify us of any errors.

• If your account has a negative balance: Please note that an account overdraft that is not resolved 60 days from the date the account first became overdrawn will result in closure and charge off of your account. In this event, it is important that you make arrangements to redirect recurring deposits and payments to another account. The closure will be reported to Early Warning Services. We reserve the right to close and/or charge-off your account at an earlier date, as permitted by law. The laws of some states require us to inform you that this communication is an attempt to collect a debt and that any information obtained will be used for that purpose.

---

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

ENTER
A. The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . . . . $ _____

ADD
B. Any deposits listed in your               $ _____
register or transfers into               $ _____
your account which are not               $ _____
shown on your statement.              + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

CALCULATE THE SUBTOTAL
(Add Parts A and B)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
.                                        TOTAL $ _____

SUBTRACT
C. The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . . . - $ _____

CALCULATE THE ENDING BALANCE
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Total amount | $ |

©2021 Wells Fargo Bank, N.A. All rights reserved.  Member FDIC.  NMLSR ID 399801

**Ex. 7, Page 5 of 5**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

43430 E. Florida Ave. #F, Hemet CA 92544

A true and correct copy of the foregoing document entitled (*specify*): FIRST AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY UNDER 11 USC 523(A)(6), WILLFUL AND MALICIOUS INJURY, AND TO DENY DISCHARGE UNDER 11 USC 727

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

I have no access to CM/ECF.

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 01/23/2024 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor Counsel: Amanda Billyard, Financial Relief Law Center, 1200 Main St, Ste C, Irvine, CA 92614-6749.
Debtor: Jihad Saker, 1137 W. 17th St., San Bernardino, CA 92411
Hon. Scott Yun, United States Courthouse, 3420 Twelfth Street, Riverside, CA 92501-3819

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 01/23/2024 | *Vito A. Vitale III* | *Vito A. Vitale III* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.